UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1-24-cv-22875-CMA

MAINSAIL PARENT, LLC d/b/a ASPIRION,
a Delaware limited liability company, and
SPECIALIZED HEALTHCARE PARTNERS,
LLC, a Florida limited liability company,

        Plaintiffs,

v.

DAVID JEWELL, an individual,
MICHAEL CAMERON, an individual,
ALISHA MAYS, an individual,
MEGAN KELLY, an individual, and
TERNIUM LLC, a Delaware
limited liability company.

        Defendants.
_____/

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

THIS CAUSE came before the Court on the Motion for Entry of Temporary Restraining Order and Preliminary Injunction and Memorandum of Law in Support Thereof [D.E. 6] (the "TRO Motion") filed by Plaintiffs, Mainsail Parent, LLC d/b/a Aspirion and Specialized Healthcare Partners, LLC (collectively, "Aspirion"), and the Court, having reviewed the TRO Motion [D.E. 6], the accompanying declarations and exhibits thereto, and the record, hereby ORDERS AND ADJUDGES as follows:

    1.    Aspirion has filed a Complaint for Injunctive Relief and Damages [D.E. 1] against Defendants, David Jewell ("Jewell"), Michael Cameron ("Cameron"), Megan Kelly ("Kelly"), Alisha Mays ("Mays"), and Ternium LLC ("Ternium") (collectively, "Defendants") for (1) Breach

1

of Contract – Restrictive Covenants against Jewell (Count I); (2) Breach of Contract – Restrictive Covenants against Cameron (Count II); Violation of Defend Trade Secrets Act (18 U.S.C. §§ 1831-1839) against Defendants (Count III); Violation of Florida Uniform Trade Secret Act (Fla. Stat. § 688.001 *et seq*.) against Defendants (Count IV); Breach of Duty of Loyalty against Jewell, Cameron, Kelly, and Mays (Count V); Tortious Interference against Defendants (Count VI): and Civil Conspiracy against Defendants (Count VII).

2. Attached to the Complaint are the Jewell Agreement (Exhibit 1); Cameron Agreement (Exhibit 2) (collectively, the "Employment Agreements"); Aspirion's Acceptable Use Policy (Exhibit 3); Aspirion Acceptable Use Policy and Training Acknowledgement Forms for Jewell, Cameron, Kelly, and Mays (Exhibit 4); Employee Handbook (Exhibit 5); Declaration of Thomas Page, Aspirion's Vice President Legal Center of Excellence (Exhibit 6); Declaration of Amy Amick, Aspirion's Chief Executive Officer (Exhibit 7); Declaration of Greg Shorten, Aspirion's Chief Client Officer (Exhibit 8); Declaration of Tina Eller, Aspirion's Chief Experience Officer (Exhibit 9); Declaration of Brent Webster, Aspirion's Senior Vice President of Sales (Exhibit 10); Declaration of Bray Manderson, Aspirion's Senior Vice President of Sales (Exhibit 11).

3. This Court has jurisdiction over the subject matter of this case, there is good cause to believe it will have jurisdiction over all the parties to this action, and venue in this District is proper.

4. In the Complaint, Aspirion alleges that its former employees—Jewell, Cameron, Mays, and Kelly (collectively, the "Former Employee Defendants")—are actively diverting Aspirion's clients and employees to their new competing company, Ternium, which was formed while the Former Employee Defendants were employed at Aspirion.

5. In the TRO Motion, Aspirion seeks a temporary restraining order and a preliminary injunction against Defendants pursuant to Federal Rule of Civil Procedure 65.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. Substantial Likelihood of Success on the Merits.

#### A. Breach of Contract Claims.

6. The Court finds that, based on the evidence, Aspirion will likely prevail on its Breach of Contract claims against Jewell and Cameron.

7. The Court finds that Jewell and Cameron signed the Employment Agreements that contain non-solicitation and confidentiality provisions, which are restrictive covenants governed by Section 542.335, Florida Statutes.

8. The Court finds that the restrictive covenants in the Employment Agreements—which relate to Jewell's and Cameron's solicitation and service of Aspirion's clients, solicitation of employees, and the retention, use, or disclosure of Aspirion's confidential information—are valid and enforceable because (1) the restrictive covenants aim to protect Aspirion's legitimate business interests under Florida law; (2) the restrictive covenants are reasonable in time (limited to one year); (3) the restrictive covenants are narrow and thus are reasonable in area; (4) the restrictive covenants only involve Aspirion's line of business and thus are reasonable in the same line of business. Thus, the Court finds that the contractually specified restraints are reasonably necessary to protect Aspirion's established interests.

9. The Court finds that Jewell and Cameron likely breached the Employment Agreements. First, Employment Agreements prohibit Jewell and Cameron from soliciting individuals who have been employment by Aspirion within the past year, the evidence reflects that Jewell and Cameron have hired numerous individuals at Ternium who worked at Aspirion in the

3

previous year. Second, the Employment Agreements prohibit Jewell and Cameron from soliciting or serving Aspirion's clients; and the evidence reflects that Jewell and Cameron have contacted and are currently servicing multiple Aspirion clients. Third, the Employment Agreements prohibit Jewell and Cameron from divulging Aspirion's confidential information, and based on the evidence, a reasonable inference can be made that Jewell and Cameron used Aspirion's confidential information they gained during their tenure with Aspirion to get Aspirion's clients business for Ternium.

### B. Trade Secret Claims.

10. The Court finds that, based on the evidence, Aspirion will likely prevail on its claims for violations of the Defend Trade Secret Act ("DTSA") and the Florida Uniform Trade Secrets Act ("FUTSA") against the Former Employee Defendants.

11. The Court finds that Aspirion's client lists, prospective client lists, pricing information, customer-specific data, and other "Confidential Information" as defined in the Employment Agreements, constitute trade secrets under the DTSA and FUTSA. The evidence reflects that Aspirion took reasonable steps to maintain secrecy of the Confidential Information given that (1) Aspirion had multiple policies aimed at protecting its Confidential Information, including an Acceptable Use Policy and rules set forth in its Employee Handbook; (2) Aspirion required employees, like Jewell and Cameron, to agree in the Employment Agreements not to divulge the Confidential Information and to return any such data upon separation.

12. The Court finds that it is likely that the Former Employee Defendants misappropriated Aspirion's trade secrets without Aspirion's consent and by improper means given that (1) the Former Employee Defendants had access to Aspirion's trade secrets while employed

at Aspirion; and (2) Ternium gained the exact same clients the Former Employee Defendants serviced while employed at Aspirion.

### C. Tortious Interference Claim.

13. The Court finds that, based on the evidence, Aspirion will likely prevail on its Tortious Interference claim against Defendants.

14. The Court finds that Aspirion had existing business relationships with healthcare providers such as Banner Health, Baptist Medical Center Jacksonville, Children's Hospital of Orange County, and Evangelical Health.

15. The Court finds that Aspirion had prospective business relationships with healthcare providers such as Louisiana's Children Medical Center, University of New Mexico Health, Valleywise Health.

16. The Court finds that the Former Employee Defendants had knowledge of the business relationships with Aspirion's existing and prospective clients solely from working at Aspirion, especially considering that Defendants were assigned to such clients while working at Aspirion. The Court finds that Ternium had knowledge of these business relationships from the Former Employee Defendants (as its principals).

17. The Court finds that Defendants likely intentionally interfered with Aspirion's business relationships by diverting the business on these accounts to Ternium. The Court finds that Aspirion's significant drop in business upon the Former Employee Defendants' departures as evidence that Defendants interfered with Aspirion's business relationships.

18. The Court finds that Aspirion was likely damaged by the loss of the value of the diverted business as well as the damage to the relationship and goodwill enjoyed with its clients.

### D. Breach of Duty of Loyalty Claim.

19. The Court finds that, based on the evidence, Aspirion will likely prevail on its Breach of Duty of Loyalty claim against the Former Employee Defendants.

20. The Court finds that the Former Employee Defendants, as employees of Aspirion, owed a duty of loyalty to Aspirion, under Florida law. Such duty of loyalty includes not using confidential information acquired during the court of their employment as Aspirion and not soliciting clients and other employees at Aspirion prior to the end of their employment.

21. The Court finds that the Former Employee Defendants likely breached their duties of loyalty to Aspirion given that (1) they created Ternium, a competing business, while employed at Aspirion; (2) they induced each other and other employees to leave Aspirion and join Ternium; and (3) they induced several clients of Aspirion to do business at Ternium instead of Aspirion.

### E. Civil Conspiracy Claim.

22. The Court finds that, based on the evidence, Aspirion will likely prevail on its Civil Conspiracy claim against Defendants.

23. The Court finds that Defendants entered into an agreement, either expressly or implied, on or about September 2022 to create Ternium, a competing business in order to (1) solicit employees away from Aspirion to join Ternium; (2) use Ternium to steal the Aspirion's existing and prospective clients and tortiously interfere with Aspirion's business relationships, and (3) misuse Aspirion's confidential and proprietary business information that the Former Employee Defendants possessed by virtue of their employment, in aid of Ternium's solicitation of Aspirion's existing and prospective clients and employees.

## II. Irreparable and Immediate Harm.

24. The Court finds that Aspirion will suffer immediate and irreparable injury absent injunctive relief and that Aspirion has no other remedy other than injunctive relief.

25. First, Jewell's and Cameron's restrictive covenants create a presumption of irreparable harm by operation of Florida law.

26. Also, Jewell and Cameron have agreed that any breach (or threat of breach) of their covenants constitutes irreparable harm for which Aspirion is entitled to an injunction.

27. The Court finds, based on the evidence, that an injunction is warranted to prevent the loss of Aspirion's customers, employees, and goodwill.

## III. Weight of Threatened Injury Over Possible Harm.

28. The Court finds that Aspirion's threatened irreparable injury outweighs any possible harm to Defendants.

29. The temporary inconvenience that would result to Defendants by precluding Defendants' use of Aspirion's confidential information during the short duration of a temporary restraining order is outweighed by the threatened irreparable injury to Aspirion.

## IV. Public Interest.

30. The Court finds that the public interest favors granting a temporary restraining order given that public policy favors the enforcement of reasonable restrictive covenants and the protection of trade secrets.

## TEMPORARY RESTRAINING ORDER

31. Based on the foregoing, it is ORDERED AND ADJUDGED as follows:

    a. The TRO Motion is GRANTED.

b. Defendants are hereby enjoined from directly or indirectly providing services to any of Aspirion's company clients or prospective clients.

c. Defendants are hereby enjoined from interfering in any manner with Aspirion's business relationships or contracts.

d. Defendants are hereby enjoined from directly or indirectly soliciting Aspirion's clients or prospective clients.

e. Defendants are hereby enjoined from directly or indirectly soliciting any Aspirion employee or former employee who has worked for Aspirion in the past twelve (12) months.

f. Defendants are hereby enjoined from directly or indirectly using or disclosing Aspirion's confidential or proprietary business information or any trade secrets of Aspirion, including client lists.

g. Defendants are hereby ordered to return any property belonging to Aspirion, including client lists, client data, company documents, electronic files, computer hardware or software, confidential or proprietary information of Aspirion or regarding Aspirion's customers or business relationships, and any copies thereof, by _____, 2024.

h. Defendants are hereby ordered to provide Aspirion a full accounting of all Aspirion's clients and prospective clients solicited or served by Defendants either directly or indirectly since August 1, 2022, all income and/or revenue received by Defendants or any affiliated entity since August 1, 2022, and the location of all client data, client files, or property of Aspirion in Defendants' possession from

August 1, 2022, to the present. Said accounting shall be provided to Aspirion no later than the end of business on _____, 2024.

i. The Court, its in discretion, finds that no bond is necessary, given in part because Jewell and Cameron waived any bond requirement for the purposes of seeking injunctive relief in the Employment Agreements.

j. In accordance with Federal Rule of Civil Procedure 65(b), this Temporary Restraining Order shall expire fourteen (14) days after entry upon the docket, unless extended for good cause shown.

## PRELIMINARY INJUNCTION HEARING

32. It is further ORDERED AND ADJUDGED that:

a. Defendants shall appear before this Court on _____ in the courtroom of Judge _____ to show cause, if there is any reason why this Court should not enter a preliminary injunction enjoining the violations of law alleged in Plaintiffs' Complaint, and imposing such additional relief as may be appropriate.

b. Defendants shall file with the Court and serve on Plaintiffs' counsel any answering affidavits, declarations, responses, and/or legal memoranda no later than seven (7) days prior to the hearing on Plaintiffs' request for a preliminary injunction.

c. Plaintiffs may file responsive or supplemental pleadings, materials, affidavits, declarations, or memoranda with the Court and serve same on Defendants' counsel no later than three (3) days prior to the preliminary injunction hearing.

DONE AND ORDERED in Chambers at Miami, Florida, this _____ day of July, 2024.

_____
UNITED STATES DISTRICT JUDGE

Cc: All Counsel of Record