UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22875-CIV-ALTONAGA/Reid

**MAINSAIL PARENT, LLC**; *et al.*,

      Plaintiffs,

v.

**DAVID JEWELL**, *et al.*,

      Defendants.

_____/

## ORDER GRANTING TEMPORARY RESTRAINING ORDER AND SETTING PRELIMINARY INJUNCTION HEARING

**THIS CAUSE** came before the Court upon Plaintiffs, Mainsail Parent, LLC and Specialized Healthcare Partners, LLC's Motion for Entry of Temporary Restraining Order and Preliminary Injunction [ECF No. 6], filed on July 29, 2024.  The relief Plaintiffs seek is evident from the title of the Motion.  The Court has carefully considered the Complaint [ECF No. 1], associated exhibits, and applicable law.  For the following reason, the Motion is granted in part.

### I.  INTRODUCTION

Plaintiffs are, together, a technology vendor providing revenue cycle management services to healthcare organizations.  (*See* Compl. ¶¶ 1, 7–8, 16).  Defendants David Jewell, Michael Cameron, Alisha Mays, and Megan Kelly are former employees of Plaintiffs.  (*See id.* ¶¶ 9–12).  Defendant Ternium, LLC is a limited liability company formed by Jewell, Cameron, Mays, and Kelly.  (*See id.* ¶ 13).  The heart of this case is Plaintiffs' allegation that their "former employees . . . are actively diverting [Plaintiffs'] clients, prospects and employees to their new company," in violation of their employment agreements and the law.  (Mot. 6 (alterations added)).

In the Complaint, Plaintiffs bring seven claims for relief under, variously, the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et. seq.* ("DTSA"), and Florida law. (*See* Compl. ¶¶ 140–229). To address what Plaintiffs allege is "the very real and imminent threat of the loss of additional longstanding goodwill and business[,]" Plaintiffs separately seek entry of a temporary restraining order and for the Court to set a hearing on their request for a preliminary injunction. (Mot. 23 (alteration added)).

## II.  LEGAL STANDARDS

To obtain a temporary restraining order, a party must demonstrate

(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest.

*Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citations omitted); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

*Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary

to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974) (footnote call number omitted).

### III. DISCUSSION

The Court begins by considering the four factors for a temporary restraining order and then the two additional requirements imposed by Federal Rule of Civil Procedure 65(b)(1), concluding that the requirements for a temporary restraining order are met. The Court concludes by considering the scope of Plaintiffs' requested relief and their request that a bond be waived, disagreeing with Plaintiffs regarding their requests as to each.

**A. Temporary Restraining Order Factors**

As explained, Plaintiffs must show a substantial likelihood of success on the merits, irreparable injury, that the threatened injury to Plaintiffs outweighs the harms to Defendants, and that the public interest would be served by a temporary restraining order. *Schiavo*, 403 F.3d at 1225–26.

**Substantial Likelihood of Success on the Merits.** Plaintiffs bring seven claims under five theories or statutes. (*See generally* Compl.). For each claim, Plaintiffs have shown they have a strong probability of proving at trial that Defendants have violated the law.

***Counts I and II.*** First, Plaintiffs bring breach-of-contract claims against Jewell and Cameron. (*See id.* ¶¶ 140–72). Based on the record, the Court concludes there is good cause to believe:

1. Jewell and Cameron signed Employment Agreements that contain non-solicitation and confidentiality provisions, which are restrictive covenants governed by Florida statute.

2. The restrictive covenants in the Employment Agreements — which relate to Jewell's and Cameron's solicitation and service of Plaintiffs' clients; solicitation of employees; and the

retention, use, or disclosure of Plaintiffs' confidential information — are valid and enforceable because (1) the restrictive covenants aim to protect Plaintiffs' legitimate business interests under Florida law; (2) the restrictive covenants are reasonable in time (limited to one year); (3) the restrictive covenants are narrow, and thus reasonable, in geographic scope; and (4) the restrictive covenants only involve Plaintiffs' line of business and thus are reasonable. Moreover, the contractually specified restraints are reasonably necessary to protect Plaintiffs' established interests.

3.   Jewell and Cameron likely breached the Employment Agreements.   First, the Employment Agreements prohibit Jewell and Cameron from soliciting individuals who have been employed by Plaintiffs within the past year.   Yet, Jewell and Cameron have hired numerous individuals who worked for Plaintiffs within the previous year.   Second, the Employment Agreements prohibit Jewell and Cameron from soliciting or servicing Plaintiffs' clients.   Again, the evidence reflects that Jewell and Cameron have contacted and are currently servicing Plaintiffs' clients. Third, the Employment Agreements prohibit Jewell and Cameron from divulging Plaintiffs' confidential information.   Based on the described conduct, however, a reasonable inference can be made that Jewell and Cameron used Plaintiffs' confidential information to acquire business.

***Counts III and IV.***   Next, Plaintiffs allege all Defendants violated the DTSA and the Florida Uniform Trade Secret Act, Fla. Stat. § 688.001 *et. seq.* ("FUTSA").   (*See* Compl. ¶¶ 173–209).   Based on the record, the Court concludes there is good cause to believe:

1.   Plaintiffs' client lists, prospective client lists, pricing information, customer-specific data, and other "Confidential Information" as defined in the Employment Agreements constitute trade secrets under the DTSA and FUTSA.   Plaintiffs took reasonable steps to maintain the secrecy

of this information, given that (1) Plaintiffs had multiple policies aimed at protecting the information, including an Acceptable Use Policy and rules set forth in their Employee Handbook; and (2) Plaintiffs required employees, like Jewell and Cameron, to agree in the Employment Agreements not to divulge the information and to return any such data upon separation.

2. It is likely that the former employees misappropriated Plaintiffs' trade secrets without Plaintiffs' consent and by improper means, given that (1) their former employees had access to Plaintiffs' trade secrets while employed with Plaintiff; and (2) the former employees' new business gained the exact same clients the former employees serviced while employed with Plaintiffs.

**Count V.**  Plaintiffs also allege all Defendants breached their duty of loyalty to Plaintiffs. (*See id.* ¶¶ 198–209).  Based on the record, the Court concludes there is good cause to believe:

1. Under Florida law, Plaintiffs' former employees owed them a duty of loyalty, which included a duty to not use confidential information acquired during the course of their employment with Plaintiffs and to not solicit clients and Plaintiffs' other employees.

2. Plaintiffs' former employees likely breached their duty of loyalty, given that they (1) created their own business while employed with Plaintiffs; (2) induced each other and other employees to leave Plaintiffs and join their new business; and (3) induced several clients of Plaintiffs to do business with their own, new business instead of with Plaintiffs.

**Counts VI.**   Additionally, Plaintiffs allege all Defendants tortiously interfered with Plaintiffs' business relationships.  (*See id.* ¶¶ 210–21).  Based on the record, the Court concludes there is good cause to believe:

1. Plaintiffs had existing business relationships with healthcare providers such as Banner Health, Baptist Medical Center Jacksonville, Children's Hospital of Orange County, and Evangelical Health.

2.   Plaintiffs had prospective business relationships with healthcare providers such as Louisiana's Children Medical Center, University of New Mexico Health, and Valleywise Health.

3.   Plaintiffs' former employees had knowledge of these business relationships and prospective clients solely from their employment with Plaintiffs, especially considering that the former employees were assigned to these clients during their employment.

4.   Defendants likely intentionally interfered with Plaintiffs' business relationships by diverting the business on these accounts to their new business.  Plaintiffs' significant drop in business upon their former employees' departures suggests Defendants interfered with Plaintiffs' business relationships.

5.   Defendants' interference likely damaged Plaintiffs through the loss of the value of the diverted business as well as the damage to the relationship and goodwill enjoyed with their clients.

***Counts VII.***  Finally, Defendants likely participated in a civil conspiracy.  (*See id.* ¶¶ 222–29).  Based on the record, the Court concludes there is good cause to believe:

1.  Plaintiffs' former employees entered into an agreement, either expressly or implied, on or about September 2022 to create a new competing business in order to (1) solicit employees away from Plaintiffs; (2) steal Plaintiffs' existing and prospective clients and tortiously interfere with Plaintiffs' business relationships, and (3) misuse Plaintiffs' confidential and proprietary business information, which the former employees possessed by virtue of their employment, in aid of their business's solicitation of Plaintiffs' existing and prospective clients and employees.

Based on the foregoing, the Court concludes Plaintiffs have shown a substantial likelihood of success on the merits of their claims.

***Irreparable Harm.***  Based on the record, the Court concludes Plaintiffs have also shown that, absent a temporary restraining order, they will suffer irreparable injury.  *See Schiavo*, 403

F.3d at 1225–26.  As Plaintiffs explain, "Florida law presumes irreparable harm in cases involving violations of employment agreement provisions regarding trade secrets, customer lists, or direct solicitation of existing customers."  (Mot. 19 (quoting *Anchor Title & Escrow, LLC v. Omega Nat'l Title Agency, LLC*, No. 23-cv-8043, 2023 WL 3564942, at *2 (N.D. Fla. Apr. 14, 2023))).  Indeed, courts have routinely held that a defendant's use of proprietary information to solicit customers and clients to a direct competitor of the plaintiff risks irreparable loss of customers and business, goodwill, and market position and competitiveness.  *See Anchor Title & Escrow, LLC*, 2023 WL 3564942, at *2 (collecting cases).

Further, as Plaintiffs note, the Employment Agreements Jewell and Cameron signed expressly provide that "the breach or a threatened breach" of the Employment Agreements would cause Plaintiffs to "suffer irreparable harm" and potentially entitle them to injunctive relief. (Compl., Ex. 1, Jewell Agreement [ECF No. 1-7] 7; *id.*, Ex. 2, Cameron Agreement [ECF No. 1-8] 7; *see also* Mot. 19–20 (citing Jewell and Cameron Agreements)).

***Weight of Plaintiffs' Injury Over Defendants' Harm.***  Based on the record, the Court concludes Plaintiffs have also shown their threatened injury outweighs potential harm to Defendants.  *See Schiavo*, 403 F.3d at 1225–26.  As explained, Plaintiffs are at risk of significant, irreparable harm stemming from continued loss of business and damage to goodwill.  Defendants, meanwhile, would be subject only to temporary inconvenience arising from complying with the law.  In such circumstances, threatened injury outweighs potential harm.  *See, e.g.*, *JetSmarter Inc. v. Benson*, No. 17-62541-Civ, 2018 WL 2709864, at *8 (S.D. Fla. Apr. 6, 2018) (concluding that a defendant "would suffer little, if any harm, by being ordered to comply with [FUTSA] and the [employment agreement] to which he is bound" (alterations added)); *All Leisure Holidays Ltd. v. Novello*, No. 12-62328-Civ, 2012 WL 5932364, at *6 (S.D. Fla. Nov. 27, 2012) (concluding that

"[t]he temporary inconvenience that would result to Defendants precluding their use of [trade secrets] during the short duration of the [temporary restraining order] is outweighed by the threatened irreparable injury" (alterations added)).

*Public Interest.* Finally, based on the record, the Court concludes Plaintiffs have also shown the public interest weighs in favor of a temporary restraining order. *See Schiavo*, 403 F.3d at 1225–26. Certainly, as Plaintiffs state, "public policy favors the enforcement of reasonable restrictive covenants." (Mot. 22 (quotation marks omitted; quoting *Charles Schwab & Co., Inc. v. Aviles*, No. 07-21745-Civ, 2007 WL 9702744, at *9 (S.D. Fla. Aug. 23, 2007)). Similarly, "Florida law [] makes plain that protecting trade secrets does not disserve, but rather promotes the public interest." *JetSmarter Inc.*, 2018 WL 2709864, at *8 (alteration added; citations and footnote call number omitted)). In light of Plaintiffs' claims and the evidence in the record, the public interest here weighs in favor of granting Plaintiffs' request for a temporary restraining order.

**B. Rule 65 Requirements**

Having concluded Plaintiffs satisfy the four factors for a temporary restraining order, the Court turns to the two additional requirements laid out in Federal Rule of Civil Procedure 65(b)(1): that (1) the facts "clearly show [] immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition"; and (2) Plaintiffs' counsel "certifies in writing any efforts made to give notice and the reasons why it should not be required." *Id.* (alterations added). Here, both requirements are met.

As explained, Plaintiffs have shown they are and will continue to be subject to irreparable injury. Additionally, Plaintiffs' counsel has certified, in writing, that there were attempts to provide Defendants notice; but that "there is a real and palpable risk" of further violation and "further notice . . . may cause Defendants to attempt to delete electronic evidence of their

misappropriation and/or improper solicitation." (Mot. 25 (alterations added)). With that, Plaintiffs

have satisfied the requirements of Rule 65.

### C.  Scope of Relief

While the Court concludes Plaintiffs have shown that a temporary restraining order is

appropriate, the Court disagrees with the scope of relief requested in Plaintiffs' [Proposed]

Order . . . [ECF No. 6-1]. In addition to seeking more traditional injunctive relief, Plaintiffs ask

the Court to order Defendants "to return any property belonging to Plaintiffs"; as well as "to

provide [] a full accounting" of solicited and served clients, income or revenue, and the

whereabouts of Plaintiffs' property. (*Id.* 8–9 (alteration added)). This request strains the limits of

what should be achieved by a temporary restraining order.

As explained, *ex parte* temporary restraining orders "should be restricted to serving their

underlying purpose of preserving the status quo and preventing irreparable harm just so long as is

necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc.*, 415 U.S. at 439 (footnote

call number omitted). At this point, to order an exchange of property and a full accounting of

business records would do far more than preserve the status quo in preparation for a soon-to-be-

held hearing. The Court thus declines to adopt this portion of Plaintiffs' proposal.

### D.  Bond

Finally, Plaintiffs assert "no security should be required because the parties waived any

bond requirement for the purposes of seeking injunctive relief in the Employment Agreements."

(Mot. 23 (citation omitted)). This is only partially correct. Jewell and Cameron did sign

Employment Agreements entitling Plaintiffs to "injunctive or other equitable relief . . . without

posting a bond or other security[]." (Jewell Agreement 7 (alterations added); *see also* Cameron

Agreement 7 (same)). Yet, the temporary restraining order will issue against all Defendants:

Jewell and Cameron, two other individuals, and an LLC. Because only Jewell and Cameron waived the bond, the Court exercises its discretion to impose a bond of $16,000.00. *See BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) ("[T]he amount of security required by [Rule 65] is a matter within the discretion of the trial court[.]" (alterations added; quotation marks and citation omitted)).

## V.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that:

1.  Plaintiff's Motion for Entry of Temporary Restraining Order and Preliminary Injunction **[ECF No. 6]** is **GRANTED in part**.

    a.  Defendants are enjoined from directly or indirectly providing services to any of Plaintiffs' company clients or prospective clients.

    b.  Defendants are enjoined from interfering in any manner with Plaintiffs' business relationships or contracts.

    c.  Defendants are enjoined from directly or indirectly soliciting Plaintiffs' clients or prospective clients.

    d.  Defendants are enjoined from directly or indirectly soliciting any of Plaintiffs' employees or any former employees who have worked for Plaintiffs in the past twelve (12) months.

    e.  Defendants are enjoined from directly or indirectly using or disclosing Plaintiffs' confidential or proprietary business information or any trade secrets of Plaintiffs, including client lists.

f.  Pursuant to Federal Rule of Civil Procedure 65(c), Plaintiffs shall post a bond in the amount of **$16,000.00**, as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court.  In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

g.  In accordance with Federal Rule of Civil Procedure 65(b), this Temporary Restraining Order shall expire **fourteen (14) days** after entry upon the docket, unless extended for good cause shown.

2.  Plaintiffs shall file proof of service of the Summons, Complaint, Motion, and this Order upon Defendants on or by **August 1, 2024**.

3.  A hearing is set before the Court on **August 7, 2024, at 10:30 a.m.**, at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiffs' request for a preliminary injunction.  Defendants are on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them under 35 U.S.C. section 283; Federal Rule of Civil Procedure 65; the All Writs Act, 28 U.S.C. section 1651(a); and the Court's inherent authority.

**DONE AND ORDERED** in Miami, Florida, on this 31st day of July, 2024.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record