**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MAINSAIL PARENT, LLC
d/b/a ASPIRION; and                                         **CASE No. 1:24-cv-22875-CMA**
SPECIALIZED HEALTHCARE
PARTNERS, LLC,

   *Plaintiffs*,

v.

DAVID JEWELL; MICHAEL
CAMERON; ALISHA MAYS;
MEGAN KELLY; and TERNIUM LLC,

   *Defendants*.

_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

   Defendants David Jewell, Michael Cameron, Alisha Mays, Megan Kelly, and Ternium

LLC file this Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order and

Preliminary Injunction and Memorandum of Law in Support Thereof ("Motion") (D.E. 6):[1]

**INTRODUCTION**

   The record suggests that while still employed by Aspirion, the Individual Defendants

created a competing business. But that fact—standing alone—does not entitle the Movants to

injunctive relief. A preliminary injunction is an extraordinary remedy that is designed to prevent

imminent and irreparable harm. It is not a form of punishment. Here, Movants' bid for an

injunction must fail for several reasons. First, the at-issue restrictive covenants are unenforceable

for lack of any legitimate business interest. Movants have not—and cannot—establish the

existence of any substantial, protectable customer relationships or goodwill. And through several

hours of testimony across three witnesses, Movants have failed to articulate what their supposed

trade secrets are—let alone to prove that they have anything proprietary and of value, that

---

[1] David Jewell ("**Jewell**"), Michael Cameron ("**Cameron**") Alisha Mays ("**Mays**") and Megan
Kelly ("**Kelly**") are collectively "**Individual Defendants**." The Individual Defendants and
Ternium, LLC are collectively ("**Defendants**").

Defendants misappropriated anything proprietary of value, and that Defendants are presently utilizing some proprietary, valuable Aspirion information in connection with their new venture. Second, for the reasons just stated, the trade secret claims also fail. Third, Movants cannot identify any imminent and irreparable harm. To the extent Movants have any damages whatsoever, those damages are lost revenue and can be quantified—as admitted by their witnesses. Fourth, Movants' conduct in this matter to date should foreclose any equitable relief. Movants' lead witness— Aspirion's CEO—was forced to admit that her declaration contained false statements and statements about matters outside of her personal knowledge. She also admitted that she read much of her live testimony from her notes. Movants' second witness, Thomas Page, admitted that he violated the scope of Movants' access to protected health information in his quest to gather evidence for use in this litigation (a potential HIPAA violation).[2] And days ago—while the evidentiary hearing was in recess—Movants' lead counsel sent Defendants' counsel a settlement demand seeking $4 million and a 3-year restrictive covenant in exchange for (a) dropping this lawsuit and (b) agreeing not to pursue "criminal investigations". *See* August 8, 2024 Email from Counsel, attached hereto as Exhibit "A."

These proceedings are a shakedown. Movants are now leveraging the Court's prior grant of a TRO combined with the threat of criminal proceedings to get what they never fairly could obtain in this litigation. There is no universe in which Movants could get $4 million and 3-years of competitive restrictions in this case. Such a demand is a massive overreach. And when that demand comes with the threat of criminal proceedings, it raises grave questions about the Movants own misconduct and impropriety. Simply stated: Movants have a weak case and unclean hands. They can proceed on their claims and get whatever damages they can prove. But they are neither legally nor equitably entitled to injunctive relief.

## I. MEMORANDUM OF LAW

### A. STANDARD

A preliminary injunction is "an extraordinary and drastic remedy" governed by Federal Rule of Civil Procedure 65. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (citations omitted); *Ferrerro v. Assoc. Material, Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991) (federal procedural law governs issuance of preliminary injunctions). A motion for preliminary injunction

---

[2] Mr. Page is a licensed attorney admitted to the Florida Bar. Fla. Bar. No. 538388.

must be supported by evidence; a party is not entitled to preliminary injunctive relief solely on the basis of its naked allegations. *Am. Airlines, Inc. v. Spada*, 2023 WL 8001220, at *2 (S.D. Fla. Nov. 18, 2023) (quotations omitted).

Movants must establish: "(1) … a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*). Movants "bear[] the 'burden of persuasion' to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (citations omitted). The failure to establish one of the elements requires denial of injunctive relief. *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001).

### B. MOVANTS LACK A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON *ANY* OF THEIR CLAIMS

#### 1. <u>Movants Lack a Substantial Likelihood of Success on the Merits of Their Breach of Contract Claims against Jewell (Count I) and Cameron (Count II)</u>

Jewell and Cameron are the only Defendants with restrictive covenants. To establish a substantial likelihood of success on the merits of claims based on Jewell and Cameron's restrictive covenants, Movants were required to (1) demonstrate that the restrictions are enforceable, (2) demonstrate that Jewell and Cameron breached their respective agreements, and (3) defeat each of Jewell and Cameron's affirmative defenses directed at the breach of contact claims. *Lucky Cousins Trucking, Inc. v. QC Energy Res. Texas, LLC*, 223 F. Supp. 3d 1221, 1226 (M.D. Fla. 2016).

Any restrictive covenant must be evaluated through two lenses. The first lens is the antitrust or restraint of trade analysis.[3] The second is the contract lens. To support their request for relief, Movants provided generic allegations in their papers, conclusory and self-serving declarations, and live testimony that fell apart at the slightest pressure during the first day of an evidentiary hearing. But generalities and waffling are not enough. *See, e.g., Lucky Cousins*, 223 F. Supp. 3d at 1226 (finding a party must articulate "how the information is unique or proprietary" and explain how a party "could unfairly utilize the information to compete"). To demonstrate enforceability, Movants must: (1) "plead and prove the existence of one or more legitimate business interests

---

[3] The relevant law governing non-compete agreements, Florida Statutes § 542.335, is codified within the Chapter 542 – The Florida Antitrust Act.

justifying the restrictive covenant," and (2) prove that the contractually specified restraint is reasonably necessary to protect the established interests of the employer. Fla. Stat. § 542.335 (emphasis added); *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009); *Passalacqua v. Naviant, Inc.*, 844 So. 2d 792, 795 (Fla. 4th DCA 2003).

Generally, a legitimate business interest takes the form of trade secrets or other valuable confidential information, substantial customer relationships, or extraordinary training and education. Fla. Stat. § 542.335; *Hapney v. Cent. Garage, Inc.*, 579 So. 2d 127, 132 (Fla. 2d DCA 1991). Movants rely on relationships, goodwill, and supposed confidential and trade secret information as a basis for enforcement of the restrictions. But Movants failed to adequately articulate *what* specific information is at issue, *how* Defendants could use same to compete unfairly, or *why* their relationships are protectable. The burden to elaborate on what the legitimate business interests are and why the restrictions are enforceable was Movants'. *Passalacqua*, 844 So. 2d at 796 (holding plaintiff "did not articulate how any activity, method or technique utilized … was unique or proprietary in any way.").

### a.   *Plaintiffs Lack a Protectible Interest in The At-Issue Information*

To qualify as a legitimate business interest, the at-issue information must be valuable, confidential, unique to Movants, and not otherwise available to their competitors. *Anich Indus., Inc. v. Raney*, 751 So. 2d 767, 771 (Fla. 5th DCA 2000). Movants have not demonstrated that any of these factors are present. And none of them are.

Movants came to Court parroting buzzwords and generic terms referring to their information. They then attempted to dress up those allegations with a few screenshots and emails. During cross examination of Movants' witnesses, it became clear that there was no deeper substance behind the buzzwords. And that Movants could not articulate what their 'trade secrets actually are. Repeatedly, when questioned about specifics, Movants' witnesses: (a) denied knowledge about the phrases used to describe the at-issue information contained in their respective declarations (despite those same declarations swearing under penalty of perjury that they were made on personal knowledge), (b) suggested that other Aspirion agents were better suited to testify about such subjects, and (c) admitted that various items referred to in their declarations as confidential, proprietary, or trade secrets were in fact publicly available and freely shared with competitors and prospective clients without confidentiality protections in place.

The reality is, healthcare providers, systems, and facilities and their decision-makers' identities and contact information are all readily available and used by companies in this industry. Information is accessed from publicly available sources including regulatory websites and third-party aggregators. There is nothing confidential about lists of hospitals that operate in the United States or the decision makers at those entities. Nor is there anything confidential about contracts, policies, procedures, and general practices. The relevant industry focuses on arguing with insurance companies about coverage denials. The business methods used by market actors are naturally relatively uniform across the industry. And Movants make it a point to publish webinars, white papers, articles, blogs, and other detailed and often highly specific information on their website regarding their approach and methods. *See, e.g.,* https://www.aspirion.com/knowledge-center/. Movants' information is further spread throughout the industry at conferences and trainings provided to other industry actors.[4] Information accessible to anyone with an internet connection or affiliation with insurance denials cannot be valuable, confidential, or unique. *See Embroitique, LLC v. Stitchtopia, Inc.*, 2018 WL 1830796, at *9 (S.D. Fla. Jan. 3, 2018), *report and recommendation adopted*, 2018 WL 1813606 (S.D. Fla. Feb. 26, 2018) (no relief where supposed trade secret, "such as digitization techniques, design selection, pricing and marketing methodologies . . . were learned on the job as part of her regular duties, and also may be learned from public sources, such as internet videos.").

Take Movants' SalesForce excerpt (D.E. 31-29), which was the source of a considerable amount of testimony on the first day of the injunction hearing. To the extent Movants' witnesses were able to describe its contents, they admitted that the overwhelming majority of it was purchased from third-party vendors. Another subset of information contained therein, Movants' 'health risk' metric, was admitted by Mr. Shorten to be based on specific information about the work done with Movants, that is frequently updated, and offers no unfairly competitive value to Defendants, even if the Court assumes Defendants possess it, which there is no evidence of.

Mr. Shorten also made clear that much of the information at issue is shared not just with prospective customers, but with other market actors—direct competitors of Movants—without any

---

[4] Industry conferences go through strategies, methods, and technologies, among other things, and also provide attendees with (and sometimes simply publish) a list of attendees that includes names, employers, and contact information of attendees. *See, e.g.,* https://www.hbma.org/content/education-events/2024-annual-revenue-cycle-management-fall-conference.

protection in place (such as an NDA). That is because the nature of this industry is not zero-sum amongst competitors. They frequently work together. Some of Movants largest denials customers are also RCMs (i.e., their competitors). This is no surprise as the industry customers routinely utilize numerous RCM vendors simultaneously.

Even if this Court determines that Defendants possess the information Movants' have placed at issue, Movants must still prove how Defendants could use that information to engage in unfair competition. *See Passalacqua*, 844 So. 2d at 796 (finding no legitimate interest in confidential information where plaintiff failed to articulate how its methods were unique and how defendant could use that information to gain an unfair advantage); *Lucky Cousins*, 223 F. Supp. 3d at 1226. But just as Movants failed to adequately identify what the confidential information *is*, Movants failed to demonstrate *how* such information could be used to unfairly compete. Movants admitted that (a) they had no knowledge of Defendants having any access to Movants systems since their departure and (b) the information Movants utilize changes frequently, sometimes as much as daily. This undercuts any argument that the information at issue could confer any unfair competitive advantage upon Defendants. *Blue-Grace Logistics LLC v. Fahey*, 653 F. Supp. 3d 1172, 1180 (M.D. Fla. 2023) (finding employer did not carry its burden or showing that allegedly confidential rate information was still relevant and could lead to an unfair competitive advantage "given fluctuations in the industry"); *S. Wine and Spirits of Am., Inc. v. Simpkins*, 2011 WL 124631, *6 (S.D. Fla. Jan. 14, 2011) (denying injunction and holding information would become "stale-and therefore not valuable-within two to six months.").

Movants have also admitted that they are unaware of any of the at-issue confidential, proprietary, or trade secret information that Defendants are currently using. *Dyer v. Pioneer Concepts, Inc.*, 667 So. 2d 961 (Fla. 2d DCA 1996) (vacating non-compete portion of injunction because an employer failed to prove that its former employee was actually using confidential information in his new employment).

There is simply nothing in the record which allows the Court to conclude that the at-issue information allowed them to engage in unfair competition, at any time let alone right now or in the future. It stands to reason that if Movants had such information, they would have put it on. They did not. Their speculation does not warrant the extraordinary remedy which they seek.

> ### b. *Movants Cannot Establish a Legitimate Business Interest in Substantial Relationships*

As with their allegations regarding information, Movants' allegations about customers are remarkably generic given that they came to Court seeking an *ex parte* TRO, and now a preliminary injunction. By the plain terms of §542.335, Movants were required to put specific customers at issue. Fla. Stat. § 542.335(1)(b)(3); *see, e.g., Litig. Sols., L.L.C. v. McGonigal*, 2010 WL 111822, at *3 (S.D. Fla. Jan. 11, 2010) (denying non-compete injunction and holding that Florida non-compete law "does not state that customer relationships generally qualify as legitimate business interests" but instead "requires a showing of substantial relationships with specific customers."). The statute requires identification of specific customers because the pool of customers that Movants do business with is not *de facto* protectable. The critical question when analyzing a given relationship's protectability is the "substantiality" of that relationship with the entity seeking enforcement. *Vital Pharm., Inc. v. Alfieri*, 23 F.4th 1282, 1291 (11th Cir. 2022) (citing *Evans v. Generic Sol. Eng'g, LLC*, 178 So. 3d 114, 117–18 (Fla. 5th DCA 2015) and *Passalacqua.*, 844 So. 2d at 796).

"Florida case law reveals that a substantial relationship is more likely to exist where there is active, on-going business being conducted; exclusivity; a customer who cannot be easily identified by other competitors in the industry; and an expectation of continued business." *IDMWORKS, LLC v. Pophaly*, 192 F.Supp.3d 1335, 1340-1341 (S.D. Fla. 2016); *see also Evans*, 178 So. 3d at 117 (holding no substantial customer relationship where plaintiff lacked an exclusive contract with customer at issue). Applying that test to the relevant industry and the facts of this case, Movants' failures are plain.

There are hundreds of hospitals looking for help with insurance denials at any given moment. Mr. Page testified that customers come and go at their pleasing and do business with multiple RCM entities simultaneously. For example, one customer they put at issue (Baptist Jacksonville, a new client for Aspirion), retained at least three vendors for the same work Aspirion was retained to perform. Movants could not name a single client they have an exclusive or even near exclusive relationship with and otherwise admitted that clients are not required to send any business to Movants, even where there are contracts in place. Customers are also easily identifiable by every market actor, through third-party services or the use of platforms such as LinkedIn or Google.

Further, customers in this industry often award business based on bids and pitch meetings given by Movants and their competitors. Although Movants attempted to downplay the amount of bid-work, the reality is, much of the denial business comes through requests for proposals and pitch meetings attended by multiple competitors vying for the business. First, Movants have not pointed to a single time that they have lost out on a bid to Ternium. Second, open bid processes have long been a key indicator that a relationship cannot be construed as protectable under Florida law. *Shields v. Paving Stone Co., Inc.*, 796 So. 2d 1267, 1269 (Fla. 4th DCA 2001). This makes sense because all respondents to requests for proposals receive the same information and are given an equal shot at obtaining business and there is no reasonable expectation of future business even if a deal is agreed upon.

Finally, Movants want the Court to enjoin Cameron and Jewell from working with customers that no longer do business with Movants, that Movants have never done a dollar of business with, and that Movants have never even spoken to. Former relationships are simply not protectable. *See Evans*, 178 So. 3d at 116 (holding that protection of former customers does not constitute a legitimate business interest and collecting same). Nor are merely prospective customers. *See Advantage Digital Sys., Inc. v. Digital Imaging Servs.,* 870 So. 2d 111, 115 (Fla. 2nd DCA 2003) (no legitimate business interest in prospective customers that did not exist at the time of employment). Simply ingesting a list of healthcare facilities and hospitals that was obtained from a third party does not render those facilities and hospitals prospective customers. Movants did not identify a single specific prospective customer at issue and failed to adequately or appropriately define the at issue 'prospective' customers. There are no protectable relationships at issue.

### c. Movants Cannot Establish a Legitimate Business Interest in Goodwill

Protectable goodwill typically takes the form of a brand or name associated with a business in a particular area that could be improperly utilized by Defendants. Fla. Stat. § 542.335(1)(b)(4). Here, there is no evidence that Movants actually have any goodwill, let alone goodwill with any specific entities or in a specific territory or marketing area. *See, e.g., Thyssenkrupp Elevator Corp. v. Hubbard*, 2013 WL 5929132, at *4 (M.D. Fla. Nov. 4, 2013) (no legitimate interest in client goodwill where plaintiff failed to identify any facts or evidence in support of its assertion). Nor is there any evidence whatsoever that Defendants have ever utilized Movants' name or marks or any other possible aspects of their so-called goodwill to solicit or obtain any business.

## 2. Movants Lack a Substantial Likelihood of Success on their Trade Secret Claims (Counts III-IV)

Whether under federal or state law, the standard for establishing a trade secret claim is largely the same. *See* 18 U.S.C. § 1836(b)(1) ("**DTSA**") (requiring existence of a trade secret, reasonable measures to maintain secrecy, misappropriation, and interstate or foreign commerce) and Fla. Stat. § 688.002 ("**FUTSA**") (requiring plaintiff to establish existence of a trade secret, reasonable means to protect secrecy, and improper means). As described above, Movants' witnesses wilted when pressed about the nature of the supposed trade secrets at issue. This is surprising. If a company has trade secrets—specific, valuable information that afford it a competitive advantage—then someone should be able to describe it. That did not happen here. Reliance on general categories of information weighs more in favor of dismissal of a trade secret claim than it does injunctive relief. *See, e.g., Am. Registry, LLC v. Hanaw*, 2013 WL 6332971, at *4 (M.D. Fla. Dec. 5, 2013) (dismissing trade secret claim based on generic categories of information, not specific trade secrets). When asked about the trade secrets, Ms. Amick's testimony fell apart as soon as she went off script. She was unsure of and unable to explain many categories of the so-called trade secrets she swore existed and scrambled to explain her declaration allegedly based on personal information (even stating at one point that she based her declaration on information provided by others).

What Movants attempt—and what has been routinely rejected by the courts—is to create a post-employment competitive restriction out of thin air. But the muddled descriptions of Movants' alleged trade secrets are not enough to show a substantial likelihood of success and cannot form the basis of competitive restrictions. For example, FUTSA only "authorizes the injunction of specific, identifiable trade secrets," not "blanket restraint of competition." *Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*, 21 F.4th 1267, 1281 (11th Cir. 2021) quoting *Norton v. Am. LED Tech., Inc.*, 245 So.3d 968, 969 (Fla. 1st DCA 2018) ("[F]UTSA may not be used as a vehicle to restrict competition.").

Beyond the failure to sufficiently identify the alleged trade secrets, as described above and admitted by their agents during the evidentiary hearing, Movant's frequently disclose their information to competitors that they work with and clients (including prospective clients) without protections in place for that information. This is dispositive. *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir.1998) ("In a trade secret action, the plaintiff bears the

burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy."); *M.C. Dean, Inc. v. City of Miami Beach, Florida,* 199 F. Supp. 3d 1349, 1353 (S.D. Fla. 2016) (citing *In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 691 (Bankr.M.D.Fla.2010) (disclosure of supposed trade secret information to those who are "under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret.").

Beyond failing to put trade secrets in front of the Court, Movants have failed to demonstrate that any trade secrets were actually misappropriated. Referring back to the SalesForce excerpt, Mr. Shorten admitted that Defendants' access to it was cut off upon their termination, and there is zero evidence that they accessed it for any improper purpose or downloaded the Salesforce data before leaving. Similarly, there was no evidence that Defendants misappropriated items such as Movants' so-called algorithm or other data sets, whatever those may be.

**3. Movants Lack a Substantial Likelihood of Success on Their Claims for Breach of Duty of Loyalty (Count V)**

*a. Movants Failed to Identify Any Damages From Defendants' Alleged Breaches of Duty of Loyalty*

The Individual Defendants creation of Ternium, even while employed, is not actionable. *Fish v. Adams*, 401 So. 2d 843, 845 (Fla. 5th DCA 1981). Subsequent actions could be found actionable. Or they could not. The creation of generalized advertisements, drafting of policies or procedures, or the retention of material created during  Kelly or Mays' Aspirion employment do not constitute breaches of their respective duties of loyalty. *Id.* at 845.  Further, to the extent that Movants have turned down various business opportunities from existing clients (including the at-issue client Banner Health), they have no claim for breach of duty of loyalty.  *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1362 (S.D. Fla. 2012).

Movants' position strains credulity. They allege that for many months while employed at Aspirion, the Individual Defendants were diverting business to Ternium. But to date, they have failed to adduce any evidence of actual business lost that is attributable to Defendants. There was no credible testimony that Movants lost any clients or business from prospective clients. And Mr. Page admitted that he had not asked any of the clients that have been put at issue whether Ternium had been afforded business that Aspirion would have otherwise received. Even if Defendants had been awarded such business, Movants' witnesses admitted that lost business would be calculable. *See infra* § I.C. There is simply no coherent explanation as to what damages Movants sustained

by the creation of Ternium, let alone why any *forward-looking harm* will accrue based on the Individual Defendants' alleged prior breaches.

The lack of cognizable damages are demonstrated by the few specific instances Movants fixated on. For example: Movants attempted to make hay of Jewell and Cameron's exchange of bid information related a request for proposal from University of New Mexico ("UNM") while Cameron was still employed. But there is no dispute that neither Ternium nor Aspirion were awarded that business. There are no damages flowing from that bid. Because Movants have failed to convincingly link any of Defendants' alleged conduct to actual harm that they suffered or will suffer, they have failed to demonstrate a likelihood of success on the merits of their claims.

Additionally: Movants point to no cases in which an alleged breach of an employee's duty of loyalty allowed the Court to fashion post-employment restrictive covenants. This makes sense, as restraints on trade must be set forth in writing. Fla. Stat. § 542.335(1)(a). Instead, they point to three cases that are inapposite, with the possible caveat that they suggest that injunctive relief is not appropriate in the present scenario. D.E. 6 at p. 13; s*ee Charles Schwab & Co., Inc. v. McMurry*, 2008 WL 5381922, at *3 (M.D. Fla. Dec. 23, 2008) (granting injunctive relief due to existence of non-solicitation agreement, not breach of duty of loyalty); *Nat'l Ins. Consulting Group, LLC v. Kandel*, 12020 WL 13389742, at *4 (S.D. Fla. Jan. 15, 2020) (Plaintiff did not seek injunctive relief on breach of duty of loyalty claim); *Martin v. Partsbase, Inc*., 2020 WL 7495536, at *3 (S.D. Fla. Dec. 4, 2020) (no discussion of injunction predicated upon breach of duty of loyalty). Injunctions flowing out of breaches of duties while employed are not designed to work as restraints of trade. The overwhelming amount of duty of loyalty cases that involve injunctive relief are in the context of business partners—that is, the unwinding of a deal or the removal of a member where breaches are ongoing or could occur in the future. *See, e.g., Allied Portables, LLC v. Youmans*, 2015 WL 6813669, at *8 (M.D. Fla. Nov. 6, 2015). That is not the case here.

### b. *The Independent Tort Doctrine Precludes Count V as to Jewell and Cameron*

As discussed above, Jewell and Cameron were subjected to restrictive covenants. Those restrictions applied during their employment as well as afterwards. *See* Employment Agreements of Jewell (D.E. 1-7, Ex. 1 in the Evidentiary Hearing) and Cameron (D.E. 1-8, Ex. 2 in the Evidentiary Hearing) at ¶¶ 8, 9, 10. Where a party is in contractual privity with another, to bring a valid tort claim, the party must establish that the tort is independent of any breach of contact.

*Yuken Corp. v. Gedcore LLC*, 2022 WL 3701233, at *3 (S.D. Fla. June 21, 2022) (citation omitted); *see also Cabana on Collins, LLC v. Regions Bank*, 2012 WL 718806, at *10 (S.D. Fla. Mar. 5, 2012). In other words, where the "the facts surrounding a breach of contract action are indistinguishable from an alleged tort, and where the alleged tort does not cause harm distinct from that caused by the breach of contract, a plaintiff is barred from bringing a separate tort action." *Cabana on Collins, LLC*, 2012 WL 718806, at *10 (citing *Behrman v. Allstate Ins. Co.,* 388 F.Supp.2d 1346, 1349 n.4 (S.D. Fla. 2005).

Here, the very action that constitutes the basis for Plaintiff's breach of contract claims—Jewell's and Cameron's breach of confidentiality and non-solicitation obligations—also constitutes the basis for Movants' breach of duty of loyalty claim. Movants are not entitled, with respect to Jewell and Cameron, to seek "a better bargain than originally made," by circumventing the legal rights and obligations provided for in their respective contracts. *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.,* 891 So.2d 532, 536–37 (Fla.2004)

### 4. Movants Lack a Substantial Likelihood of Success on their Claim for Tortious Interference (Count VI) [5]

To prevail on its claim for tortious interference with a business relationship under Florida law, Movants are required to demonstrate 1) a business relationship, 2) knowledge of the relationship by the defendant, 3) an intentional and unjustified interference with that relationship by the defendant, and 4) damage to plaintiff. *Bortell v. White Mountains Ins. Grp., Ltd*., 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009). The alleged interference must be specific. *Sarkis v. Pafford Oil Co., Inc.*, 697 So. 2d 524, 527 (Fla. 1st DCA 1997). Movants must identify the customers and others who are the subject of the alleged interference. *Id.* ("[B]ecause the interference alleged here is not specific, [the] claim must fail"). To satisfy their pleading burden, Movants were required to allege Defendants tortiously interfered with "*present or prospective customers* … no cause of action exists for tortious interference with a business's relationship to the community at large." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994) (emphasis added). Movants therefore have no likelihood of success with respect to the industry writ large (which is what they have sought through their incredibly broad definition of 'prospective customers').

---

[5] To the extent that the tortious interference claim as to Jewell and Cameron flows from their own restrictive covenants, the claims are barred by the independent tort doctrine.

Similarly, Movants skip a vital step with respect to interference with their current or former employees: In order for the alleged solicitation to be unlawful, Movants will need to demonstrate that those employees' underlying restrictive covenants are enforceable. They did not even attempt to make that showing. Movants rested without questioning any of the Defendants about the manner in which they hired anyone or solicited anyone. The record is devoid of any information about these circumstances.

With respect to customers or employees that were identified, Movants failed to demonstrate that they possess any certainty regarding future business.  A "speculative hope of future business is not sufficient to sustain the tort of interference with a business relationship." *In re Maxxim Med. Grp., Inc.*, 434 B.R. at 689 (citation omitted).

### 5. <u>Movants Lack a Substantial Likelihood of Success on their Claim for Civil Conspiracy (Count VII)</u>

"[T]he intra-corporate conspiracy doctrine ... precludes the claim of conspiracy against individuals and their corporation for wholly internal agreements to commit wrongful or actionable conduct." *Yuken Corp. v. Gedcore LLC*, 2022 WL 3701233, at *8–9 (S.D. Fla. June 21, 2022) (quoting *Mancinelli v. Davis*, 217 So. 3d 1034, 1037 (Fla. 4th DCA 2017)).  "Since a corporation is a legal entity which can only act through its agents, officers and employees, a corporation cannot conspire with its own agents unless the agent has a personal stake in the activities that are separate and distinct from the corporation's interest." *Id*. (citations omitted); *see also Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) ("The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself." (citations omitted)).

Movants were required to sufficiently allege that the Individual Defendants had a separate and distinct personal stake in the conduct complained of from Ternium. *Cedar Hills Props. Corp.*, 575 So. 2d at 676. They did the opposite. *See, e.g.*, D.E. 1 at ¶ 223 (outlining Defendants' alleged 'conspiracy'). All four Individual Defendants are owners, and every alleged action complained of was taken on either behalf of or in furtherance of Ternium, not separate and distinct from it. There is no evidence to the contrary, nor could there be. Without evidence of such distinctions in Defendants interests, Movants have not "plausibly allege[d]", let alone demonstrated a substantial

likelihood of success, on the claim that the Individual Defendants "conspired with their own business entity." *Yuken Corp.*, 2022 WL 3701233, at \*8–9.

### 6. **Plaintiffs' Cannot Defeat Defendants' Affirmative Defenses**

Defendants have not yet filed a response to the Complaint. They will ultimately raise several affirmative defenses. To adequately show a substantial likelihood of success on the merits, Movants must defeat each affirmative relevant defense. *Lucky Cousins*, 223 F. Supp. 3d at 1226 (M.D. Fla. 2016); *see also* Fla. Stat. § 542.335(g)(3)) (with respect to Movants' breach of contract claims). Below, Defendants describe some affirmative defenses that they will raise.

#### a. *Movants Seek Equitable Relief with Unclean Hands*

Movants' request for equitable relief is barred by their own unclean hands in connection with this litigation. *Marin v. Seven of Five Ltd.*, 921 So.2d 699, 700 (Fla. 4th DCA 2006). Mr. Page has already admitted to exceeding his authorized access to databases belonging to at least one of the very customers placed at issue in an effort to obtain evidence in connection with this lawsuit. That entailed accessing personal health information without authorization. Movants have also attempted to leverage the specter of criminal proceedings in order to strong-arm Defendants into paying millions of dollars and agreeing to expansive three year restrictive covenants. That is wholly improper. Movants have violated the cardinal rule of equity that "he who comes into equity must come with clean hands [i]t is a self-imposed ordinance that closes the door ... to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument v. Automotive Maintenance Machinery*, 324 U.S. 806, 814, (1945).

#### b. *Movants Contract Claims Cannot Overcome the Defense of Illegality*

Florida law provides that a contract in which a "person is restrained from exercising a lawful profession, trade, or business of any kind, as provided by subsections (2) and (3) hereof, is to that extent valid, and all other contracts in restraint of trade are void." Fla. Stat. § 542.33. The at-issue restrictive covenants constitute unlawful restraints of trade insofar as they are not predicated upon protecting Movants' legitimate business interests. This is because (1) there is no confidential, proprietary, or trade secret information at issue, (2) any customer relationships and goodwill at issue were not and are not protectible within the meaning of Fla. Stat. § 542.335, and (3) there are no other legitimate business interests that justify enforcement of the restrictive covenants. *See* Fla. Stat. § 542.335(2); *Passalacqua*, 844 So. 2d at 795.

### c.   *Movants Have Not Overcome the Defense of Competition Privilege*

To the extent Defendants are competing with Movants, they are not presently employing improper means to do so. Although Florida law recognizes multiple types of improper means of competing for business, the competition privilege bars a plaintiff from turning a defendant's broken promise not to compete into a claim for tortious interference. *Ice Portal, Inc. v. VFM Leonardo, Inc.,* 2010 WL 2351463, at *7 (S.D. Fla. June 11, 2010) (citations omitted).  Nothing in the record reflects that Defendants are using any of Movants' material (nor that any at-issue relationships are actually protectable). This means that there is no evidence of any ongoing use of any improper means to compete. *See* Fla. Std. Jury Inst. 408.7, Affirmative Defense – Competition, Notes for Use ("To defend using the competition privilege, a defendant must prove . . .the defendant *does not employ* an improper or wrongful means" (emphasis added) (citations omitted). Defendants' conduct is not otherwise restraining competition. Defendants are advancing their competitive interests in the market through lawful means. Any claims based on Defendants' competition fail because their conduct in that respect is entirely privileged. *Audiology Distr., LLC v. Simmons*, 2014 WL 7672336, at *11 (M.D. Fla. 2014).

### C.   THERE IS NO THREAT OF IRREPARABLE HARM

Irreparable harm is the *sine qua non* of preliminary injunctive relief. *Siegel*, 234 F.3d at 1176. Even if the Court determines that Movants demonstrated a substantial likelihood of success on the merits of any of their claims, their failure to demonstrate irreparable harm requires that the Motion be denied. *Moon v. Med. Tech. Assocs., Inc.*, 577 F. App'x 934, 937 (11th Cir. 2014) (party seeking preliminary injunction "bears the burden of clearly establishing it will be harmed in the future by an actual and imminent injury for which adequate compensatory or other corrective relief will not be available"). Even substantial harm (of which there is presently no evidence) does not support a finding of *irreparable* harm if there is a "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation[.]" *Sampson v. Murray,* 415 U.S. 61, 90 (1974); *see also VAS Aero Services, LLC v. Arroyo*, 860 F. Supp. 2d 1349, 1362 (S.D. Fla. 2012) ("In order for an injury to be irreparable, it cannot be undone through monetary remedies.").

It is true that irreparable harm necessarily cannot be quantified. But that does not mean that it cannot be explained. In fact, it should be easier to explain than damages at an early stage. If the house is on fire, you should be able to point at it, even if you can't come to an accounting

15

of what is inside. That's not the case here.  Movants failed to demonstrate that they will suffer any harm, let alone the type that cannot be redressed through dollars.  At most, they have made generalized claims of a reduction in revenue from a couple of customers.[6] Movants came to the Court and were granted an *ex parte* TRO. They should have had more than rank speculation to support their allegations of irreparable harm. They do not.

But it is not just that Movants did not properly explain what their supposed irreparable harm is.  Movants' witnesses were clear that money could make Movants whole. Ms. Amick was unequivocal that Movants' harm could be quantified. Mr. Shorten agreed as well (until a series of rapid-fire leading questions by Movants' counsel at the end of his testimony about generic categories of so-called harm). With that cat fully out of the bag, Movants rested. All harm alleged flows back into Defendants' competition or allegations surrounding the early days of Ternium. But competition alone—even if it is ultimately deemed to be unfair at some point—is not evidence of irreparable harm. It is the signifier of a market.

Movants' papers do nothing to shed light on the nature of their alleged harm. The inadequacy of a compensatory remedy is addressed but once in Movants' briefing, and then only in passing. D.E. 6 at p. 20[7].  The term "irreparable" appears more frequently, but either in circular and conclusory ways or to claim that Movants are entitled to a 'presumption' of irreparable harm (more on that below). There remains no explanation as to why Defendants' continuing competition presents a forward-looking actual and imminent injury that cannot be remedied by money. And nothing the Movants say or do now will change that.  The Motion should fail on these grounds.

### 1.  There is No Presumption of Irreparable Harm

Movants argue that due to §542.335's presumption of irreparable harm, their claims are entitled to a presumption of irreparable harm. Fla. Stat. § 542.335(1)(j). That is not the case. Rule 65 trumps § 542.335's presumption of irreparable harm. *Alfieri*, 23 F.4th 1282, 12-93-99 (11th Cir. 2022) (Pryor, C.J., concurring) (rejecting applicability of § 542.335's statutory presumption of irreparable harm as conflicting with Rule 65); *see also Blue-Grace Logistics LLC v. Fahey*, 340 F.R.D. 460, 466 (M.D. Fla. 2022) (§ 542.335's presumption improperly eliminates movant's

---

[6] One witness even admitted that a client indicated a reduction of business due to a third-party clearinghouse company being hacked in February 2024.

[7] This page number is a reference to the 20th page of PDF. The page number reflected in the motion is page motion is page 15, because the first several pages of the filing are a table of contents.

burden to show that harm cannot be remedied through damages) (citation omitted). Movants chose to come to federal court. They cannot hide behind § 542.335's presumption simply because they failed to articulate any actual irreparable harm.

### D. THE HARM TO DEFENDANTS OUTWEIGHS ANY INJURY TO PLAINTIFFS

The harm considered by the Court is confined to "what might occur in the interval between ruling on the preliminary and trial on the merits." *U.S. v. Lambert,* 695 F.2d 536, 540 (11th Cir.1983). From seeking a TRO without notice to Defendants, to the more recent tactics described above, Movants appear to be doing anything they can to avoid resolving this issue on the merits. As described above, Movants came to Court with naked, conclusory allegations, and did nothing to expound on those allegations when pressed. Instead, grave questions over the credibility of Movants' witnesses have arisen. And they have failed to apprise the Court of what could happen to them if Defendants are not enjoined. On the other hand, each Individual Defendant will suffer substantial harm if enjoined as their livelihood will evaporate through the shuttering of Ternium and their careers will be derailed as they defend themselves in this case. *See MacLachlan*, 625 F. App'x at 407.

### E. INJUNCTIVE RELIEF DISSERVES THE PUBLIC INTEREST

Movants are trying to stymie Defendants' fair market activities through illegal restraints of trade, misrepresentations regarding the nature of the industry, speculative claims of irreparable harm, and threats of criminal proceedings. The aim of their Motion is not to stop unfair competition—that can be done by proceeding through the normal course of litigation. They want to cut a new competitor from the market, where hundreds of other already compete.  The public has an interest in the denial of this type of injunctive relief.

### F. MOVANTS SHOULD BE REQUIRED TO POST A BOND

In the event the Court issues a preliminary injunction, Movants should be required to post a bond of no less than $4,000,000 dollars. *See* Fla. Stat. §542.335. Trial is not set. Ternium is a growing business and Movants have indicated the business at issue is at least this amount. Any injunction will deprive Defendants of revenue and profits. Prior to the issuance of any injunction, Defendants request an evidentiary hearing to determine the proper amount of bond.

### CONCLUSION

Movants failed to satisfy Rule 65. Their Motion must be denied in its entirety.

Dated: August 12, 2024                           Respectfully submitted,

                                                 By: /s/ *Jonathan E. Pollard*
                                                     Jonathan E. Pollard
                                                     Florida Bar No.: 83613
                                                     jpollard@pollardllc.com

                                                     Christopher S. Prater
                                                     Florida Bar No.: 105488
                                                     cprater@pollardllc.com

                                                     Michael A. Boehringer
                                                     Florida Bar No.: 1018486
                                                     mboehringer@pollardllc.com

                                                     **Pollard PLLC**
                                                     401 E. Las Olas Blvd., #1400
                                                     Fort Lauderdale, FL 33301
                                                     Telephone: 954-332-2380
                                                     Facsimile: 866-594-5731
                                                     *Attorneys for Defendants*