UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22875-CIV-ALTONAGA/Reid

**MAINSAIL PARENT, LLC**; *et al.*,

    Plaintiffs,
v.

**DAVID JEWELL**, *et al.*,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Plaintiffs, Mainsail Parent, LLC and Specialized Healthcare Partners, LLC's Motion for Entry of . . . Preliminary Injunction [ECF No. 6], filed on July 29, 2024. Defendants, David Jewell, Michael Cameron, Alisha Mays, Megan Kelly, and Ternium LLC filed a Response [ECF No. 35]; to which Plaintiffs filed a Reply [ECF No. 50]. The Court held an evidentiary hearing on the Motion, during which the parties presented witnesses and evidence. (*See* Minute Entries [ECF Nos. 33, 37, 39, 51]). The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted in part.

**I. FINDINGS OF FACT**

The Court makes the following findings of fact:

1. Plaintiff, Specialized Healthcare Partners, LLC is wholly owned by Plaintiff, Mainsail Parent, LLC d/b/a Aspirion Health Resources (collectively, "Aspirion"). Aspirion is a revenue cycle management ("RCM") company providing services in multiple RCM industry segments.

2. The RCM industry segment at issue in this case involves the hiring of third-party RCMs (such as Aspirion) to appeal the denial of payments by insurance companies for healthcare organizations. This segment is commonly referred to as "denials."

3. Aspirion has over 1,400 employees, including more than 140 attorneys and legal staff, over 60 clinicians, 9 sales representatives, and other healthcare professionals

4. RCM vendors, including Aspirion, negotiate and sign service agreements with hospitals and health systems.  These agreements are not fixed-services agreements guaranteeing a certain amount of business.  Nor are the agreements exclusive.  Rather, vendors like Aspirion must bid for contracts and, consequently, invest time, resources, and efforts in developing and maintaining goodwill and relationships with clients.  Aspirion has created a Client Success Division to focus on managing, retaining, and strengthening its client relationships.

5. Defendants, Michael Cameron, David Jewell, Alisha Mays, and Megan Kelly (the "Individual Defendants") previously worked for Aspirion.  Jewell's employment terminated in September 2023.  Mays' and Kelley's employment terminated in October 2023.  Cameron's employment terminated in January 2024.

6. Jewell and Cameron — but not Kelley or Mays — signed employment agreements containing 12-month restrictive covenants.  The covenants prohibited Jewell and Cameron from (1) soliciting or hiring Aspirion's current or former employees if the employees had been employed by Aspirion in the preceding 12 months; or (2) soliciting or serving Aspirion's customers.  The covenants included an acknowledgment that Jewell and Cameron had reviewed the provisions with legal counsel and the restrictions were reasonable.

7. The Individual Defendants, while employed by Aspirion, worked with several Aspirion clients including Children's Hospital of Orange County, Evangelical Health, and Banner Health.

CASE NO. 24-22875-CIV-ALTONAGA/Reid

8. In 2022, Jewell registered Ternium. Ternium sat dormant until sometime in 2023, when the Individual Defendants collectively decided to operate a business together under the already registered Ternium name. The Individual Defendants are all owners of Ternium and signed an operating agreement in August 2023.

9. During their employment with Aspirion, the Individual Defendants took steps to prepare Ternium to compete with Aspirion for RCM denials business.

10. Defendants have since provided services to several healthcare entities, including Aspirion clients like Children's Hospital of Orange County, Evangelical Health, and Banner Health.

11. Defendants have also since hired four individuals — in addition to Mays and Kelly, as co-founders — who were employed by Aspirion within the past 12 months. Defendants drafted non-disclosure agreements to use in discussing potential employment opportunities with Aspirion employees. Over half of Ternium's current employees are ex-Aspirion employees.

12. As employees, the Individual Defendants had access to internal databases and documents. Some of the information is specific to Aspirion's work and its knowledge of clients. Other information at issue is publicly available and/or is shared by Aspirion with competitors, with which it works.

13. There is no evidence that Defendants currently have or are using other information at issue, like "health risk" scores, an internal "algorithm," client and prospective client lists, sales pipeline information, business plans, and financial documents. There is also no evidence that Defendants downloaded confidential or trade secret information from Plaintiffs' systems or that Defendants have used such information in connection with work for Ternium.

14. Two of the individual Defendants retained laptops belonging to Aspirion, but as part of their termination, access to Plaintiffs' systems would have been cut off when the Individual Defendants' employment ended.

## II.  LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citations omitted).

## III.  CONCLUSIONS OF LAW

Plaintiffs bring seven claims against Defendants.  (*See generally* Compl. [ECF No. 1]).  In Counts I and II, Plaintiffs allege Jewell and Cameron breached their contracts by violating the restrictive covenants in their employment agreements.  (*See id.* ¶¶ 140–72).  In Counts III and IV, Plaintiffs allege all Defendants violated the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*, and the Florida Uniform Trade Secret Act, Fla. Stat. § 688.001, *et seq.*, respectively.  (*See id.* ¶¶ 173–97).  In Count V, Plaintiffs allege the Individual Defendants breached their duties of loyalty.  (*See id.* ¶¶ 198–209).  In Count VI, Plaintiffs allege tortious interference by all Defendants.  (*See id.* ¶¶ 210–21).  And in Count VII, Plaintiffs allege all Defendants engaged in a civil conspiracy.  (*See id.* ¶¶ 222–29).

Not all of Plaintiffs' claims warrant injunctive relief.  Where allegedly injurious conduct "occurred entirely in the past" and, thus, "[t]here is no ongoing or threatened" injury, a preliminary injunction will not issue.  *Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 530 (E.D. Pa. 2018) (alteration added) (declining to issue a preliminary injunction on a breach-of-fiduciary-duty

claim where the defendants were no longer employed by the plaintiff). Here, Counts V, VI, and VII rely on conduct that took place while the Individual Defendants were employed by Plaintiffs; there are no allegations that Defendants are currently or will soon breach duties of loyalty, tortiously interfere with Plaintiffs' future relationships, or engage in a new civil conspiracy. (*See generally* Compl.). Consequently, the Court limits its analysis to Counts I, II, III, and IV.

### A. Counts I and II

Counts I and II are brought against Jewell and Cameron only, based on alleged violations of the restrictive covenants in their employment contracts. The Court considers each of the four preliminary injunction factors in turn.

***Likelihood of success.*** Plaintiffs have shown a substantial likelihood of success on the merits of Counts I and II. Jewell and Cameron signed employment agreements preventing them from, within a certain time period, soliciting or serving Aspirion's customers. Plaintiffs have identified several customers with whom they have had longstanding relationships and with whom Defendants now work. Jewell and Cameron do not dispute that they now work with these customers. (*See generally* Resp.). Instead, they argue the covenants are unenforceable. (*See id.* 3–8). The Court disagrees.

Under Florida law, "restrictive covenants are valid if the employer can prove: (1) the existence of one or more legitimate business interests justifying the restrictive covenant; and (2) that the contractually specified restraint is reasonably necessary to protect the established interests of the employer." *Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1304 (S.D. Fla. 2004) (citation omitted). Jewell and Cameron challenge only Plaintiffs' showing as to the first prong.

A business's "substantial relationships with . . . existing clients" is a legitimate business interest. *All Star Recruiting Locums, LLC v. Ivy Staffing Sols. ("All Star"), LLC*, No. 21-cv-62221,

2022 WL 2340997, at *13 (S.D. Fla. Apr. 8, 2022) (alteration added; citation omitted). Here, Defendants argue the relationships identified by Plaintiffs are not substantial because they are not exclusive and are subject to frequent open bid processes.[1] (*See* Resp. 7–8). Not so.

True, courts have considered exclusivity to be a marker of a substantial business relationship. *See IDMWORKS, LLC v. Pophaly*, 192 F. Supp. 3d 1335, 1340–41 (S.D. Fla. 2016). Yet, it is only one such marker, along with the existence of "active, on-going business" and "an expectation of continued business." *Id.* (collecting cases). Indeed, a non-exclusive relationship may still constitute a substantial relationship where "employees devote a significant amount of time to developing those relationships in hopes of securing future business[.]" *All Star*, 2022 WL 2340997, at *14 (alteration added; citation omitted) ; *see also Head Kandy, LLC v. McNeill*, No. 23-cv-60345, 2023 WL 6309985, at *10 (S.D. Fla. Sept. 12, 2023), *report and recommendation adopted*, 2023 WL 7318907 (S.D. Fla. Nov. 7, 2023) (concluding that, although a plaintiff did "not have exclusive relationships with its customers and ha[d] little guarantee that its customers w[ould] return after any individual purchase, . . . the consistent pattern of purchases by at least a sub-set of the[] customers" showed it had substantial relationships with "specific prospective customers" and "arguably . . . with existing customers" (alterations added; quotation marks and citations omitted)). Certainly, Aspirion has "a legitimate business interest in preventing its employees from leveraging the relationships they built at [its] expense to benefit another company." *All Star*, 2022 WL 2340997, at *14 (alteration added; citations omitted).

---

[1] Defendants challenge other legitimate business interests asserted by Plaintiffs (*see* Resp. 4–8), but because the Court concludes Plaintiffs have asserted at least one legitimate business interest, it need not consider the remaining interests at issue, *cf. Butler v. Ala. Jud. Inquiry Comm'n*, 111 F. Supp. 2d 1224, 1230 (M.D. Ala. 2000) ("It is sufficient if the law or facts support a substantial likelihood of success on at least one claim that would sustain the issuance of a temporary restraining order." (citation omitted)).

At the hearing, Plaintiffs established that they have active, ongoing relationships with several clients and a reasonable expectation of continued business from those clients. They also showed that the development of those relationships required a significant amount of time and resources, including from Jewell and Cameron. This is sufficient to constitute a substantial relationship and a legitimate business interest.

Moreover, Jewell and Cameron's solicitation and service of Plaintiffs' clients "constitutes an erosion to the business relationships and goodwill with [Plaintiffs'] customers[.]" *Technomedia Sols., LLC v. Scopetto*, No. 13-cv-1061, 2013 WL 6571558, at *15 (M.D. Fla. Dec. 13, 2013) (alterations added). Jewell and Cameron argue Plaintiffs have identified no specific goodwill with any of their clients. (*See* Resp. 8). To the contrary, incentives, services, and relationships with customers are closely related to a business's reputation and goodwill. *See Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1443 (11th Cir. 1991); *Head Kandy, LLC*, 2023 WL 6309985, at *9 (quoting Florida law to explain that "goodwill is that intangible asset arising as a result of name, reputation, customer loyalty, location, products, and similar factors" (quotation marks and citation omitted)). And "the focus of preliminary injunctive relief is on maintaining long standing business relationships and preserving the goodwill of a company built up over the course of years of doing business." *Technomedia Sols., LLC*, 2013 WL 6571558, at *15 (alteration adopted; quotation marks and citation omitted).

Because Jewell and Cameron now work for clients with whom Plaintiffs have a substantial relationship, in violation of their employment contracts, the Court is satisfied Plaintiffs have shown a substantial likelihood of success on the merits of their breach-of-contract claims.[2]

---

[2] Defendants also insist Plaintiffs must overcome several affirmative defenses before the Court may find a substantial likelihood of success on the merits. (*See* Resp. 14–15). "On a motion for preliminary injunction, plaintiffs must demonstrate a likelihood of success on the merits . . . as to *asserted* affirmative defenses[.]" *Alston v. www.calculator.com*, 476 F. Supp. 3d 1295, 1318 (S.D. Fla. 2020) (alterations and emphasis

***Irreparable injury.*** Under Florida law, because Plaintiffs have shown a likelihood of success on their breach-of-contract claims, they are also entitled to a rebuttable presumption of irreparable injury. *See Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009) (citing Fla. Stat. § 542.335(1)(j)).

As Jewell and Cameron note (*see* Resp. 16–17), there is some uncertainty in this Circuit as to whether federal courts should apply this state law presumption, *see Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1299 (11th Cir. 2022) (Pryor, C.J., concurring) (arguing that the presumption in Florida law does not apply in federal court). For now, no binding opinion from the Eleventh Circuit has decided the issue, *see id.* at 1292 (declining to resolve the "knotty choice-of-law question" raised by the presumption); and courts in this District have continued to apply it, *see, e.g.*, *Strategic Venue Partners, LLC v. Braunschweig*, No. 23-61653, 2024 WL 670470, at *5 (S.D. Fla. Jan. 3, 2024) (citing *TransUnion Risk & Alt. Data Sols., Inc. v. MacLachlan ("TransUnion")*, 625 F. App'x 403, 406 (11th Cir. 2015) (concluding that the rebuttable presumption "works in tandem" with federal pleading standards)).

In any event, even without the presumption, Plaintiffs have shown irreparable harm. "[T]he loss of . . . goodwill is an irreparable injury." *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 780 (11th Cir. 2015) (alterations added; quotation marks and citation omitted). In fact, here, it "is the logical consequence of [Plaintiffs'] prima facie showing[.]" *TransUnion*, 625 F. App'x at 406 (alterations added). The Court is thus satisfied that Plaintiffs will face irreparable injury without injunctive relief against Jewell and Cameron.

---

added; quotation marks omitted; collecting cases). Defendants have not yet asserted any affirmative defenses in a responsive pleading and may not do so through their briefing. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

*Balance of harms.*  As explained, Plaintiffs are threatened with irreparable injury by the violations of Jewell and Cameron's restrictive covenants.  Jewell and Cameron argue "their livelihood will evaporate[,]" and "their careers will be derailed[.]"  (Resp. 17 (alterations added)).  Such considerations are — as Plaintiffs note (*see* Reply 13–14) — not cognizable under Florida statute, *see* Fla. Stat. § 542.335(1)(g).  Nonetheless, the Eleventh Circuit has, in an unpublished opinion, concluded this provision of Florida law "should not be applied" in balancing the harms associated with injunctive relief.  *TransUnion*, 625 F. App'x at 407.

Even factoring in the individualized economic impacts on Jewell and Cameron, the Court is not persuaded the balance of harms tilts in their favor.  Plaintiffs are not seeking to enjoin Jewell and Cameron from working — or even from operating their competing business.  Ultimately, Jewell and Cameron will only be harmed to the extent they are forced to comply with covenants they voluntarily signed and by which they are already bound.  In such circumstances, the balance of harms tilts decisively in favor of Plaintiffs.  *See, e.g.*, *JetSmarter Inc. v. Benson*, No. 17-62541-Civ, 2018 WL 2709864, at *8 (S.D. Fla. Apr. 6, 2018), *report and recommendation adopted*, 2018 WL 2688774 (S.D. Fla. Apr. 26, 2018); *XN Fin. Servs., Inc. v. Conroy*, No. 12-80143-Civ, 2012 WL 12873512, at *10 (S.D. Fla. Mar. 5, 2012).

*Public interest.*  Jewell and Cameron argue, in conclusory fashion and without legal citation, that there are broad policy interests militating against the enforcement of restrictive covenants.  (*See* Resp. 17).  To the contrary, "Florida courts recognize that the public has an interest in the enforcement of restrictive covenants." *Osborne Assocs., Inc. v. Cangemi*, No. 17-cv-1135, 2017 WL 5443146, at *16 (M.D. Fla. Nov. 14, 2017) (collecting cases).  The undersigned agrees with other courts concluding that "[t]he public [] has an interest in enforcing contracts and

preventing unfair, tortious competition." *XN Fin. Servs., Inc.*, 2012 WL 12873512, at *10 (alterations added).

With that, Plaintiffs have shown their entitlement to injunctive relief on their breach-of-contract claims against Jewell and Cameron.[3]

### B. Counts III and IV

Moving on, in Counts III and IV, Plaintiffs allege all Defendants violated the Defend Trade Secrets Act and Florida Uniform Trade Secret Act. (*See* Compl. ¶¶ 173–97). To prevail on these claims, Plaintiffs must show that trade secrets actually exist. *See* 18 U.S.C. § 1836(b)(1); Fla. Stat. § 688.002. Plaintiffs have not met their burden on this point, and because the Court does not find that they have a substantial likelihood of success on the merits, it does not reach the remaining preliminary injunction factors. *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

Throughout the proceedings, Plaintiffs have alleged the existence of "extensive trade secrets" like client information, pricing data, and planning documents. (Reply 5). At the hearings, however, these trade secrets failed to materialize. Much of the information Defendants could have accessed while employed by Plaintiffs was, in fact, publicly available information or information freely shared with other competitors.

While Plaintiffs alluded to internal processes, procedures, and plans they consider proprietary, much of this information is of the kind courts have found not to constitute a trade secret — either because it is too vague in scope, too quickly outdated, or too personal to an employee. *See, e.g.*, *Blue-Grace Logistics LLC v. Fahey*, 653 F. Supp. 3d 1172, 1179–81 (M.D.

---

[3] Jewell and Cameron do not meaningfully dispute the enforceability of the portion of their restrictive covenants that prohibits them from soliciting or hiring certain of Plaintiffs' employees. (*See* Resp. 13). Nor do they dispute that this portion of the covenants was also violated. (*See generally id.*). An injunction will therefore also issue to enforce this portion of the employment contracts.

Fla. 2023) (concluding that plaintiffs had failed to show the existence of confidential or proprietary information where much of the information at issue was public and became stale quickly); *Embroitique, LLC v. Stitchtopia, Inc.*, No. 16-61606-Civ, 2018 WL 1830796, at *8–9 (S.D. Fla. Jan. 3, 2018) (rejecting that "information and methodologies" were trade secrets where many of the skills acquired by an employee "were learned on the job as part of her regular duties, and also may be learned from public sources"), *report and recommendation adopted*, 2018 WL 1813606 (S.D. Fla. Feb. 26, 2018); *So. Wine & Spirits of Am., Inc. v. Simpkins*, No. 10-21136-Civ, 2011 WL 124631, at *6 (S.D. Fla. Jan. 14, 2011) (declining to issue an injunction in part because, although a defendant potentially retained confidential business information, the information "would be stale — and therefore not valuable — within two to six months").

Moreover, even if some of the information Plaintiffs identified was confidential or proprietary, there is no evidence Defendants retained, used, or are using this information. *See* 18 U.S.C. § 1836(b)(3)(A)(i) (authorizing injunctions to prevent "actual . . . misappropriation" (alteration added); Fla. Stat. § 688.003(1) (same)). Plaintiffs may not rely simply on speculation that, because Defendants once had access to confidential information, they *might* have and currently *are* misusing that information. *See WellCare Health Plans, Inc. v. Preitauer*, No. 12-cv-713, 2012 WL 1987877, at *7 (M.D. Fla. May 23, 2012) (rejecting as "speculative" an argument that a defendant's employment with a competitor would "*inevitably* lead to disclosure of [] alleged confidential information and trade secrets" (emphasis in original; alteration added)), *report and recommendation adopted*, 2012 WL 1987692 (M.D. Fla. June 4, 2012); *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 148 F. Supp. 2d 1326, 1338 (S.D. Fla. 2001) ("Merely possessing trade secrets and holding a comparable position with a competitor does not justify an injunction." (citation omitted)).

Finally, even if Defendants did, as Plaintiffs allege, previously misappropriate confidential or proprietary information, the focus of an injunction is on preventing future violations. *See Freedom Med. Inc.*, 343 F. Supp. 3d at 530–31. Here, two Defendants admitted they have retained Plaintiffs' laptops. But Plaintiffs' witnesses testified Defendants' access to confidential or proprietary information would, under normal circumstances, have been terminated shortly after their employment. Plaintiffs' witnesses had no reason to believe normal practices were not followed; nor did they point to any evidence suggesting Defendants had found a way to circumvent these practices. Defendants' continued possession of laptops, while remarkable, does not constitute evidence of "threatened misappropriation[.]" 15 U.S.C. § 1836(b)(3)(A)(i) (alteration added); *see also* Fla. Stat. § 688.003(1).

To be sure, Plaintiffs' description of Defendants' actions is concerning. But whether these actions amount to liability depends on the resolution of questions not before the Court at this time. What matters now is whether Plaintiffs have shown their entitlement to the "extraordinary and drastic remedy" of a preliminary injunction. *Am.'s Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014) (quotation marks and citation omitted). Because Plaintiffs have not met their burden, a preliminary injunction is not warranted for these claims.

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. The Motion for Entry of . . . Preliminary Injunction **[ECF No. 6]** is **GRANTED in part**.

2. Jewell and Cameron are enjoined from soliciting or hiring Aspirion's current employees or former employees if those employees were employed by Aspirion in the preceding 12 months.

3. Jewell and Cameron are enjoined from soliciting or serving Aspirion's customers.

CASE NO. 24-22875-CIV-ALTONAGA/Reid

4. Pursuant to Federal Rule of Civil Procedure 65(c), Plaintiffs shall post a bond in the amount of $50,000 (less $16,000 to account for the sum Plaintiffs already posted for the TRO), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

5. The Temporary Restraining Order **[ECF No. 17]** is set aside.

**DONE AND ORDERED** in Miami, Florida, this 26th day of August, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record