UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22875-CIV-ALTONAGA/Reid

**MAINSAIL PARENT, LLC**; *et al.*,

    Plaintiffs,
v.

**DAVID JEWELL**, *et al.*,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendants, David Jewell, Michael Cameron, Alisha Mays, Megan Kelly, and Ternium LLC's Motion to Dismiss, in Part, Plaintiffs' Complaint [ECF No. 72], filed on October 7, 2024. Plaintiffs, Mainsail Parent, LLC and Specialized Healthcare Partners, LLC (collectively, "Plaintiffs" or "Aspirion"), filed a Response [ECF No. 73]; Defendants, perhaps tellingly, did not file a reply. The Court has reviewed the record, the parties' written submissions, and applicable law. For the following reasons, the Motion is denied.

**I. BACKGROUND**

This case arises from allegations of unfair competition, breaches of contract, and acts of disloyalty by former Aspirion employees. (*See* Compl. [ECF No. 1] ¶ 1). Aspirion, a revenue cycle management ("RCM") company, specializes in appealing the denial of insurance claims on behalf of healthcare organizations. (*See id.* ¶¶ 16, 19, 22). "[C]ompetition within the RCM industry is aggressive and highly sensitive to price and level of service provided." (*Id.* ¶ 2 (alteration added)). With over 170 clients nationwide, Aspirion has cultivated its business relationships through substantial investment in proprietary algorithms, specialized employee training, marketing and sales techniques, and industry contacts. (*See id.* ¶¶ 19–20, 64).

Defendants Jewell, Cameron, Mays, and Kelly (the "Individual Defendants") are all former senior-level Aspirion employees. (*See id.* ¶¶ 1, 9–12). Jewell, once a Managing Attorney and later Executive Director of Client Success at Aspirion, played a critical role in handling major client accounts, such as Children's Hospital of Orange County, Cedars Sinai, and Piedmont Healthcare. (*See id.* ¶¶ 9, 23–25). His employment agreement, signed in March 2018, contained a restrictive covenant that was intended to prevent him from competing with Aspirion or soliciting its employees and clients for a set period after his departure. (*See id.* ¶¶ 26–39). Jewell ultimately resigned from Aspirion in September 2023. (*See id.* ¶ 41).

Cameron served as Aspirion's Chief Client Officer and later as Senior Vice President of Sales. (*See id.* ¶ 43). He, too, was bound by a restrictive covenant — similar to Jewell's — in his employment agreement. (*See id.* ¶¶ 43–44). Cameron resisgned in January 2024. (*See id.* ¶ 55).

Kelly and Mays both "held the title of Managing Attorney [and] Executive Director of Client Success [at Aspirion] and, therefore, had the same or similar responsibilities as Jewell." (*Id.* ¶ 57 (alterations added)). Each managed approximately 25% of the company's client accounts (*see id.* ¶¶ 58, 60) and were pivotal in ensuring "client satisfaction, client retention, [and] client expansion" (*id.* ¶ 58 (alteration added)). Both women departed Aspirion in October 2023, mere weeks after Jewell left the company. (*See id.* ¶¶ 61–62).

While still employed at Aspirion, the Individual Defendants orchestrated a covert scheme to launch Ternium LLC, a competing venture offering nearly identical RCM services. (*See id.* ¶¶ 1–3, 13, 42, 56, 63, 84–139). An internal investigation by Aspirion revealed these plans materialized as early as August 2022 — over a year before any of the Individual Defendants separated from the company. (*See id.* ¶¶ 84–85). In September 2022, the Individual Defendants filed articles of organization for Ternium with Delaware's Secretary of State, and in March 2023,

began registering for web domains. (*See id.* ¶¶ 88–89). During this period, the Individual Defendants also courted Aspirion's clients, mined the company's list of business leads, and induced its employees to defect to Ternium. (*See id.* ¶¶ 91–122).

Jewell and Cameron, despite their restrictive covenants, purportedly leveraged Aspirion's proprietary information and industry contacts to "poach[] Aspirion's workforce and steal[] Aspirion's clients for Ternium's benefit, and for their own benefit." (*Id.* ¶ 1 (alterations added)). Moreover, the Individual Defendants are accused of conspiring to launch Ternium, recruit Aspirion's employees and clients, and misuse confidential business information. (*See id.* ¶ 223).

On July 29, 2024, Plaintiffs filed the Complaint, alleging, in relevant part, breach of the duty of loyalty against the Individual Defendants (Count V), tortious interference against all Defendants (Count VI), and civil conspiracy against all Defendants (Count VII). (*See id.* ¶¶ 198–229). Jewell and Cameron now move to dismiss Counts V and VI, arguing these claims are barred by the independent tort doctrine; and all Defendants seek dismissal of Count VII, contending it is precluded by the intra-corporate conspiracy doctrine. (*See generally* Mot.).

## II. LEGAL STANDARD

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant[s]-unlawfully-harmed-me accusation." *Id.* (alterations added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation

omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id*. at 678 (alterations added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant[s] acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (alteration added; citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court must construe the complaint "in a light most favorable to the plaintiff[s]" and take its factual allegations as true. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (alteration added; citation omitted).

### III.  DISCUSSION

Defendants Jewell and Cameron argue Counts V (Breach of the Duty of Loyalty) and VI (Tortious Interference) are barred by the independent tort doctrine, and all Defendants insist Count VII (Civil Conspiracy) is precluded by the intra-corporate conspiracy doctrine. (*See generally* Mot.).

***Counts V and VI.***  The parties dispute whether Plaintiffs' claims for breach of the duty of loyalty and tortious interference qualify as "independent" torts that could warrant relief. Jewell and Cameron argue Counts V and VI merely repackage the same conduct underlying the breach of contract claims in Counts I and II — namely, the violations of contractual confidentiality and non-solicitation obligations. (*See* Mot. 1–2).[1] In contrast, Plaintiffs maintain that these counts are based on duties that are distinct from those imposed by the employment agreements. (*See* Resp.

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Case 1:24-cv-22875-CMA   Document 74   Entered on FLSD Docket 11/06/2024   Page 5 of 8

CASE NO. 24-22875-CIV-ALTONAGA/Reid

3–6).  The Court agrees with Aspirion's position and declines to dismiss Counts V and VI.

In Count V, Plaintiffs allege the Individual Defendants breached their duty of loyalty to Aspirion by leveraging the company's confidential information for Ternium's benefit, soliciting Aspirion's employes and clients to join Ternium, and directly competing for customers.  (*See* Compl. ¶¶ 198–209).  Further, in Count VI, Plaintiffs allege Defendants exploited their knowledge of Aspirion's current and potential clients, obtained exclusively through their employment at Aspirion, to tortiously interfere with Aspirion's business relationships.  (*See id.* ¶¶ 210–221).

Florida's independent tort doctrine "posits that a party to a contract can recover economic loss in tort against the other contracting party only when there is additional, wrongful conduct chargeable to that party [that] amounts to a tort independent and separate from the claimed contract breach."  *Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc.*, 991 F. Supp. 2d 1271, 1279 (S.D. Fla. 2014) (alteration added; citation omitted).  An independent "tort claim and a breach of contract claim are distinct because the sources imposing the duties allegedly breached are distinct."  *Jabil, Inc. v. Essentium, Inc.*, No. 19-cv-1567, 2020 WL 10353824, at *5 (M.D. Fla. May 29, 2020) (citation omitted).  "If public policy — not just a contract — imposes, say, a fiduciary duty, a breach of that duty might result in a[n] [actionable] tort."  *Id.* (alterations added).

Plaintiffs are correct that Counts V and VI "are based on the breach of duties which are not contractually grounded[.]"  (Resp. 3 (alteration added; quoting *Tiara Condo. Ass'n, Inc.*, 991 F. Supp. 2d at 1279)); *see also Trumpet Vine Invs., N.V. v. Union Cap. Partners I, Inc.*, 92 F.3d 1110, 1117 (11th Cir. 1996) (holding that "[a] fiduciary duty may arise out of a contractual relationship which is independent of the contract itself" (alteration added; citation omitted)).  "It is well-established under Florida law that an employee owes a fiduciary duty and a duty of loyalty to his or her employer[,]" even without a formal contractual arrangement.  *Bank of Am., N.A. v.*

*Crawford*, No. 12-cv-691, 2013 WL 593743, at *3 (M.D. Fla. Feb. 15, 2013) (alteration added; citations omitted).

While "[a]bsent agreement to the contrary, there is nothing to preclude an agent from competing with his principal after the termination of their relationship, . . . he may not engage in disloyal acts in anticipation of his future competition." *Bank of Am., N.A.*, 2013 WL 593743, at *3 (alterations added; citations and quotation marks omitted). And "[e]ven after the employment relationship is over, an agent is precluded from using for his own advantage information or material acquired by him in the course of his employment." *Id.* (alteration added; citation and quotation marks omitted). These are the very accusations Plaintiffs make in Counts V and VI, untethered to any specific contractual provision or agreement. (*See* Compl. ¶¶ 198–221). Thus, the independent tort doctrine is not applicable in this context.

***Count VII.*** The parties also dispute whether Aspirion's civil conspiracy claim is precluded by the intra-corporate conspiracy doctrine. Defendants contend "[a]ll four Individual Defendants are owners [of Ternium], and every alleged action complained of [in Count VII] was taken on either behalf of or in furtherance of Ternium, not separate and distinct from it." (Mot. 3–4 (alterations added)). Plaintiffs insist that "[their] conspiracy claim targets the [Individual] Defendants for having reached either an express or implied agreement to conspire to *create* Ternium" and that "these 'pre-formation' allegations render the intra-corporate conspiracy doctrine inapplicable[.]" (Resp. 6 (alterations adopted; other alterations and emphasis added; citation and quotation marks omitted)). Plaintiffs, again, have the better argument.

In Count VII, Plaintiffs allege Defendants agreed "to (1) conspire to create Ternium, (2) solicit employees away from [Aspirion] to join Ternium, (3) us[e] Ternium to unlawfully steal [Aspirion's] . . . clients and tortiously interfere with its business relationships and the . . . goodwill

6

developed in connection [therewith], and (4) misuse [Aspirion's] confidential . . . information that the [Individual] Defendants possessed by virtue of their employment, in aid of Ternium's solicitation of [Aspirion's] . . . clients and employees." (Compl. ¶ 223 (alterations added)).

The intra-corporate conspiracy doctrine holds that "a corporation cannot conspire with its employees[;] and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (alteration added). This "is based on the nature of a conspiracy and the legal conception of a corporation." *Id.* "[A] conspiracy requires a meeting of the minds between two or more persons to accomplish a common and unlawful plan." *Id.* (alteration added; citation omitted). "[J]ust as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *Id.* (alteration added; citations omitted).

The intra-corporate conspiracy doctrine does not apply when the alleged conspirators act outside "the scope of their employment[.]" *Id.* (alteration added). Here, the exception applies by necessity, as Ternium did not yet exist when the Individual Defendants coordinated their efforts to launch the competing venture. (*See* Compl. ¶¶ 84, 88); *see also C. Albert Sauter Co. v. Richard S. Sauter Co.*, 368 F. Supp. 501, 510 (E.D. Pa. 1973) (finding the doctrine inapplicable where "the defendants conspired, prior to the formation of a corporation, to form [such an entity] for the purpose of injuring the plaintiff" (alteration added)). Plaintiffs allege the conspiracy between the Individual Defendants "began as early as August 2022" (Compl. ¶ 84), predating Ternium's formation by at least a month (*see id.* ¶ 88). Thus, the intra-corporate conspiracy doctrine poses no barrier to Plaintiffs' conspiracy claim against the Individual Defendants.

As for Ternium, Defendants' argument falls equally flat. To reiterate, "[f]or the purpose

of [a] motion to dismiss, the complaint is construed in the light most favorable to the plaintiff[s], and all facts alleged by the plaintiff[s] are accepted as true." *In re U.S. Sugar Corp. Litig.*, 669 F. Supp. 2d 1301, 1309 (S.D. Fla. 2009) (alterations added). Plaintiffs allege Ternium, from its inception, was itself a member of the conspiracy, acting alongside the Individual Defendants to divert clients and employees from Aspirion. (*See* Compl. ¶¶ 224–226); *see also C. Albert Sauter Co.*, 368 F. Supp. at 510 (finding it relevant "that the [alleged] conspiracy began on or before July 9, 1971, that the defendant corporation was incorporated on November 29, 1971 pursuant to the conspiracy[,] and that from its inception[,] the corporation was a member of the conspiracy" (alterations added)). Hence, Plaintiffs may pursue their conspiracy claim against all Defendants.

Taken as true, Plaintiffs' allegations in Counts V–VII — along with the reasonable inferences drawn from them — are sufficient to withstand Defendants' motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants, Michael Cameron, David Jewell, Alisha Mays, Megan Kelly, and Ternium LLC's Motion to Dismiss, in Part, Plaintiffs' Complaint **[ECF No. 72]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 6th day of November, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record