**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MAINSAIL PARENT, LLC
d/b/a ASPIRION; and                                     **CASE No. 1:24-cv-22875-CMA**
SPECIALIZED HEALTHCARE
PARTNERS, LLC,

        *Plaintiffs*,

v.

DAVID JEWELL; MICHAEL
CAMERON; ALISHA MAYS;
MEGAN KELLY; and TERNIUM LLC,

        *Defendants*.

_____/

## DEFENDANT MICHAEL CAMERON'S
## ANSWER, AFFIRMATIVE DEFENSES, AND JURY TRIAL DEMAND

      Defendant Michael Cameron serves this Answer, Affirmative Defenses, and Jury Trial Demand in response to Plaintiffs' Complaint for Injunctive Relief and Damages (ECF No. 1) ("Complaint").

**I.**    **ANSWER**[1]

### NATURE OF ACTION

    1.    Admitted as to the nature of the cause of action. All remaining allegations are denied.

    2.    Denied.

    3.    Denied.

### JURISDICTION AND VENUE

    4.    Admitted that this Court has jurisdiction. All remaining allegations are denied.

---

[1] The headings throughout this Answer section (§ I) mirror those contained in the Complaint. To the extent any response is required to those headings, they are denied.

5.      Admitted that this Court has jurisdiction. All remaining allegations are denied.

6.      Admitted that this Court has jurisdiction. All remaining allegations are denied.

7.      Defendant is without sufficient knowledge information to admit or deny this allegation, therefore, denied.

8.      Defendant is without sufficient knowledge information to admit or deny this allegation, therefore, denied.

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Denied.

13.     Admitted that Ternium, LLC is a Delaware company. Defendant is without sufficient knowledge information to admit or deny the remaining allegations, therefore, denied.

14.     Admitted that venue is proper in this court. All remaining allegations are denied.

15.     Admitted that venue is proper in this court. All remaining allegations are denied.

## FACTUAL BACKGROUND

**A. The RCM Industry**

16.     Defendant is without sufficient knowledge information to admit or deny this allegation, therefore, denied.

17.     Defendant is without sufficient knowledge information to admit or deny this allegation, therefore, denied.

18.     Defendant is without sufficient knowledge information to admit or deny this allegation, therefore, denied.

### B. Aspirion

19.    Defendant is without sufficient knowledge information to admit or deny this allegation, therefore, denied.

20.    Defendant is without sufficient knowledge information to admit or deny this allegation, therefore, denied.

21.    Denied.

22.    Denied.

### C. The Former Employee Defendants

#### Defendant David Jewell

23.    Admitted.

24.    Defendant is without sufficient knowledge information to admit or deny this allegation, therefore, denied.

25.    Denied.

26.    Admitted that Jewell's employment agreement is attached as Exhibit 1. All remaining allegations are denied.

27.    Admitted.

28.    Denied. Aver that the referenced agreement speaks for itself and Defendant maintains the restrictive covenants therein are unenforceable under applicable law.

29.    Denied. Aver that the referenced agreement speaks for itself and Defendant maintains the restrictive covenants therein are unenforceable under applicable law.

30.    Denied. Aver that the referenced agreement speaks for itself and Defendant maintains the restrictive covenants therein are unenforceable under applicable law.

31.    Denied. Aver that the referenced agreement speaks for itself and Defendant

maintains the restrictive covenants therein are unenforceable under applicable law.

32.     Denied. Aver that the referenced agreement speaks for itself and Defendant maintains the restrictive covenants therein are unenforceable under applicable law.

33.     Denied. Aver that the referenced agreement speaks for itself and Defendant maintains the restrictive covenants therein are unenforceable under applicable law.

34.     Denied. Aver that the referenced agreement speaks for itself and Defendant maintains the restrictive covenants therein are unenforceable under applicable law.

35.     Denied. Aver that the referenced agreement speaks for itself and Defendant maintains the restrictive covenants therein are unenforceable under applicable law.

36.     Denied. Aver that the referenced agreement speaks for itself and Defendant maintains the restrictive covenants therein are unenforceable under applicable law.

37.     Denied. Aver that the referenced agreement speaks for itself and Defendant maintains the restrictive covenants therein are unenforceable under applicable law.

38.     Denied. Aver that the referenced agreement speaks for itself and Defendant maintains the restrictive covenants therein are unenforceable under applicable law.

39.     Denied. Aver that the referenced agreement speaks for itself and Defendant maintains the restrictive covenants therein are unenforceable under applicable law.

40.     Denied.

41.     Admitted.

42.     Admitted that Jewell is an owner of Ternium, LLC. All remaining allegations are denied.

**Defendant Michael Cameron**

43.     Admitted.

44.     Admitted that Cameron's employment agreement is attached as Exhibit 2. All remaining allegations are denied.

45.     Admitted.

46.     Denied. Aver that the referenced agreement speaks for itself.

47.     Denied. Aver that the referenced agreement speaks for itself.

48.     Denied. Aver that the referenced agreement speaks for itself.

49.     Denied. Aver that the referenced agreement speaks for itself.

50.     Denied. Aver that the referenced agreement speaks for itself.

51.     Denied. Aver that the referenced agreement speaks for itself.

52.     Denied. Aver that the referenced agreement speaks for itself.

53.     Denied. Aver that the referenced agreement speaks for itself.

54.     Denied. Aver that the referenced agreement speaks for itself.

55.     Admitted.

56.     Admitted that Cameron is an owner of Ternium, LLC. All remaining allegations are denied.

**<u>Defendants Alisha Mays and Megan Kelly</u>**

57.     Admitted.

58.     Defendant is without sufficient knowledge information to admit or deny this allegation, therefore, denied.

59.     Denied.

60.     Defendant is without sufficient knowledge information to admit or deny this allegation, therefore, denied.

61.     Denied.

62.     Denied.

63.     Admitted that Kelly and Mays are owners of Ternium, LLC. All remaining allegations are denied.

**D. Aspirion's Policies Protecting Its Confidential Information**

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied. Aver that the referenced policy speaks for itself.

69.     Denied. Aver that the referenced policy speaks for itself.

70.     Denied. Aver that the referenced exhibit speaks for itself.

71.     Denied. Aver that the referenced exhibit speaks for itself.

**E. Aspirion Discovers Ternium and Its Connection to the Former Employee Defendants.**

**1. Aspirion Notice "Ternium" In its Clients' Accounting Systems**

72.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

73.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

74.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

75.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

      **2.   Aspirion Identifies Its Ex-Employees Listed on Behalf of "Ternium In Its Clients' Accounting Systems.**

76.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

77.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

78.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

      **3.   Aspirion Becomes Aware that Jewell is Working on Behalf of Ternium and Immediately Sends a Cease-and-Desist Letter and Initiates an Investigation.**

79.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

80.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

81.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

82.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

**F.   Aspirion's Investigation Uncovers That Defendants Formed and Operated Ternium Long Before They Resigned From The Company.**

83.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

**1. The Former Employee Defendants Formed Ternium While Employed by Aspirion.**

84.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

85.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

86.     Denied.

87.     Denied.

88.     Denied.

89.     Denied.

90.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

**2. The Former Employee Defendants Solicited Aspirion's Clients While Employed by Aspirion.**

91.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

92.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

93.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

94.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

95.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

96.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

97.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

98.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

99.     Defendant is without sufficient information to admit or deny these allegations, therefore, denied. Aver that the document cited in the referenced declaration is not a June 2023 email chain.

100.    Denied.

**3. The Former Employee Defendants Pursued Aspirion's Corporate Opportunities for Their Benefit and While Employed by Aspirion.**

101.    Denied.

102.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

103.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

104.    Denied.

105.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Defendant is without sufficient information to admit or deny these allegations,

therefore, denied.

110.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

111.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

112.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

113.    Denied.

114.    Denied.

115.    Admitted.

**4. The Former Employee Defendants Solicited Aspirion's Employees While Employed by Aspirion and Thereafter.**

116.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied

117.    Denied.

118.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

119.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

120.    Denied. Aver that the referenced documents speak for themselves.

121.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

122.    Denied.

**G. Even After Aspirion Sent the Cease-and-Desist Letter, Defendants Continue to Actively Solicit Aspirion's Clients and Employees.**

123.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

124.    Denied. Aver that the referenced document speaks for itself.

125.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

126.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

127.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

128.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

129.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

130.    Denied.

131.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

132.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

133.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

134.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

135.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

136.    Denied.

137.    Denied.

138.    Denied.

139.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

<u>**COUNT I**</u>
**BREACH OF CONTRACT – RESTRICTIVE COVENANTS**
**AGAINST DAVID JEWELL**

140.    Defendant re-asserts the responses stated above to the paragraphs incorporated into this allegation as if fully stated here. All remaining allegations are denied.

141.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

142.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

143.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

144.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

145.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

146.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

147.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

148.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

149.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

150.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

151.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

152.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

153.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

154.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

155.    This count is not directed to Defendant, therefore, no response is required. To the extent a response is required, denied.

WHEREFORE CLAUSE. The wherefore clause, including all of its subparts, is denied.

### COUNT II
### BREACH OF CONTRACT – RESTRICTIVE COVENANTS
### AGAINST MICHAEL CAMERON

156.    Defendant re-asserts the responses stated above to the paragraphs incorporated into this allegation as if fully stated here. All remaining allegations are denied.

157.    Denied.

158.    Denied.

159.    Denied.

160.    Denied.

161.    Denied.

162.    Denied.

163.    Denied.

164.    Denied.

165.    Denied.

166.    Denied.

167.    Denied.

168.    Denied.

169.    Denied.

170.    Denied.

171.    Denied.

172.    Denied.

WHEREFORE CLAUSE. The Wherefore clause, including all of its subparts, is denied.

<u>**COUNT III**</u>
**VIOLATION OF DEFEND TRADE SECRETS ACT (18 U.S.C.A. §§ 1831-1839)**
**AGAINST ALL DEFENDANTS**

173.    Defendant re-asserts the responses stated above to the paragraphs incorporated into this allegation as if fully stated here. All remaining allegations are denied.

174.    Defendant is without sufficient information to admit or deny these allegations, therefore, denied.

175.    Denied. Aver that the referenced statute speaks for itself.

176.    Denied.

177.    Denied.

178.    Denied.

179.    Denied.

180.    Denied.

181.    Denied.

182.    Denied.

183.    Denied.

184.    Denied.

185.    Denied.

186.    Denied.

187.    Denied.

188.    Denied.

189.    Denied.

WHEREFORE CLAUSE. The Wherefore clause, including all of its subparts, is denied.

## COUNT IV
## VIOLATION OF FLORIDA UNIFORM TRADE SECRET ACT
### (Fla. Stat. § 688.001 et seq.)
### AGAINST ALL DEFENDANTS

190.    Defendant re-asserts the responses stated above to the paragraphs incorporated into

this allegation as if fully stated here. All remaining allegations are denied.

191.    Denied.

192.    Denied.

193.    Denied.

194.    Denied.

195.    Denied.

196.    Denied.

197.    Denied.

WHEREFORE CLAUSE. The Wherefore clause, including all of its subparts, is denied.

**COUNT V**
**BREACH OF DUTY OF LOYALTY**
**AGAINST DEFENDANTS JEWELL, CAMERON, KELLY AND MAYS**

198.    Defendant re-asserts the responses stated above to the paragraphs incorporated into this allegation as if fully stated here. All remaining allegations are denied.

199.    Denied.

200.    Denied.

201.    Denied.

202.    Denied.

203.    Denied.

204.    Denied.

205.    Denied.

206.    Denied.

207.    Denied.

208.    Denied.

209.    Denied.

WHEREFORE CLAUSE. The Wherefore clause, including all of its subparts, is denied.

**COUNT VI**
**TORTIOUS INTERFERENCE**
**AGAINST ALL DEFENDANTS**

210.   Defendant re-asserts the responses stated above to the paragraphs incorporated into this allegation as if fully stated here. All remaining allegations are denied.

211.   Denied.

212.   Denied.

213.   Denied.

214.   Denied.

215.   Denied.

216.   Denied.

217.   Denied.

218.   Denied.

219.   Denied.

220.   Denied.

221.   Denied.

WHEREFORE CLAUSE. The Wherefore clause, including all of its subparts, is denied.

**COUNT VII**
**CIVIL CONSPIRACY**
**AGAINST ALL DEFENDANTS**

222.   Defendant re-asserts the responses stated above to the paragraphs incorporated into this allegation as if fully stated here. All remaining allegations are denied.

223.   Denied.

224.   Denied.

225.   Denied.

226.    Denied.

227.    Denied.

228.    Denied.

229.    Denied.

WHEREFORE CLAUSE. The Wherefore clause, including all of its subparts, is denied.

## II.    AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### ILLEGALITY

Plaintiffs' claims are barred, in whole or in part, by the affirmative defense of illegality. The restrictive covenants at issue in this case constitute unlawful restraints of trade because Plaintiffs lack any legitimate business interest to support their enforcement. *See IDMWORKS, LLC v. Pophaly*, 192 F.Supp.3d 1335, 1340-41 (S.D. Fla. 2016) (stating that "legitimate business interests" generally take the form of trade secrets, substantial customer relationships, customer good will, or extraordinary training); *see also* D.E. 35 at 3-8; D.E. 59-1 at 5-10.

Plaintiffs do not possess any legitimate business interest because: (1) there is no confidential, trade secret, or proprietary information at issue that is valuable and unique to them, let alone that which could be used to unfairly compete; (2) Plaintiffs did not provide extraordinary or specialized training to any Individual Defendant; (3) there are no substantial, legally protectable relationships at issue; and (4) no other legitimate business interests exist to justify enforcement of the competitive restrictions at issue. There is no way Defendants could use any information learned during their affiliation with Plaintiffs to "unfairly compete" against it. *See White v. Mederi Caretenders Visiting Servs. of Fla.*, LLC, 226 So.3d 774, 784-85 (Fla. 2017) (defining a "legitimate business interest" as "a business asset that, if misappropriated, would give its new owner an unfair competitive advantage over its former owner"). Instead, we are talking about fair competition in an open market.

Plaintiffs' position regarding confidentiality requires considerable scrutiny, as in order

for confidential, trade secret, or proprietary information to constitute a legitimate business interest, that information must be valuable, unique, not available to other competitors in the industry, and of the sort that would allow for unfair competition. *See Anich Indus., Inc. v. Raney*, 751 So. 2d 767, 771 (Fla. 5th DCA 2000) (information commonly known in the industry and not unique to the company does not constitute a protectable interest); *Lucky Cousins Trucking v. QC Energy*, 223 F. Supp. 3d 1221 (M.D. Fla. 2016). Here, we are talking about appealing the denial of payments for medical services. An industry with a vast number of competitors who attend conferences sharing their approaches and are relatively limited in the variations of the services they can provide. Even if any information at issue (a) could be construed as a trade secret or confidential information belonging to Plaintiffs (which it cannot and does not) and (b) is demonstrated to be in Defendant's possession, Plaintiffs are required to demonstrate that Defendant could use that exact information to gain an unfair advantage in the relevant market. *See, e.g., Passalacqua v. Naviant, Inc*., 844 So. 2d 792, 796 (Fla. 4th DCA 2003) (no legitimate business interest in confidential information where plaintiff failed to articulate how its methods were unique and how defendant could use that information against her in market to gain unfair advantage).

With respect to customer relationships: not all relationships are protectable. That is not how the free market works. Here, it is not in dispute that healthcare facilities and systems frequently utilize RCM-denials vendors such as Ternium and Aspirion concurrently. It is unreasonable to suggest that Plaintiffs have a protectable relationship with these entities. Their decision makers are easily identifiable by anyone with an internet connection. They are free to do business with whomever they want. By their very nature, they are entitled to seek the best price they can receive—which is both why the business is easily terminable, bid based, and fluid—and why Plaintiffs attempts to stifle market competition is injurious to the public.

Protectable goodwill typically takes the form of a brand or name associated with a business in a particular area that could be improperly utilized by Defendants. Fla. Stat. § 542.335(1)(b)(4). Here, there is no evidence that Plaintiffs actually have any goodwill, let alone goodwill with any specific entities or in a specific territory or marketing area. *See, e.g., Thyssenkrupp Elevator Corp. v. Hubbard*, 2013 WL 5929132, at *4 (M.D. Fla. Nov. 4, 2013) (no legitimate interest in client goodwill where plaintiff failed to identify

19

any facts or evidence in support of its assertion). There is no evidence that Defendants have ever utilized Plaintiffs' name or marks or any other possible aspects of their so-called goodwill to solicit or obtain any business.

**SECOND AFFIRMATIVE DEFENSE**
**COMPETITION PRIVILEGE**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of competition privilege. Any claims based on competition fail because the conduct complained of is privileged. To the extent that Defendant has competed with Plaintiffs, no improper means are being utilized to do so. Nor has Defendant's conduct otherwise restrained competition. Defendant has simply advanced Defendant's competitive interests in the market. Thus, any claims based on competition fail because such competition is entirely privileged. *Audiology Distr., LLC v. Simmons*, 2014 WL 7672536, at *11 (M.D. Fla. May 27, 2014); *Se. Title Guar. Corp. of Baltimore v. McDill Columbus Corp.,* 543 So. 2d 853, 855 (Fla. 2d DCA 1989).

**THIRD AFFIRMATIVE DEFENSE**
**INTRA-CORPORATE CONSPIRACY DOCTRINE**

"[T]he intra-corporate conspiracy doctrine ... precludes the claim of conspiracy against individuals and their corporation for wholly internal agreements to commit wrongful or actionable conduct." *Yuken Corp.*, 2022 WL 3701233, at *8–9 (quoting *Mancinelli v. Davis*, 217 So. 3d 1034, 1037 (Fla. 4th DCA 2017)). "Since a corporation is a legal entity which can only act through its agents, officers and employees, a corporation cannot conspire with its own agents unless the agent has a personal stake in the activities that are separate and distinct from the corporation's interest." *Id*. (citations omitted); *see also Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) ("The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself." (citations omitted)).

Plaintiffs must sufficiently demonstrate that the Individual Defendants had a separate and distinct personal stake in the conduct complained of from Ternium. *Cedar Hills Props. Corp.*, 575 So. 2d at 676. They did the opposite. *Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 651 (Fla. 4th DCA 2020)

20

(holding the intra-corporate conspiracy "doctrine forecloses an actionable conspiracy between an entity and its officers or agents [] . . . Where corporate agents are acting within the scope of their employment, their actions 'are attributed to the corporation itself, thereby negating the multiplicity of actors needed for a conspiracy.'") (internal quotations and citations omitted).

### FOURTH AFFIRMATIVE DEFENSE
### WAIVER

Plaintiffs' claims are barred by the doctrine of waiver. Plaintiffs waived their ability to seek relief for any use of their allegedly confidential, proprietary, or trade secret information by their disclosures throughout the industry of same to various competitors with whom they work jointly as well as with actual and prospective customers and to the industry writ large via, among other things, training competitors (including healthcare facilities and systems themselves), tradeshows, and various internet publications readily accessible by anyone. *See Raymond James Fin. Servs., Inc. v. Saludakas*, 896 So. 2d 707, 711 (Fla. 2005); *Bueno v. Workman*, 20 So. 3d 993, 998 (Fla. 4th DCA 2009).

### FIFTH AFFIRMATIVE DEFENSE
### LACHES

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches. Plaintiffs knew for months of competition now complained of, and unreasonably delayed in seeking relief in a way that mitigates against any further of injunctive relief. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 5 F.Supp.3d 1368, 1374 (S.D. Fla. 2014).

### SIXTH AFFIRMATIVE DEFENSE
### UNCLEAN HANDS

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands. A party is not entitled to equitable relief when it comes to court with unclean hands. *See Manhattan Med. Co. v. Wood*, 108 U.S. 218, 225 (1883) ("[H]e who seeks equity must present himself to the court with clean hands."); *Pilafian v. Cherry*, 355 So. 2d 847, 849 (Fla. 3d DCA 1978 (same). Plaintiffs have engaged in wrongful conduct, including but not limited to: (a) utilizing its agent, Thomas Page, to unlawfully access the accounts

of one of the customers at-issue (Banner Health) and taking photos of it, (b) misrepresenting the enforceability of the at-issue injunction to numerous market actors, (c) having its CEO Amy Amick read answers from a sheet while testifying during the injunction proceedings, and (d) threatening criminal action against Defendants in an effort to force Defendants into a settlement.

This conduct precludes equitable relief. S*ee Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. RRG*, 2012 WL 5398625, at *17 (S.D. Fla. Nov. 2, 2012), *aff'd sub nom. Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. of DC, Risk Retention Grp.*, 522 Fed. Appx. 696 (11th Cir. 2013) (reasoning that unclean hands applies when one acts in bad faith, resorts to trickery and deception, or has been guilty of fraud, injustice, or unfairness even if the wrongdoing may have been within the law, as long as the wrongdoing is generally connected with the mater in litigation and affects the adverse party).

## SEVENTH AFFIRMATIVE DEFENSE
## FAILURE TO MITIGATE

Plaintiffs' claims are barred, in whole or in part by their failure to mitigate damages.  To the extent that any of the at-issue information actually (1) constitutes confidential, proprietary, or trade secret information or (2) was in the possession of Defendant after an Individual Defendant's employment with Plaintiffs, Plaintiffs failed to take reasonable measures to keep such information a secret or otherwise protect themselves from Defendant's allegedly unlawful competition. *See, e.g., Frederick v. Tankships, Inc.*, 205 F.3d 1277, 1286 (11th Cir. 2000). The same can be said for any allegedly protectable relationships, goodwill, or any other supposed legitimate business interest. Among other things, Plaintiffs have chosen to ignore business that it now claims is at issue. Further, Plaintiffs openly advertise the specific identities of their customer base—customers that they do not have exclusive deals with. Given these realities, Plaintiffs have failed to mitigate damages they claim to have incurred.

## EIGHTH AFFIRMATIVE DEFENSE
## FUTSA PREEMPTION

Plaintiffs' claims are barred, in whole or in part, by FUTSA preemption. FUTSA preemption considers whether there are "material distinctions" between the allegations comprising the additional torts and the allegations supporting the FUTSA claim*." Digiport, Inc. v. Foram Development BFC, LLC*, 314

So.3d 550, 553–54 (Fla. 3d DCA 2020) (quoting *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 908 (M.D. Fla. 2007) ("[A]s a general proposition[,] other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA.")); *see also Taubenfeld v. Lasko*, 324 So.3d 529, 543 (Fla. 4th DCA 2021) ("Additionally, to the extent the conversion claim encompasses a claim for misappropriation of trade secrets, such a claim is preempted by the FUTSA.") (emphasis added).

## NINTH AFFIRMATIVE DEFENSE
## PREDISPOSITION TO BREACH

Plaintiffs' claims are barred, in whole in part, by the affirmative defense of predisposition to breach. Florida recognizes that a "party's predisposition to breach . . .  precludes any finding that [the alleged breaching party] was induced to breach by [a third party].'" *Ingenuity, Inc. v. Linshell Innovations Ltd*., 644 Fed. Appx. 913, 916 (11th Cir. 2016) (granting summary judgment) (citing *Farah v. Canada*, 740 So. 2d 560, 562 (Fla. 5th DCA 1999); *Chi. Title Ins. Co. v. Alday–Donalson Title Co. of Fla.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002)).

## TENTH AFFIRMATIVE DEFENSE
## INDEPENDENT TORT DOCTRINE

Plaintiffs' claims barred, in whole or in part, by the independent tort doctrine. Where a party is in contractual privity with another, a valid tort claim requires the claimant to establish that the tort is independent of any breach of contact. *Yuken Corp. v. Gedcore LLC*, 2022 WL 3701233, at *3 (S.D. Fla. June 21, 2022) (citation omitted); *see also Cabana on Collins, LLC v. Regions Bank*, 2012 WL 718806, at *10 (S.D. Fla. Mar. 5, 2012). That is, where the "the facts surrounding a breach of contract action are indistinguishable from an alleged tort, and where the alleged tort does not cause harm distinct from that caused by the breach of contract, a plaintiff is barred from bringing a separate tort action." *Cabana on Collins, LLC*, 2012 WL 718806, at *10 (citing *Behrman v. Allstate Ins. Co.,* 388 F.Supp.2d 1346, 1349, n.4 (S.D. Fla. 2005).

Here, the same conduct that constitutes the bases for Plaintiffs' breach of contract claims (Counts I and II)—Jewell's and Cameron's alleged breaches of contractual confidentiality and non-solicitation

obligations—are the bases for Plaintiff's tort claims. Plaintiffs cannot seek "a better bargain than originally made," by circumventing the legal rights and obligations provided for in their respective contracts. *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.,* 891 So. 2d 532, 536–37 (Fla. 2004). There is no daylight between the contractual obligations Plaintiffs seek to enforce and the conduct complained recover on tort claims. *Yuken Corp.*, 2022 WL 3701233, at *3; *Cabana on Collins, LLC*, 2012 WL 718806, at *10; *Indem. Ins. Co. of N. Am..,* 891 So. 2d at 536–37.

## III.   DEMAND FOR ATTORNEYS' FEES

Defendant demands an award of her attorneys' fees and costs incurred during the course of this litigation to the fullest extent permitted by law.

## IV.   JURY TRIAL DEMAND

Defendant demands a trial by jury on all issues so triable.

## V.   DEMAND FOR JUDGMENT

Defendant demands judgment be entered in Defendant's favor on all claims and affirmative defenses, as well as all other relief the Court deems just and proper.

Dated: November 20, 2024                Respectfully Submitted,

By: */s/ Christopher S. Prater*
    Christopher S. Prater, Esq.
    Florida Bar No.: 105488
    cprater@pollardllc.com

    Jonathan E. Pollard
    Florida Bar No.: 83613
    jpollard@pollardllc.com

    **Pollard PLLC**
    401 E. Las Olas, Blvd., Ste. 1400
    Fort Lauderdale, FL 33394
    Telephone: 954-332-2380
    Facsimile: 866-594-5731
    *Counsel for Defendants*