IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION
CASE N0. 1:24-CV-22875

BETWEEN:

**MAINSAIL PARENT, LLC D/B/A ASPIRION AND SPECIALIZED HEALTHCARE PARTNERS, LLC**

PLAINTIFFS

AND

**DAVID JEWELL, MICHAEL CAMERON, ALISHA MAYS, MEGAN KELLY AND TERNIUM, LLC**

DEFENDANTS

# EXPERT REPORT OF DAVID M. DUFFUS



| SUBJECT | EXPERT REPORT ON DAMAGES |
|---|---|
| ON INSTRUCTIONS OF | STEIN MITCHELL BEATO & MISSNER, LLP |
| DATE SUBMITTED | DECEMBER 23, 2024 |

CONFIDENTIAL

Expert Report of David M. Duffus
Prepared at the Request of Counsel

# CONTENTS

**1    SUMMARY** ............................................................................................................ 1

**2    INTRODUCTION AND BACKGROUND** ........................................................... 2

**2.1**    The Expert .................................................................................................................. 2

**2.2**    Background ................................................................................................................ 3

    2.2.1    The Parties ................................................................................................................ 3

    2.2.2    The Dispute ............................................................................................................... 4

**3    ANALYSIS** ............................................................................................................. 8

**3.1**    Summary of Opinion ............................................................................................... 8

**3.2**    Lost Profits Damages Framework ......................................................................... 9

**3.3**    Lost Profits Analysis .............................................................................................. 11

    3.3.1    Damage Period ....................................................................................................... 12

    3.3.2    Lost Revenues ......................................................................................................... 14

    3.3.3    Incremental Expense .............................................................................................. 16

    3.3.4    Other Considerations - Discounting to Present Value ......................................... 17

    3.3.5    Other Considerations - Mitigation ........................................................................ 18

    3.3.6    Lost Profits Conclusion .......................................................................................... 19

**3.4**    Unjust Enrichment Damages ............................................................................... 19

**3.5**    Other Damage Measures ....................................................................................... 21

**4    CONCLUSION** ................................................................................................... 22

**5    LIST OF REPORT ATTACHMENTS AND TABLES** ...................................... 23



Expert Report of David M. Duffus
Prepared at the Request of Counsel

# 1  SUMMARY

1. I, David M. Duffus have been retained by Stein Mitchell Beato & Missner LLP ("Counsel") on behalf of Mainsail Parent, LLC d/b/a Aspirion ("Aspirion") and Specialized Healthcare Partners, LLC ("SHP" and collectively with Aspirion, "Aspirion") to analyze the damages sustained by Aspirion in connection with various claims asserted against David Jewell ("Mr. Jewell"), Michael Cameron ("Mr. Cameron"), Alisha Mays ("Ms. Mays"), Megan Kelly ("Ms. Kelly") and Ternium, LLC ("Ternium").

2. HKA is being compensated at hourly rates between $175 and $725 for work in this matter. Our fees are not contingent on the outcome.

3. This Report and the accompanying Attachments are intended solely for use in connection with this matter and may contain confidential information. Any unauthorized use or distribution of this Report or its Attachments is strictly prohibited. I specifically reserve the right to supplement or update this Report upon learning additional information that may impact the findings or opinions stated herein and reserve the right to respond to any additional information obtained through discovery or issues raised by experts retained by the Defendants, if any. In addition, I reserve the right to prepare additional exhibits, charts, graphs, tables, demonstratives, and diagrams to summarize or support the opinions and analyses set forth in this Report.  If called as a witness at trial, I may testify to some or all of the opinions in this Report.



CONFIDENTIAL

Expert Report of David M. Duffus
Prepared at the Request of Counsel

## 2  INTRODUCTION AND BACKGROUND

### 2.1    THE EXPERT

4.    The analysis and opinions in this Report are based upon the documentation and information provided to me to date,[1] my education, and experience in performing similar damage, valuation and forensic analysis.  I have been court-qualified and have testified, including the presentation and evaluation of financial, forensic, valuation and economic damages matters to juries and judges in courts throughout the United States.

5.    I am a Partner in HKA Global LLC's ("HKA") Forensic Accounting and Commercial Damages practice. I am a Certified Public Accountant ("CPA"), Accredited in Business Valuation ("ABV"), and Certified in Financial Forensics ("CFF"), and I am a Certified Fraud Examiner ("CFE"). I hold a Masters in Business Administration degree with concentrations in Accounting and Finance.

6.    I am the Past Chairman of the American Institute of Certified Public Accountants' ("AICPA") Economic Damages Task Force, which provides guidance to CPA practitioners who specialize in economic damages analyses. I also served three terms on the AICPA's Forensic & Litigation Services ("FLS") Committee. The FLS Committee supports the AICPA by providing technical and educational guidance to CPAs in public practice or in the private sector who provide or seek to provide forensic accounting services and by monitoring matters that impact CPAs' ability to provide forensic accounting services (e.g. competition, legislation, regulation). It serves to promote growth and demand for forensic accounting services by raising the level of awareness of CPAs' role in this area in the legal profession and other service professionals.

7.    My detailed Curriculum Vitae is attached as Attachment 2.[2]

---

[1] Refer to Attachment 1, as well as the footnotes to this Report for the identification of the documents and information that I considered.
[2] Attachment 2 – Curriculum Vitae of David M. Duffus.



CONFIDENTIAL

Expert Report of David M. Duffus
Prepared at the Request of Counsel

## 2.2    BACKGROUND

### 2.2.1  The Parties

8.    Aspirion is the parent company of SHP,[3] which operates under the Aspirion brand, and which is in the business of providing revenue cycle management ("RCM") services to healthcare companies.[4]

9.    Mr. Jewell was employed as Managing Attorney and Executive Director of Client Success at Aspirion prior to his resignation in September 2023.[5]  Mr. Jewell is one of the co-owners of Ternium.[6]

10.   Mr. Cameron was employed as Senior Vice President of Sales at Aspirion until his resignation in January 2024.[7]  Mr. Cameron is one of the co-owners of Ternium.[8]

11.   Ms. Kelly was employed as a Managing Attorney and Executive Director of Client Success at Aspirion until her resignation in October 2023.[9]  Ms. Kelly is one of the co-owners of Ternium.[10]

12.   Ms. Mays was employed as a Managing Attorney and Executive Director of Client Success at Aspirion until her resignation in October 2023.[11]  Ms. Mays is one of the co-owners of Ternium.[12]

13.   Mr. Jewell, Mr. Cameron, Ms. Kelly and Ms. Mays are collectively referenced in this Report as the Former Employee Defendants.

14.   Ternium is a provider of RCM services similar to those provided by Aspirion.[13]  Ternium was formed by the Former Employee Defendants on September 28, 2022,[14] although Aspirion asserts that the planning for the formation started as early as August 2022.[15]

---

[3] Complaint for Injunctive Relief and Damages ("Complaint") ¶¶ 7-8.
[4] Complaint, ¶ 7.
[5] Complaint, ¶ 9.
[6] Complaint, ¶ 13.
[7] Complaint, ¶ 10.
[8] Complaint, ¶ 13.
[9] Complaint, ¶ 11.
[10] Complaint, ¶ 13.
[11] Complaint, ¶ 12.
[12] Complaint, ¶ 13.
[13] Complaint, ¶ 13.
[14] Complaint, ¶ 88.
[15] Complaint, ¶ 84.

Page 3



CONFIDENTIAL

### 2.2.2  The Dispute

15.   Mr. Jewell and Mr. Cameron are subject to Employment Agreements that contain various restrictive covenants and other provisions which require, among other things:

- That they provide best efforts and full business time and attention to the Aspirion business.[16]

- That they are prohibited from soliciting Aspirion employees for one-year post-separation, and from interfering with Aspirion's relationship with its employees and inducing Aspirion employees to leave employment with the company.[17]

- That they are prohibited from soliciting, servicing or interfering with any of Aspirion's clients for one-year post-separation.[18]

- That they are restricted from using and disclosing trade secrets and other confidential information.[19]

- That they will not pursue for their own benefit any business, commercial or investment opportunities or offers received during employment with Aspirion.[20]

16.   Additionally, all four Former Employee Defendants are subject to Aspirion's Acceptable Use Policy regarding Aspirion's confidential information, including provisions related to:

- Disclosure of internal policies, business correspondence and company announcements.

- Saving and storing confidential information in unsecure areas on computers.

---

[16] Complaint, ¶¶ 28 and 46.
[17] Complaint, ¶¶ 30, 31, 47 and 48.
[18] Complaint, ¶¶ 32, 33, 49 and 50.
[19] Complaint, ¶¶ 37 and 52.
[20] Complaint, ¶¶ 38 and 53.



CONFIDENTIAL

- Disclosure of confidential information to non-employees, family members or organization outsiders without authorization from Aspirion management.

- The survival of the duty to protect confidential information beyond employment termination, which remains in effect until the information become public knowledge or until Aspirion provides written notice releasing and employee from the obligation.[21]

17. The Employee Code of Conduct reinforces Aspirion's commitment to protect its confidential information.[22]

18. Aspirion defines confidential information to include, among other things, the company's business accounts; client financial information; the operational structure; proprietary algorithms; processes and methodologies; compensation plans; prospective and existing customers; marketing and sales techniques; systems; reports; client specific analytics and performance history; data processing models; software code; and business plans.[23]

19. On June 26, 2024, following the discovery that former Aspirion employees, including the Former Employee Defendants, were providing services to Children's Hospital of Orange County ("CHOC") and Banner Health ("Banner"), Aspirion sent a cease-and-desist letter to Mr. Jewell.[24]

20. Subsequently, Aspirion commissioned an internal IT investigation and filed suit, which led to the discovery of the following, among other things:

- The Former Employee Defendants formed Ternium while employed by Aspirion.

- Ternium had successfully solicited business from and contracted with Banner potentially as early as October 2023.

---

[21] Complaint, ¶¶ 67-69.
[22] Complaint, ¶ 71.
[23] Complaint, ¶ 64.
[24] Complaint, ¶ 80.



CONFIDENTIAL

Expert Report of David M. Duffus
Prepared at the Request of Counsel

- In June 2023, Mr. Cameron e-mailed CHOC leadership about the status of Ternium's prospective contract, which had been initially submitted for approval in April 2023.

- In September 2022, Mr. Jewell solicited Evangelical Community Hospital ("Evangelical") on behalf of Ternium, began contract negotiations in May 2023 and received the signed contract on September 29, 2023, or within days of his resignation from Aspirion.

- Before his resignation, Mr. Cameron contacted Ochsner Health ("Ochsner") to discuss contracting with Ternium. On October 31, 2023 Mr. Jewell began contract negotiations with Ochsner and Ternium received a signed contract on November 21, 2023.

- The Defendants have disclosed that they have solicited or are performing services for 23 Aspirion clients.

- Mr. Cameron and/or Mr. Jewell used Aspirion confidential information to pursue work from other Aspirion prospective clients, including University of New Mexico Health, Valleywise Health, LCMC, UT Southwest, Methodist of Dallas, SSM Health, Houston Methodists, Baptist Medical Center Jacksonville ("Baptist"),[25] Kaiser Permanente and St. Luke's Idaho.[26]

21.   In addition, Mr. Jewell and Mr. Cameron solicited and/or induced Aspirion employees, including Ms. Mays and Ms. Kelly to resign and join Ternium.[27] Moreover, following the issuance of the June 2024 cease and desist letter, Mr. Jewell and Mr. Cameron continued to actively solicit Aspirion clients and employees.[28]

---

[25] As discussed later in this Report, Baptist has since become an Aspirion client. See ¶44 of this Report.
[26] Complaint, ¶¶ 82-115.
[27] Complaint, ¶¶ 116-117.
[28] Complaint, ¶ 123.



CONFIDENTIAL

22. Beyond the issues enumerated above, Aspirion asserts that the Former Employee Defendants enlisted Devannie Abell ("Ms. Abell"), a former Aspirion employee, to both use her confidential information and access to trade secrets to benefit the technical set-up for Ternium's business model and to misappropriate Aspirion-developed data models and systems which were then used by Ternium to replicate Aspirion's business model and data methodologies.[29]

23. Given the foregoing, Aspirion has asserted claims, including:

- Breach of contract related to the Employment Agreement restrictive covenants against Mr. Jewell and Mr. Cameron.[30]

- Violations of the Federal Defend Trade Secrets Act and the Florida Uniform Trade Secrets Act again all Defendants.[31]

- Breach of loyalty against all Former Employee Defendants.[32]

- Tortious interference against all Former Employee Defendants.[33]

- Civil conspiracy against all Defendants.[34]

24. In connection with all claims, Aspirion is seeking available damages remedies among other relief.

---

[29] Based upon client discussions and Proposed First Amended Complaint for Injunctive Relief and Damages dated November 22, 2024.
[30] Complaint, ¶¶ 140-172.
[31] Complaint, ¶¶ 173-197.
[32] Complaint, ¶¶ 198-209.
[33] Complaint, ¶¶ 210-221.
[34] Complaint, ¶¶ 222-229.



CONFIDENTIAL

## 3 ANALYSIS

### 3.1   SUMMARY OF OPINION

25.   In connection with this dispute, I have been asked to evaluate the damages sustained by Aspirion arising from its allegations.  In doing so, I considered the measures of damages available given the nature of the claims in this matter.  It is my understanding that the measures available include, but are not limited to:

- Lost profits sustained by Aspirion.

- Disgorgement of the unjust enrichment in the form of compensation received by the Former Employee Defendants and Ms. Abell.

- Disgorgement of unjust enrichment received by Ternium related to the revenues and profits generated through the asserted violations of the restrictive covenants and use of the confidential information.

- Disgorgement of the benefit received by Ternium by avoiding the cost associated with start-up and independent development of the confidential information ("avoided costs").

- Reasonable royalty damages sustained by Aspirion.

26.   As of the date of this Report, it is my understanding that discovery is ongoing, including with respect to financial and other damage related documents requested from the Defendants, as well as depositions of relevant witnesses.



CONFIDENTIAL

27.  Based on the information produced to date, which includes financial information from Aspirion and interrogatory responses from the parties, I have evaluated the lost profits damages sustained by Aspirion and certain unjust enrichment damages related to amounts received by the Defendants, specifically compensation paid to the former Aspirion employees and Ternium's revenues and profits.  My analysis and opinion with respect to damages, including any additional measures may be updated and presented, if permitted, in a supplemental expert report once additional discovery information is produced.  Moreover, any such supplement may consider additional damages associated with the categories evaluated to date, as I understand that the Defendants continue to engage with and sell services to Aspirion clients and prospects.

28.  As discussed more fully below, it is my opinion, to a reasonable degree of professional certainty that Aspirion has sustained lost profits damages of at least $11,786,029, that the unjust enrichment damages in the form of the compensation paid to the former Aspirion employees is $3,397,628 and that the unjust enrichment damages in the form of the revenues received by or projected to be received by Ternium are $8,444,608.  Refer to Table 1, below, which summarizes the damages.

### Table 1 - Summary of Damages

| Description | |
|---|---:|
| Lost Profits | $ 11,786,029 |
| Unjust Enrichment - Compensation | |
| Total Unjust Enrichment - Compensation | 3,397,628 |
| Unjust Enrichment - Ternium Revenue | 8,444,608 |
| Total | $ 23,628,265 |

29.  The bases for my opinions are set forth below.

### 3.2    LOST PROFITS DAMAGES FRAMEWORK

30.  In performing my analysis of the lost profits, I considered the applicable professional guidance, including the AICPA & CIMA Forensic & Valuation Services Practice Aid, *Calculating Lost Profits*, ("*Calculating Lost Profits*") that pertains to the analysis of lost profits damages in matters such as



this.   In doing so, I employed a standard framework regularly used by damage experts who evaluate lost profits damages, which involves:

- Consideration of the period over which the damages were sustained.[35]

- Calculation of the revenue that was lost over the damage period due to the actions of the defendant.[36]

- Calculation of the incremental expenses that were avoided on the lost revenue.[37]

- Consideration of other factors that have a bearing on the lost profits, specifically discounting to present value and mitigation.[38]

31.    I have also considered whether it is reasonable to assume that a linkage exists between the wrongful conduct that has been alleged and the damages sustained. As discussed in *Calculating Lost Profits*:

> A plaintiff's damages expert may be asked to assume causation for the purposes of his or her work in situations in which other evidence or expert testimony may be offered on this topic. In other cases, the scope of a plaintiff's expert testimony may address or relate to causation directly or indirectly. In either situation, it is generally in the client's interest for the damages expert, whether working on behalf of the plaintiff or defendant, to understand the evidence about causation. In this context, it is generally useful for the expert to understand how the plaintiff claims the alleged wrongful conduct *caused* the damages. Similarly, it is useful to understand if and why the defendant claims the wrongful conduct did not cause the damages, and whether the practitioner can perform analysis or investigation that can test and support an answer to these questions. The pursuit and analysis of such data may illuminate causation considerations, including the need to introduce evidence to support (or disprove) the claims, as well as other factors that may have influenced the purported lost sales. The damages expert should take care to offer an opinion on causation only when such an opinion is within the professional expertise of the expert and adequately supported by the evidence. For example, it may be appropriate for an expert to testify about market analysis, research, sales trends, customer reviews, and internal company communications that address the question of what factors influence sales, including the alleged wrongful conduct. But it is often beyond a practitioner's expertise to opine on the summary issue of causation, with an expert opinion that the damages in question were caused by the alleged wrongful act or acts.[39]

---

[35] *Calculating Lost Profits*, pg. 26. [ASPIRION_00005538]
[36] *Calculating Lost Profits*, pg. 24. [ASPIRION_00005536]
[37] *Id.*
[38] *Calculating Lost Profits*, Chapters 9 and 11. [ASPIRION_00005574-75; ASPIRION_00005580-84]
[39] *Calculating Lost Profits*, pg. 13. [ASPIRION_00005525]



CONFIDENTIAL

32.   In accordance with the above guidance, this Report does not provide any opinion regarding legal causation.   However, I have considered the information presented to date to evaluate the reasonableness of assuming a causal connection between the wrongful conduct that has been alleged and the damages sustained.   In doing so, I have identified that there are numerous instances where Mr. Jewell and Mr. Cameron admitted to soliciting Aspirion clients, including, but not limited to, Banner, CHOC, Baptist, Oschner and Advent Health ("Advent").[40]   Solicitation occurred while both were still employed at Aspirion, as well as within the one-year post separation period.

33.   Moreover, as summarized in Table 2, below, my analysis of the financial data produced by Aspirion demonstrates that the volume of placed claims from solicited clients declined from 2023 into 2024, after growth in prior years, and that the timing of the reduction in placement volume comports with the actions at issue in this matter.

**Table 2– Placed Claims Annual Volume[41]**

| | 2021 | 2022 | 2023 | 2024 | Difference - 2023 v. 2024 | % |
|---|---|---|---|---|---|---|
| | | | | | | |

34.   Based on the foregoing, it is my opinion that it is reasonable to assume a linkage between the damages sustained by Aspirion and its allegations in this matter.

### 3.3    LOST PROFITS ANALYSIS

35.   As discussed above, my analysis of the lost profits damages employs a standard framework that includes consideration of the damage period, the revenues that were lost due to the actions of the

---

[40] See Amended Response to Interrogatory No. 3 in Defendant David Jewell's Second Amended Responses to Plaintiffs' First Set of Interrogatories and Amended Response to Interrogatory No. 3 in Defendant Michael Cameron's Second Amended Responses to Plaintiffs' First Set of Interrogatories
[41] 2024 data is based on placements through October, which have then been annualized for purposes of this comparison table.



CONFIDENTIAL

defendant(s), the avoided expenses that would have been incurred on the lost sales and other factors, including discounting to present value and mitigation.

36. The following sets forth my analysis of each element of the framework.

### 3.3.1 Damage Period

37. The lost profits analysis I performed is premised on a damage period that starts January 1, 2024.[42] This start date reflects consideration of the following:

- Mr. Jewell, Ms. Mays, and Ms. Kelly all resigned from Aspirion between September and October of 2023, or within two to three months of the start of the damage period.

- Mr. Cameron resigned in January 2024, consistent with the start of the damage period.

- By the end of 2023, Ternium had obtained signed contracts with at least three clients, including LCMC, Banner and Evangelical.[43]  Further, by September 2024, Ternium signed contracts with five additional clients, including CHOC, Oschner, UT Southwest, Baptist and Advent.[44]

- Analysis of monthly claims placement data, which demonstrates that volumes with certain Aspirion clients reflected significant reductions in placement volumes starting in January 2024.  See Table 3, below.

---

[42] Note that the unjust enrichment damages with respect to compensation start earlier since some of the activity at issue started as early as August 2022. Further note that Ternium has disclosed that contact with Evangelical began as early as September 2022 (See Exhibit B to Defendant Ternium, LLC's Amended Responses To Plaintiffs' First Set of Interrogatories), and the placement information presented in Table 2 demonstrates a significant drop off in volume with Evangelical between 2022 and 2023.  As such a start date for damages associated with Evangelical of January 1, 2024 is likely a conservative estimate of when the damages began.
[43] See Exhibit B to Defendant Ternium, LLC's Amended Responses To Plaintiffs' First Set of Interrogatories.
[44] Id.



CONFIDENTIAL

**Table 3 – Placed Claims Trailing 12 Month Volume**



38.    The damage period carries through 2028, representing a five-year damage period (i.e., 2024 through 2028).  The use of a five-year damage period reflects consideration of the following:

- Analysis of the historical claims placement data demonstrates that Aspirion has enjoyed long-term relationships with its clients.  For example, Aspirion has been providing services to Banner since 2018[45] (7 years) and CHOC since 2021[46] (4 years).

- Analysis of the Aspirion contracts, which are often multi-year contracts, and which contain renewal provisions.  For example, the Services Agreement with CHOC is dated July 1, 2021, and carried an initial term of three-years, with renewal thereafter.[47]  Further, other contracts with providers, such as the Banner, carried an initial term of one-year, with renewal thereafter,[48] with evidence that the renewal provisions were exercised, resulting in long-term relationships.[49]

---

[45] BAN Recovery Agreement 20180511. [ASPIRION_00002242-46]
[46] Children's Hospital of Orange County_MSA__2021.07.01. [ASPIRION_00002369-80]
[47] Children's Hospital of Orange County_MSA__2021.07.01, paragraph 6. [ASPIRION_00002370]
[48] BAN Recovery Agreement 20180511, paragraph 7. [ASPIRION_00002243]
[49] The Banner contract is dated May 11, 2018, and Aspirion has continued to receive placements into 2024.  See BAN Recovery Agreement 20180511. [ASPIRION_00002242]



CONFIDENTIAL

Expert Report of David M. Duffus
Prepared at the Request of Counsel

- Aspirion management asserts that had the Former Employee Defendants, particularly Mr. Jewell and Mr. Cameron, observed the restrictions in their Employment Agreements, the likelihood that Ternium would have succeeded in the way that it did would have been diminished. Said differently, by violating the restrictive covenants and using Aspirion's confidential information, the long-term effects of the actions on Aspirion were exacerbated because of Ternium's immediate success.

39. It should also be noted that my analysis of the damages is presented on both an annual and cumulative basis to assist the trier of fact if it is determined that the damage period should be something other than what is presented above.

### 3.3.2   Lost Revenues

40. To quantify the lost revenues, I used the before and after method, which uses historical revenues (the "before") to estimate the revenues what would have been expected, but for the bad acts (the "but for revenues"). The but for revenue estimate is then compared against actual revenues (the "actual") to derive lost revenues.[50]

41. To estimate the but for revenues, I:

- Obtained and analyzed the historical placement volumes for each of the Aspirion clients at issue for the years 2022 and 2023[51] and quantified the two-year average placement volume. Two-year average placement volume represents the starting point for but for revenues. The clients at issue are Banner, CHOC, Evangelical, Advent, Legacy, Oschner, Baptist,[52] Christus Health and Parkview.[53]

---

[50] *Calculating Lost Profits*, pg. 36. [ASPIRION_00005548]
[51] This information was initially provided in a damage model developed by Aspirion personnel entitled Ternium Damages Impact Analysis v6 update to Oct - add Legacy-Osch-Advent.xlsx. I then tested the data in the Aspirion damage model to placement information obtained from Aspirion's Compass system. See the file Aspirion SHP Denials Clients - Placement and Revenue History - Through October 2024.xlsx. [ASPIRION_00005504] No discrepancies were identified based on my testing.
[52] The analysis with respect to Baptist was different, as discussed below.
[53] Per Exhibit B to Defendant Ternium, LLC's Amended Responses to Plaintiffs' First Set of Interrogatories, Ternium obtained signed contracts with Banner, CHOC, Evangelical, Advent, Legacy, Oschner and Baptist between September 2023 and October 2024. Further, Exhibit B indicates that meetings were held with Christus Health and Parkview on May 10, 2023 and November 14, 2023, respectively and that contracts with both providers are currently under review.



CONFIDENTIAL

Expert Report of David M. Duffus
Prepared at the Request of Counsel

- Quantified Aspirion's collection rate for 2022 and 2023 for the clients at issue.[54] The client collection rates were applied against the average placement volume to quantify but for collections.

- Quantified but for revenues by evaluating the average fee, in total and as a percentage of collections, received by Aspirion from each of the clients at issue in 2022 and 2023.[55] It is my understanding that the fees as a percentage of collections are a function of agreements between Aspirion and its clients and that the fee percentages vary based on the age of the claims placed. As such, there can be variability in the fee rates between years and between clients.

- Beyond 2024, estimated future but for revenues by applying a growth rate of ▮ percent. This growth rate reflects Aspirion's estimate of the future growth in the value of placements. To test the reasonableness of the estimate, I considered:

  i. Long-term estimates regarding inflation, which are projected at between 2.2 percent to 2.9 percent over the period 2024 through 2028.[56]

  ii. The growth in the Centers for Medicare & Medicaid Services ("CMS") Market Basket Index for long-term care hospital services, which are projected at between 2.9 percent and 4.4 percent between 2024 and 2028.[57]

  iii. Long-term estimates of real GDP growth, which are estimated at between 1.9 percent and 2.6 percent over the period 2024 through 2028.[58]

  Refer to Attachment 3A and Attachment 4, which present the but for revenue analysis.

---

[54] Collection volume and rates were provided by Aspirion based on data in the Compass system. Note that collection rates were not provided for Christus Health and Parkview.
[55] The fee rate was calculated based on collections and reported fees. In order to test the fee rate, I confirmed the fee rate by first testing the revenues, by client, to the Aspirion general ledger activity reported in the file DENIALS Aspirion Revenue General Ledger Detail 01.2023-10.2024.xlsx. [ASPIRION_00004858] In performing this analysis, no discrepancies were noted.
[56] Business Valuation Resources Economic Outlook Update Monthly for October 2024.
[57] Summary Web Table - CMS Market Basket Index Levels and Four-Quarter Moving Average Percent Changes found at Medicare Program Rates & Statistics | CMS.
[58] Business Valuation Resources Economic Outlook Update Monthly for October 2024. Note that real GDP rates do not reflect inflation. [ASPIRION_00005648-5702]



CONFIDENTIAL

Expert Report of David M. Duffus
Prepared at the Request of Counsel

42.     To quantify actual revenues, I:

- Projected what is expected for 2024 based on an annualization of the actual revenue received by Aspirion between January 1, 2024 and October 31, 2024.

- Estimated future actual revenues for 2025 through 2028 based on the 2024 projection, grown at the same ███ percent growth rate used to quantify the but for revenues.

    Refer to Attachment 3A and Attachment 4, which present the actual revenue analysis.

43.     As further demonstrated in Attachment 4, the total lost revenue over the period 2024 through 2028 is approximately $25.7 million.[59]

44.     Note that my quantification of the lost revenues also includes lost revenues associated with Baptist, which I have broken out into a separate category on Attachment 3A and Attachment 4.  It is my understanding that Baptist is a new client for Aspirion, which was also signed as a client by Ternium.[60]  Per data provided by Aspirion, including the annual revenue estimate entered in SalesForce, Aspirion projected annual revenue from Baptist of ███████[61]  In order to quantify the lost revenue from Baptist, I then reduced the projection by approximately ███████, consistent with the revenue reduction experienced across the existing Aspirion clients.  I then assumed that lost revenue associated with Baptist begins in 2025 to account for the time lag between when placements would be made and when collections would occur.[62]

### 3.3.3  Incremental Expense

45.     After quantifying the lost revenue, I then considered the incremental expenses that Aspirion would have incurred to generate the lost revenue, but which were avoided.  Consistent with the guidance

---

[59] It should be noted that my analysis indicates that there is no projected lost revenue for Legacy and Oschner.
[60] See Exhibit B to Defendant Ternium, LLC's Amended Responses to Plaintiffs' First Set of Interrogatories.
[61] Baptist Health Jacksonville High Dollar Denial Opp Screenshots.pdf. [ASPIRION_00005500-02]
[62] The Master Services Agreement between Baptist and MSA was signed by Baptist on April 15, 2024.  See Baptist Aspirion MSA Fully Executed.pdf. [ASPIRION_00002260-70] I understand that it can take upwards of five to six months between when placements occur and when the client receives payment from a payor.



CONFIDENTIAL

in the professional literature,[63] I performed a company specific investigation of the profit and loss statement from the Large Balance Denials business line for 2023 generated from Aspirion's accounting system[64] to identify expense categories that represented incremental expenses. Based on that analysis, as well as my discussions with Aspirion personnel, I concluded that the incremental expenses include payroll, employee benefits, contractor costs and client related expenses, which are encompassed in cost of services reported by Aspirion for its Large Balance Denials service line. For 2023, cost of services equated to ▓▓▓▓ percent of revenue, meaning that the gross profit margin was ▓▓▓ percent.[65] See Attachment 5.

46.   I also considered whether other expenses, including those classified as selling, general and administrative that are shared across all service lines should also be considered incremental. Based upon my analysis and discussions with Aspirion personnel, I concluded that selling, general and administrative expenses are not incremental. This includes commissions, which in many situations are considered an incremental expense. However, I understand that the commissions paid by Aspirion are based upon the revenues generated in the first two years of a client relationship[66] and that after the second year, commissions are no longer payable on existing relationships. With the exception of Baptist, all of the clients at issue have been with Aspirion for more than two years. In the case of the lost revenues associated with Baptist, I have reduced the projected profit margin for the first two years by 5 percent each year to include the commissions payable on that revenue.

### 3.3.4   Other Considerations - Discounting to Present Value

47.   As discussed, the lost profits damages are projected through 2028, even though it is expected that the award of damages, if any, will take place before the end of the damage period. Therefore, it is necessary to discount future lost profits to present value to account for both the time value of money, which recognizes that any damage award can be invested and generate a return, and the risk and uncertainty of generating the future profits.[67]

---

[63] Chapter 7, Costs, in *Calculating Lost Profits*, discusses the analysis of incremental expenses, including through the use of company specific analysis of expense line items demonstrated in accounting records. [ASPIRION_00005555-64]
[64] The P&L was included as a worksheet in the file Ternium Damages Impact Analysis v6 update to Oct - add Legacy-Osch-Advent.xlsx.
[65] ▓▓▓▓▓▓▓▓▓▓▓▓▓
[66] I further understand that commission do not start until collections have been received.
[67] *Calculating Lost Profits*, pg. 62. [ASPIRION_00005574]



CONFIDENTIAL

48.    In discounting the future damages to present value, I have:

- Assumed that the discount date is December 31, 2024, the approximate date of this Report.  If this case proceeds to trial, the discount date will need to be updated to the trial date.

- Employed the mid-year convention.  Under the mid-year convention, the profits are assumed to be earned evenly over the year, and in the first discount period, the damages are discounted by one-half year.  Each subsequent period is then increased by one year (i.e., 1.5, 2.5, etc.).[68]

- Used a discount rate of ▮ percent, which reflects Aspirion's weighted average cost of capital as of September 2024.[69]  It is my understanding that the business subject to the lost profits analysis would have been supported by both debt and equity financing, the cost of which is measured by the weighted average cost of capital.

### 3.3.5  Other Considerations - Mitigation

49.    The *Calculating Lost Profits* practice aid recognizes that mitigation is an issue that should be considered by experts, and specifically contains a chapter that addresses mitigation considerations applicable in the analysis of lost profits damages.[70]  The practice aid also discusses cases where lost profits damages were reduced either for actual mitigation or for the effects of mitigation efforts that could have been taken but were not by the plaintiff.[71]  Other treatises, including *Lost Profits Damages: Principles, Methods, and Applications*[72] also contain guidance surrounding consideration of mitigation issues in matters involving claims for lost profits.

50.    Based upon my analysis and discussions with Aspirion personnel, Aspirion has taken steps to mitigate its damages by:

---

[68] AICPA & CIMA Forensic & Valuation Services Practice Aid, *Discount Rates, Risk, and Uncertainty in Economic Damages Calculations*, pg. 13. [ASPIRION_00005600]
[69] As discussed in *Discount Rates, Risk, and Uncertainty in Economic Damages Calculations*, the weighted average cost of capital is typical discount rate used to discount future damages to present value.  See pg. 23. [ASPIRION_00005610-11]
[70] See *Calculating Lost Profits*, Chapter 11. [ASPIRION_00005580-84]
[71] *Id.*
[72] See *Lost Profits Damages: Principles, Methods, and* Applications, Chapter 13. [ASPIRION_00005940-60]



CONFIDENTIAL

- Filing suit against the Defendants on July 29, 2024,[73] seeking among other relief an injunction against the Defendants.  The suit was filed within approximately one-month of when Aspirion identified Mr. Jewell's involvement with Ternium and sent the cease-and-desist letter.

- Obtaining a temporary injunction, which was granted on August 26, 2024.[74]

- Reallocating employee resources to service other Aspirion clients.  I understand that the reallocation of employees did result in increased costs and a reduced gross margin due to the learning curve and training time associated with introducing employees into clients with which they have not previously worked.  These costs, costs to hire and train new employees to replace the employees who were solicited and the effect on the gross margin have not been included in the damages calculated to date.

### 3.3.6  Lost Profits Conclusion

51.    Based upon the analyses set forth above, it is my opinion that Aspirion has sustained lost profits damages of at least $11,786,029.  Refer to Attachment 4.

### 3.4    UNJUST ENRICHMENT DAMAGES

52.    In addition to lost profits, Aspirion is seeking unjust enrichment damages, including:

- Disgorgement of the compensation paid to the Former Employee Defendants over the period August 1, 2022 through their resignation dates.  The period for which Aspirion is seeking disgorgement reflects the timing of when the Former Employee Defendants began the planning and ultimate formation of Ternium while still employed by Aspirion.

---

[73] Complaint, p. 47 [signature page].
[74] Order dated August 26, 2024.



CONFIDENTIAL

Expert Report of David M. Duffus
Prepared at the Request of Counsel

- Disgorgement of the compensation paid to Ms. Abell between October 13, 2023 and her resignation date, November 1, 2024.[75]  The period for which Aspirion is seeking disgorgement reflects the timing of when Ms. Abell started as an independent contractor with Ternium while still employed by Aspirion.

- Disgorgement of the revenues and profits received by or expected to be received by Ternium from the clients at issue.

53.  As demonstrated in Attachment 6, the compensation paid to the Former Employee Defendants totals ▇▇▇▇▇▇▇▇, while the compensation paid to Ms. Abell totals ▇▇▇▇▇▇▇.[76]

54.  With respect to my analysis of the unjust enrichment damages related to Ternium, I have considered the guidance in the professional literature, including the *Litigation Services Handbook, Fifth Edition, The Role of the Financial Expert* (the "*Litigation Services Handbook*") and the AICPA & CIMA Forensic & Valuation Services Practice Aid, *Calculating Damages in Intellectual Property Disputes Fourth Edition* ("*Intellectual Property Disputes Damages*").  As discussed in the literature, the plaintiff bears the burden of quantifying the sales made by the defendant.  However, unlike in a lost profits analysis, the burden then shifts to the defendant to identify the sales, if any, that should be attributed to the presence and influence of other factors, and the deductible expenses that should be applied against the sales at issue.[77]

55.  The professional literature also provides that unjust enrichment damages can be additive to lost profits damages if they are not taken into account in computing the lost profits damages.[78]

---

[75] Defendant Ternium, LLC's Amended Responses to Plaintiffs' First Set of Interrogatories, Response to Interrogatory No. 6, pp. 8-9.
[76] Based upon the pay stubs provided for each of the respective individuals.
[77] *Litigation Services Handbook, Fifth Edition, The Role of the Financial Expert*, pp. 18.33-18.34. [ASPIRION_00005938-39]  See also, *Intellectual Property Dispute Damages,* pg. 105. [ASPIRION_00005809]
[78] *Litigation Services Handbook, Fifth Edition, The Role of the Financial Expert*, pg. 18.33, which discusses lost profits and unjust enrichment in the context of misappropriation of trade secrets claims.  [ASPIRION_00005938] See also, the AICPA & CIMA Forensic & Valuation Services Practice Aid, *Calculating Damages in Intellectual Property Disputes Fourth Edition*, pg. 21 and pg. 102. [ASPIRION_00005725; ASPIRION_00005806]



CONFIDENTIAL

56.    Consistent with the guidance in the professional literature, I have quantified the sales made by and projected to be made by Ternium as a measure of the unjust enrichment damages.  As of the date of this Report, Ternium has not produced financial statements, tax returns or other financial reports setting out the revenues and profits it has generated since inception.  It has, however, provided answers to interrogatories which demonstrate that it has generated year-to-date 2024 revenue of $2,661,877,[79] that projected 2024 revenues are $2,961,877 and that projected 2025 revenues are $5,482,731.[80]  Refer to Attachment 7.

57.    Based upon the foregoing, the unjust enrichment damages associated with the revenues generated by Ternium are $8,444,608.[81]  Pending production of information in discovery, I have treated the unjust enrichment damages as additive to the lost profits.  If the data and information produced subsequent to the date of this Report demonstrate that the revenues generated by Ternium are duplicative of the lost sales sustained by Aspirion, then the unjust enrichment damages will be treated as an alternative, rather than an additive, measure of damages.

### 3.5    OTHER DAMAGE MEASURES

58.    Based upon the nature of the claims in this matter, I understand that Aspirion may be entitled to assert other measures of damages, including disgorgement of the avoided costs and a reasonable royalty.

59.    As previously noted, as of the date of this Report, discovery is open and financial information from Ternium has not been produced to enable me to fully evaluate the additional measures of damages.  I reserve the right to supplement my analysis and this Report, if permitted, to evaluate and quantify the additional measures of damages if/when further information is produced.

---

[79] Amended Response to Interrogatory 12 set out in Defendant Ternium, LLC's Second Amended Responses to Plaintiffs' First Set of Interrogatories. Note that the interrogatory answer identifies the specific revenues generated from Aspirion clients, which comprise $2,630,123 of the $2,661,877 in reported revenue. Per this same interrogatory response, net operating income is $1,160,555. The net operating income figure is erroneous as it excludes commission expense.
[80] See Exhibit A to Defendant Ternium, LLC's Amended Responses to Plaintiffs' First Set of Interrogatories   Per the exhibit, net operating income is projected at $1,312,092 and $2,518,317 for 2024 and 2025, respectively.  The net operating income figure for 2024 is erroneous as it excludes commission expense.  The Exhibit discloses total revenue but does not contain a breakdown by client.
[81] $2,961,877 + $5,482,731 = $8,444,608.



CONFIDENTIAL

# 4 CONCLUSION

60.    Based upon the analyses that I have performed, it is my opinion, to a reasonable degree of professional certainty that Aspirion has sustained lost profits damages of at least $11,786,029, that the unjust enrichment damages in the form of the compensation paid to the former Aspirion employees is $3,397,628 and that the unjust enrichment damages in the form of the revenues received by or projected to be received by Ternium are $8,444,608.

61.    As previously discussed, I reserve the right update my analyses and this report, if appropriate, pending the production of additional information in discovery.

**David M. Duffus**                                         December 23, 2024

                                                            **Date**

---



CONFIDENTIAL

Expert Report of David M. Duffus
Prepared at the Request of Counsel

# 5  LIST OF REPORT ATTACHMENTS AND TABLES

Attachment 1 – Documents and Information Considered

Attachment 2 – Curriculum Vitae and Rule 26 Disclosures of David Duffus

Attachment 3A – Lost Revenue Analysis

Attachment 3B – Trailing Twelve Month Revenue Analysis

Attachment 4 – Lost Profits Analysis

Attachment 5 – Aspirion 2023 Income Statement

Attachment 6 – Compensation Analysis

Attachment 7 – Ternium 2024-2025 Projections

Table 1 - Summary of Damages

Table 2– Placed Claims Annual Volume

Table 3 – Placed Claims Trailing 12 Month Volume



Attachment 1

**Duffus Expert Report on Damages**
**Documents and Information Considered**

| Bates Stamped Documents | |
| --- | --- |
| ASPIRION_00002211-ASPIRION_00002224 | ASPIRION_00004368 |
| ASPIRION_00002225 | ASPIRION_00004369 |
| ASPIRION_00002226-ASPIRION_00002239 | ASPIRION_00004370 |
| ASPIRION_00002240-ASPIRION_00002241 | ASPIRION_00004371 |
| ASPIRION_00002242-ASPIRION_00002246 | ASPIRION_00004372 |
| ASPIRION_00002247-ASPIRION_00002253 | ASPIRION_00004373 |
| ASPIRION_00002254-ASPIRION_00002259 | ASPIRION_00004374 |
| ASPIRION_00002260-ASPIRION_00002270 | ASPIRION_00004375 |
| ASPIRION_00002271-ASPIRION_00002279 | ASPIRION_00004376 |
| ASPIRION_00002280-ASPIRION_00002291 | ASPIRION_00004377 |
| ASPIRION_00002292-ASPIRION_00002296 | ASPIRION_00004378 |
| ASPIRION_00002297 | ASPIRION_00004379 |
| ASPIRION_00002298-ASPIRION_00002310 | ASPIRION_00004380 |
| ASPIRION_00002311-ASPIRION_00002312 | ASPIRION_00004381 |
| ASPIRION_00002313-ASPIRION_00002336 | ASPIRION_00004382 |
| ASPIRION_00002337-ASPIRION_00002360 | ASPIRION_00004383 |
| ASPIRION_00002361 | ASPIRION_00004384 |
| ASPIRION_00002362-ASPIRION_00002366 | ASPIRION_00004385 |
| ASPIRION_00002367-ASPIRION_00002368 | ASPIRION_00004386 |
| ASPIRION_00002369-ASPIRION_00002380 | ASPIRION_00004387-ASPIRION_00004388 |
| ASPIRION_00002381-ASPIRION_00002385 | ASPIRION_00004389-ASPIRION_00004390 |
| ASPIRION_00002386-ASPIRION_00002403 | ASPIRION_00004391-ASPIRION_00004392 |
| ASPIRION_00002404-ASPIRION_00002405 | ASPIRION_00004393-ASPIRION_00004394 |
| ASPIRION_00002406-ASPIRION_00002415 | ASPIRION_00004395-ASPIRION_00004396 |
| ASPIRION_00002416-ASPIRION_00002423 | ASPIRION_00004397-ASPIRION_00004398 |
| ASPIRION_00002424-ASPIRION_00002437 | ASPIRION_00004399-ASPIRION_00004400 |
| ASPIRION_00002438-ASPIRION_00002453 | ASPIRION_00004401 |
| ASPIRION_00002454-ASPIRION_00002455 | ASPIRION_00004402 |
| ASPIRION_00002456-ASPIRION_00002461 | ASPIRION_00004403 |
| ASPIRION_00002462-ASPIRION_00002470 | ASPIRION_00004404 |
| ASPIRION_00002471-ASPIRION_00002482 | ASPIRION_00004405 |
| ASPIRION_00002483-ASPIRION_00002494 | ASPIRION_00004406 |
| ASPIRION_00002495-ASPIRION_00002496 | ASPIRION_00004407 |
| ASPIRION_00002497-ASPIRION_00002504 | ASPIRION_00004408 |
| ASPIRION_00002505-ASPIRION_00002506 | ASPIRION_00004409 |
| ASPIRION_00002507-ASPIRION_00002510 | ASPIRION_00004410 |
| ASPIRION_00002511-ASPIRION_00002541 | ASPIRION_00004411 |
| ASPIRION_00002542-ASPIRION_00002555 | ASPIRION_00004412-ASPIRION_00004413 |
| ASPIRION_00002556-ASPIRION_00002559 | ASPIRION_00004414 |
| ASPIRION_00002560-ASPIRION_00002564 | ASPIRION_00004415-ASPIRION_00004416 |
| ASPIRION_00002565-ASPIRION_00002568 | ASPIRION_00004417-ASPIRION_00004418 |
| ASPIRION_00002569-ASPIRION_00002572 | ASPIRION_00004419-ASPIRION_00004420 |
| ASPIRION_00002573-ASPIRION_00002575 | ASPIRION_00004421-ASPIRION_00004422 |
| ASPIRION_00002576-ASPIRION_00002577 | ASPIRION_00004423-ASPIRION_00004424 |
| ASPIRION_00002578 | ASPIRION_00004425 |
| ASPIRION_00002579-ASPIRION_00002581 | ASPIRION_00004426 |
| ASPIRION_00002582-ASPIRION_00002584 | ASPIRION_00004427 |
| ASPIRION_00002585 | ASPIRION_00004428 |
| ASPIRION_00002586 | ASPIRION_00004429 |
| ASPIRION_00002587-ASPIRION_00002588 | ASPIRION_00004430 |
| ASPIRION_00002589 | ASPIRION_00004431 |
| ASPIRION_00002590-ASPIRION_00002592 | ASPIRION_00004432 |
| ASPIRION_00002593-ASPIRION_00002597 | ASPIRION_00004433 |
| ASPIRION_00002598-ASPIRION_00002603 | ASPIRION_00004434 |
| ASPIRION_00002604-ASPIRION_00002619 | ASPIRION_00004435 |
| ASPIRION_00002620-ASPIRION_00002628 | ASPIRION_00004436 |
| ASPIRION_00002629-ASPIRION_00002631 | ASPIRION_00004437 |

| Bates Stamped Documents | |
|---|---|
| ASPIRION_00002632-ASPIRION_00002633 | ASPIRION_00004438 |
| ASPIRION_00002634-ASPIRION_00002635 | ASPIRION_00004439 |
| ASPIRION_00002636-ASPIRION_00002637 | ASPIRION_00004440 |
| ASPIRION_00002638-ASPIRION_00002639 | ASPIRION_00004441 |
| ASPIRION_00002640-ASPIRION_00002641 | ASPIRION_00004442 |
| ASPIRION_00002642-ASPIRION_00002651 | ASPIRION_00004443 |
| ASPIRION_00002652-ASPIRION_00002672 | ASPIRION_00004444 |
| ASPIRION_00002673-ASPIRION_00002681 | ASPIRION_00004445 |
| ASPIRION_00002682 | ASPIRION_00004446 |
| ASPIRION_00002683-ASPIRION_00002688 | ASPIRION_00004447 |
| ASPIRION_00002689-ASPIRION_00002695 | ASPIRION_00004448 |
| ASPIRION_00002696-ASPIRION_00002698 | ASPIRION_00004449 |
| ASPIRION_00002699-ASPIRION_00002709 | ASPIRION_00004450 |
| ASPIRION_00002710-ASPIRION_00002711 | ASPIRION_00004451 |
| ASPIRION_00002712-ASPIRION_00002713 | ASPIRION_00004452 |
| ASPIRION_00002714-ASPIRION_00002715 | ASPIRION_00004453 |
| ASPIRION_00002716-ASPIRION_00002719 | ASPIRION_00004454 |
| ASPIRION_00002720-ASPIRION_00002721 | ASPIRION_00004455 |
| ASPIRION_00002722-ASPIRION_00002723 | ASPIRION_00004456 |
| ASPIRION_00002724-ASPIRION_00002725 | ASPIRION_00004457 |
| ASPIRION_00002726-ASPIRION_00002728 | ASPIRION_00004458 |
| ASPIRION_00002729-ASPIRION_00002730 | ASPIRION_00004459 |
| ASPIRION_00002731-ASPIRION_00002740 | ASPIRION_00004460 |
| ASPIRION_00002741-ASPIRION_00002747 | ASPIRION_00004461 |
| ASPIRION_00002748-ASPIRION_00002752 | ASPIRION_00004462 |
| ASPIRION_00002753-ASPIRION_00002757 | ASPIRION_00004463 |
| ASPIRION_00002758-ASPIRION_00002764 | ASPIRION_00004464 |
| ASPIRION_00002765 | ASPIRION_00004465 |
| ASPIRION_00002766-ASPIRION_00002767 | ASPIRION_00004466 |
| ASPIRION_00002768-ASPIRION_00002773 | ASPIRION_00004467 |
| ASPIRION_00002774-ASPIRION_00002785 | ASPIRION_00004468 |
| ASPIRION_00002786-ASPIRION_00002787 | ASPIRION_00004469 |
| ASPIRION_00002788-ASPIRION_00002794 | ASPIRION_00004470 |
| ASPIRION_00002795-ASPIRION_00002799 | ASPIRION_00004471 |
| ASPIRION_00002800-ASPIRION_00002802 | ASPIRION_00004472 |
| ASPIRION_00002803-ASPIRION_00002811 | ASPIRION_00004473 |
| ASPIRION_00002812-ASPIRION_00002820 | ASPIRION_00004474 |
| ASPIRION_00002821-ASPIRION_00002823 | ASPIRION_00004475 |
| ASPIRION_00002824-ASPIRION_00002832 | ASPIRION_00004476 |
| ASPIRION_00002833-ASPIRION_00002841 | ASPIRION_00004477 |
| ASPIRION_00002842-ASPIRION_00002844 | ASPIRION_00004478 |
| ASPIRION_00002845-ASPIRION_00002846 | ASPIRION_00004479 |
| ASPIRION_00002847-ASPIRION_00002857 | ASPIRION_00004480 |
| ASPIRION_00002858-ASPIRION_00002867 | ASPIRION_00004481 |
| ASPIRION_00002868-ASPIRION_00002888 | ASPIRION_00004482 |
| ASPIRION_00002889-ASPIRION_00002910 | ASPIRION_00004483 |
| ASPIRION_00002911 | ASPIRION_00004484 |
| ASPIRION_00002912-ASPIRION_00002916 | ASPIRION_00004485 |
| ASPIRION_00002917 | ASPIRION_00004486 |
| ASPIRION_00002918 | ASPIRION_00004487 |
| ASPIRION_00002919-ASPIRION_00002923 | ASPIRION_00004488 |
| ASPIRION_00002924-ASPIRION_00002925 | ASPIRION_00004489 |
| ASPIRION_00002926-ASPIRION_00002936 | ASPIRION_00004490 |
| ASPIRION_00002937-ASPIRION_00002942 | ASPIRION_00004491 |
| ASPIRION_00002943-ASPIRION_00002944 | ASPIRION_00004492 |
| ASPIRION_00002945 | ASPIRION_00004493 |
| ASPIRION_00002946-ASPIRION_00002947 | ASPIRION_00004494 |
| ASPIRION_00002948-ASPIRION_00002954 | ASPIRION_00004495 |
| ASPIRION_00002955-ASPIRION_00002966 | ASPIRION_00004496 |
| ASPIRION_00002967-ASPIRION_00002968 | ASPIRION_00004497 |

| Bates Stamped Documents | |
|---|---|
| ASPIRION_00002969 | ASPIRION_00004498 |
| ASPIRION_00002970-ASPIRION_00002971 | ASPIRION_00004499 |
| ASPIRION_00002972-ASPIRION_00002992 | ASPIRION_00004500 |
| ASPIRION_00002993-ASPIRION_00003000 | ASPIRION_00004501 |
| ASPIRION_00003001-ASPIRION_00003008 | ASPIRION_00004502 |
| ASPIRION_00003009-ASPIRION_00003010 | ASPIRION_00004504 |
| ASPIRION_00003011-ASPIRION_00003018 | ASPIRION_00004505 -ASPIRION_00004506 |
| ASPIRION_00003019-ASPIRION_00003020 | ASPIRION_00004507 |
| ASPIRION_00003021-ASPIRION_00003024 | ASPIRION_00004508- ASPIRION_00004509 |
| ASPIRION_00003025-ASPIRION_00003029 | ASPIRION_00004510 |
| ASPIRION_00003030-ASPIRION_00003031 | ASPIRION_00004511-ASPIRION_00004512 |
| ASPIRION_00003032-ASPIRION_00003037 | ASPIRION_00004513 |
| ASPIRION_00003038-ASPIRION_00003045 | ASPIRION_00004514 |
| ASPIRION_00003046-ASPIRION_00003047 | ASPIRION_00004515 |
| ASPIRION_00003048-ASPIRION_00003058 | ASPIRION_00004516 |
| ASPIRION_00003059-ASPIRION_00003068 | ASPIRION_00004517 |
| ASPIRION_00003069 | ASPIRION_00004518 |
| ASPIRION_00003070-ASPIRION_00003077 | ASPIRION_00004519 |
| ASPIRION_00003077-ASPIRION_00003087 | ASPIRION_00004520 |
| ASPIRION_00003088-ASPIRION_00003090 | ASPIRION_00004521 |
| ASPIRION_00003091-ASPIRION_00003095 | ASPIRION_00004522 |
| ASPIRION_00003096-ASPIRION_00003097 | ASPIRION_00004523 |
| ASPIRION_00003098-ASPIRION_00003103 | ASPIRION_00004524 |
| ASPIRION_00003104-ASPIRION_00003105 | ASPIRION_00004525 |
| ASPIRION_00003106-ASPIRION_00003113 | ASPIRION_00004526 |
| ASPIRION_00003114-ASPIRION_00003125 | ASPIRION_00004527 |
| ASPIRION_00003126-ASPIRION_00003141 | ASPIRION_00004528 |
| ASPIRION_00003142-ASPIRION_00003145 | ASPIRION_00004529 |
| ASPIRION_00003146 | ASPIRION_00004530 |
| ASPIRION_00003147 | ASPIRION_00004531 |
| ASPIRION_00003148-ASPIRION_00003170 | ASPIRION_00004532 |
| ASPIRION_00003171-ASPIRION_00003173 | ASPIRION_00004533 |
| ASPIRION_00003174-ASPIRION_00003187 | ASPIRION_00004534 |
| ASPIRION_00003188-ASPIRION_00003192 | ASPIRION_00004535 |
| ASPIRION_00003193-ASPIRION_00003203 | ASPIRION_00004536- ASPIRION_00004537 |
| ASPIRION_00003204-ASPIRION_00003216 | ASPIRION_00004538 |
| ASPIRION_00003217-ASPIRION_00003226 | ASPIRION_00004539 |
| ASPIRION_00003227-ASPIRION_00003233 | ASPIRION_00004540 |
| ASPIRION_00003234-ASPIRION_00003240 | ASPIRION_00004541 |
| ASPIRION_00003241-ASPIRION_00003247 | ASPIRION_00004542 |
| ASPIRION_00003248-ASPIRION_00003254 | ASPIRION_00004543 |
| ASPIRION_00003255-ASPIRION_00003265 | ASPIRION_00004544 |
| ASPIRION_00003266-ASPIRION_00003270 | ASPIRION_00004545 |
| ASPIRION_00003271-ASPIRION_00003272 | ASPIRION_00004546 |
| ASPIRION_00003273-ASPIRION_00003277 | ASPIRION_00004547 |
| ASPIRION_00003278-ASPIRION_00003285 | ASPIRION_00004548 |
| ASPIRION_00003286-ASPIRION_00003292 | ASPIRION_00004549 |
| ASPIRION_00003293-ASPIRION_00003294 | ASPIRION_00004550 |
| ASPIRION_00003295-ASPIRION_00003302 | ASPIRION_00004551 |
| ASPIRION_00003303-ASPIRION_00003310 | ASPIRION_00004552 |
| ASPIRION_00003311-ASPIRION_00003326 | ASPIRION_00004553 |
| ASPIRION_00003327 | ASPIRION_00004554 |
| ASPIRION_00003328-ASPIRION_00003339 | ASPIRION_00004555 |
| ASPIRION_00003340 - - ASPIRION_00003340 | ASPIRION_00004556 |
| ASPIRION_00003341-ASPIRION_00003344 | ASPIRION_00004557 |
| ASPIRION_00003345-ASPIRION_00003347 | ASPIRION_00004558 |
| ASPIRION_00003348 | ASPIRION_00004559 |
| ASPIRION_00003349-ASPIRION_00003358 | ASPIRION_00004560 |
| ASPIRION_00003359-ASPIRION_00003360 | ASPIRION_00004561 |
| ASPIRION_00003361-ASPIRION_00003372 | ASPIRION_00004562 |

| Bates Stamped Documents | |
|---|---|
| ASPIRION_00003373 | ASPIRION_00004563 |
| ASPIRION_00003374-ASPIRION_00003379 | ASPIRION_00004564 |
| ASPIRION_00003380-ASPIRION_00003382 | ASPIRION_00004565 |
| ASPIRION_00003383-ASPIRION_00003385 | ASPIRION_00004566 |
| ASPIRION_00003386-ASPIRION_00003392 | ASPIRION_00004567 |
| ASPIRION_00003393-ASPIRION_00003402 | ASPIRION_00004568 |
| ASPIRION_00003403-ASPIRION_00003422 | ASPIRION_00004569 |
| ASPIRION_00003423-ASPIRION_00003430 | ASPIRION_00004570 |
| ASPIRION_00003431-ASPIRION_00003434 | ASPIRION_00004571 |
| ASPIRION_00003435-ASPIRION_00003439 | ASPIRION_00004572 |
| ASPIRION_00003440-ASPIRION_00003448 | ASPIRION_00004573 |
| ASPIRION_00003449-ASPIRION_00003453 | ASPIRION_00004574 |
| ASPIRION_00003454-ASPIRION_00003458 | ASPIRION_00004575 |
| ASPIRION_00003459-ASPIRION_00003464 | ASPIRION_00004576 |
| ASPIRION_00003465-ASPIRION_00003470 | ASPIRION_00004577 |
| ASPIRION_00003471-ASPIRION_00003481 | ASPIRION_00004578 |
| ASPIRION_00003482-ASPIRION_00003489 | ASPIRION_00004579 |
| ASPIRION_00003490-ASPIRION_00003491 | ASPIRION_00004580 |
| ASPIRION_00003492-ASPIRION_00003500 | ASPIRION_00004581 |
| ASPIRION_00003501-ASPIRION_00003515 | ASPIRION_00004582 |
| ASPIRION_00003516-ASPIRION_00003526 | ASPIRION_00004583 |
| ASPIRION_00003527-ASPIRION_00003536 | ASPIRION_00004584-ASPIRION_00004585 |
| ASPIRION_00003537-ASPIRION_00003538 | ASPIRION_00004586 |
| ASPIRION_00003539 | ASPIRION_00004587 |
| ASPIRION_00003540-ASPIRION_00003548 | ASPIRION_00004588 |
| ASPIRION_00003549-ASPIRION_00003562 | ASPIRION_00004589- ASPIRION_00004590 |
| ASPIRION_00003563-ASPIRION_00003570 | ASPIRION_00004591 |
| ASPIRION_00003571-ASPIRION_00003578 | ASPIRION_00004592 |
| ASPIRION_00003579-ASPIRION_00003581 | ASPIRION_00004593 |
| ASPIRION_00003582-ASPIRION_00003607 | ASPIRION_00004594 |
| ASPIRION_00003608-ASPIRION_00003617 | ASPIRION_00004595 |
| ASPIRION_00003618-ASPIRION_00003622 | ASPIRION_00004596 |
| ASPIRION_00003623 | ASPIRION_00004597 |
| ASPIRION_00003624-ASPIRION_00003625 | ASPIRION_00004598 |
| ASPIRION_00003626 | ASPIRION_00004599 |
| ASPIRION_00003627-ASPIRION_00003631 | ASPIRION_00004600 |
| ASPIRION_00003632-ASPIRION_00003638 | ASPIRION_00004601 |
| ASPIRION_00003639 | ASPIRION_00004602 |
| ASPIRION_00003640-ASPIRION_00003642 | ASPIRION_00004603 |
| ASPIRION_00003643-ASPIRION_00003648 | ASPIRION_00004604 |
| ASPIRION_00003649-ASPIRION_00003654 | ASPIRION_00004605 |
| ASPIRION_00003655-ASPIRION_00003658 | ASPIRION_00004606 |
| ASPIRION_00003659-ASPIRION_00003672 | ASPIRION_00004607 |
| ASPIRION_00003673-ASPIRION_00003686 | ASPIRION_00004608 |
| ASPIRION_00003687-ASPIRION_00003688 | ASPIRION_00004609 |
| ASPIRION_00003689-ASPIRION_00003695 | ASPIRION_00004610 |
| ASPIRION_00003696-ASPIRION_00003711 | ASPIRION_00004611 |
| ASPIRION_00003712-ASPIRION_00003721 | ASPIRION_00004612 |
| ASPIRION_00003722-ASPIRION_00003724 | ASPIRION_00004613 |
| ASPIRION_00003725-ASPIRION_00003727 | ASPIRION_00004614 |
| ASPIRION_00003728-ASPIRION_00003733 | ASPIRION_00004615-ASPIRION_00004616 |
| ASPIRION_00003734-ASPIRION_00003739 | ASPIRION_00004617 |
| ASPIRION_00003740-ASPIRION_00003749 | ASPIRION_00004618 |
| ASPIRION_00003750-ASPIRION_00003756 | ASPIRION_00004619 |
| ASPIRION_00003757-ASPIRION_00003758 | ASPIRION_00004620 |
| ASPIRION_00003759-ASPIRION_00003762 | ASPIRION_00004621 |
| ASPIRION_00003763-ASPIRION_00003769 | ASPIRION_00004622 |
| ASPIRION_00003770-ASPIRION_00003786 | ASPIRION_00004623 |
| ASPIRION_00003787-ASPIRION_00003795 | ASPIRION_00004624 |
| ASPIRION_00003796-ASPIRION_00003811 | ASPIRION_00004625 |

| Bates Stamped Documents | |
|---|---|
| ASPIRION_00003812-ASPIRION_00003814 | ASPIRION_00004626 |
| ASPIRION_00003815-ASPIRION_00003818 | ASPIRION_00004627 |
| ASPIRION_00003819 | ASPIRION_00004628 |
| ASPIRION_00003820 | ASPIRION_00004629 |
| ASPIRION_00003821 | ASPIRION_00004630 |
| ASPIRION_00003822-ASPIRION_00003832 | ASPIRION_00004631 |
| ASPIRION_00003833-ASPIRION_00003842 | ASPIRION_00004632 |
| ASPIRION_00003843-ASPIRION_00003861 | ASPIRION_00004633 |
| ASPIRION_00003862-ASPIRION_00003873 | ASPIRION_00004634 |
| ASPIRION_00003874-ASPIRION_00003878 | ASPIRION_00004635 |
| ASPIRION_00003879-ASPIRION_00003924 | ASPIRION_00004636 |
| ASPIRION_00003925-ASPIRION_00003926 | ASPIRION_00004637 |
| ASPIRION_00003927-ASPIRION_00003932 | ASPIRION_00004638 |
| ASPIRION_00003933-ASPIRION_00003936 | ASPIRION_00004639 |
| ASPIRION_00003937-ASPIRION_00003945 | ASPIRION_00004640 |
| ASPIRION_00003946-ASPIRION_00003956 | ASPIRION_00004641 |
| ASPIRION_00003957-ASPIRION_00003968 | ASPIRION_00004642 |
| ASPIRION_00003969-ASPIRION_00003981 | ASPIRION_00004643- ASPIRION_00004644 |
| ASPIRION_00003982-ASPIRION_00003988 | ASPIRION_00004645 |
| ASPIRION_00003989-ASPIRION_00004023 | ASPIRION_00004656- ASPIRION00004657 |
| ASPIRION_00004024-ASPIRION_00004029 | ASPIRION_00004858 |
| ASPIRION_00004030-ASPIRION_00004042 | ASPIRION_00004877- ASPIRION_00004878 |
| ASPIRION_00004043 | ASPIRION_00005031-ASPIRION_00005036 |
| ASPIRION_00004044-ASPIRION_00004054 | ASPIRION_00005092 |
| ASPIRION_00004055-ASPIRION_00004056 | ASPIRION_00005093 |
| ASPIRION_00004057-ASPIRION_00004063 | ASPIRION_00005094 |
| ASPIRION_00004064-ASPIRION_00004075 | ASPIRION_00005095 |
| ASPIRION_00004076-ASPIRION_00004079 | ASPIRION_00005096 |
| ASPIRION_00004080-ASPIRION_00004084 | ASPIRION_00005097 |
| ASPIRION_00004085-ASPIRION_00004107 | ASPIRION_00005098 |
| ASPIRION_00004108-ASPIRION_00004118 | ASPIRION_00005099 |
| ASPIRION_00004119-ASPIRION_00004124 | ASPIRION_00005100 |
| ASPIRION_00004125-ASPIRION_00004128 | ASPIRION_00005101 |
| ASPIRION_00004129-ASPIRION_00004132 | ASPIRION_00005102 |
| ASPIRION_00004133-ASPIRION_00004136 | ASPIRION_00005103 |
| ASPIRION_00004137-ASPIRION_00004145 | ASPIRION_00005104 |
| ASPIRION_00004146-ASPIRION_00004155 | ASPIRION_00005105 |
| ASPIRION_00004156-ASPIRION_00004166 | ASPIRION_00005106 |
| ASPIRION_00004167-ASPIRION_00004186 | ASPIRION_00005107 |
| ASPIRION_00004187-ASPIRION_00004193 | ASPIRION_00005108 |
| ASPIRION_00004194-ASPIRION_00004227 | ASPIRION_00005109 |
| ASPIRION_00004228-ASPIRION_00004244 | ASPIRION_00005110 |
| ASPIRION_00004245-ASPIRION_00004291 | ASPIRION_00005111 |
| ASPIRION_00004292-ASPIRION_00004294 | ASPIRION_00005112 |
| ASPIRION_00004295-ASPIRION_00004316 | ASPIRION_00005113 |
| ASPIRION_00004317-ASPIRION_00004326 | ASPIRION_00005114 |
| ASPIRION_00004327-ASPIRION_00004328 | ASPIRION_00005115-ASPIRION_00005116 |
| ASPIRION_00004329-ASPIRION_00004330 | ASPIRION_00005117 |
| ASPIRION_00004331 | ASPIRION_00005118 |
| ASPIRION_00004332-ASPIRION_00004337 | ASPIRION_00005119 |
| ASPIRION_00004338-ASPIRION_00004345 | ASPIRION_00005120 |
| ASPIRION_00004346-ASPIRION_00004354 | ASPIRION_00005121 |
| ASPIRION_00004355 | ASPIRION_00005493 |
| ASPIRION_00004356 - ASPIRION_00004357 | ASPIRION_00005494 |
| ASPIRION_00004358 | ASPIRION_00005495-ASPIRION_00005497 |
| ASPIRION_00004359 | ASPIRION_00005498-ASPIRION_00005499 |
| ASPIRION_00004360 | ASPIRION_00005500-ASPIRION_00005502 |
| ASPIRION_00004361 | ASPIRION_00005503 |
| ASPIRION_00004362 | ASPIRION_00005504 |
| ASPIRION_00004363 | ASPIRION_00005505 |

| Bates Stamped Documents | |
|---|---|
| ASPIRION_00004364 | ASPIRION_00005506 |
| ASPIRION_00004365 | ASPIRION_00005507 |
| ASPIRION_00004366 | ASPIRION_00005511 |
| ASPIRION_00004367 | ASPIRION_00005512 |

| Filings and Proceedings |
|---|
| Complaint for Injunctive Relief and Damages, dated July 29, 2024 |
| Order Granting Temporary Restraining Order And Setting Preliminary Injunction Hearing, dated July 31, 2024 |
| Order Preliminary Injunction, dated August 26, 2024 |
| Mainsail Parent, LLC D/B/A Aspirion's Responses And Objections To Defendant Jewell's First Set of Interrogatories, dated November 13, 2024 |
| Mainsail Parent, LLC D/B/A Aspirion's Responses And Objections To Ternium, LLC's First Set of Interrogatories, dated November 13, 2024 |
| Specialized Healthcare Partners, LLC's Responses And Objections to Defendant Jewell's First Set of Interrogatories, dated November 13, 2024 |
| Specialized Healthcare Partners, LLC's Responses And Objections to Defendant Ternium's First Set of Interrogatories, dated November 13, 2024 |
| Defendant Alisha May's Amended Responses To Plaintiff's First Set of Interrogatories, dated November 14, 2024 |
| Defendant David Jewell's Amended Responses To Plaintiff's First Set of Interrogatories, dated November 14, 2024 |
| Defendant Megan Kelly's Amended Responses To Plaintiff's First Set of Interrogatories, dated November 14, 2024 |
| Defendant Michael Cameron's Amended Responses To Plaintiff's First Set of Interrogatories, dated November 14, 2024 |
| Defendant Ternium, LLC's Amended Responses To Plaintiff's First Set of Interrogatories, dated November 14, 2024 |
| Proposed First Amended Complaint For Injunctive Relief and Damages, dated November 22, 2024 |
| Defendant Alisha May's Second Amended Responses To Plaintiff's First Set of Interrogatories, dated December 10, 2024 |
| Defendant David Jewell's Second Amended Responses To Plaintiff's First Set of Interrogatories, dated December 10, 2024 |
| Defendant Megan Kelly's Second Amended Responses To Plaintiff's First Set of Interrogatories, dated December 10, 2024 |
| Defendant Michael Cameron's Second Amended Responses To Plaintiff's First Set of Interrogatories, dated December 10, 2024 |
| Defendant Ternium, LLC's Second Amended Responses To Plaintiff's First Set of Interrogatories, dated December 10, 2024 |
| Mainsail Parent, LLC D/B/A Aspirion's Amended Responses And Objections To Jewell's First Set of Interrogatories, dated December 10, 2024 |
| Mainsail Parent, LLC D/B/A Aspirion's Amended Responses And Objections To Ternium, LLC's First Set of Interrogatories, dated December 10, 2024 |
| Specialized Healthcare Partners, LLC's Amended Responses And Objections to Jewell's First Set of Interrogatories, dated December 10, 2024 |
| Specialized Healthcare Partners, LLC's Responses And Objections to Defendant Ternium's First Set of Interrogatories, dated December 10, 2024 |

| Research |
|---|
| ASPIRION_00005703-ASPIRION_00005844 |
| ASPIRION_00005513-ASPIRION_00005587 |
| ASPIRION_00005588-ASPIRION_00005647 |
| ASPIRION_00005648-ASPIRION_00005702 |
| ASPIRION_00005937-5939 |
| ASPIRION_00005940-ASPIRION_00005960 |
| CMS, Market Basket Index Levels and Four-Quarter Moving Average Percent Changes |
| CMS.gov, FAQ - Market Basket Definitions and General Information |
| CMS.gov, Market Basket Data |

Attachment 2

CURRICULUM VITAE

# DAVID M. DUFFUS, CPA/ABV/CFF, CFE
**PARTNER**

## QUALIFICATIONS

MBA, Accounting and Finance, University of Pittsburgh
BA, Economics and Political Science, University of Pittsburgh
Certified Public Accountant (CPA)
Accredited in Business Valuation (ABV)
Certified in Financial Forensics (CFF)
Certified Fraud Examiner (CFE)

## MEMBERSHIPS

American Institute of Certified Public Accountants (AICPA), Member
  AICPA Forensic & Litigation Services Committee, Past Member
  AICPA Economic Damages Task Force, Past Chair
  AICPA Damages Advisory Panel
  AICPA CFF Experienced Exam Task Force
Pennsylvania Institute of Certified Public Accountants
Association of Certified Fraud Examiners
Turnaround Management Association, Pittsburgh Chapter Board, Past Board President

## PROFILE

**David Duffus** has more than 30 years of experience providing complex litigation, forensic accounting and valuation services for businesses ranging from start-up entities to Fortune-100 companies. He has testified as an expert at deposition, trial and in alternative dispute settings more than 100 times. David also has served as an arbitrator/neutral accountant in post-acquisition and valuation-related disputes.

He earned his BA in Economics and Political Science, and his MBA in Accounting and Finance from the University of Pittsburgh. He is a Certified Public Accountant, Accredited in Business Valuation, Certified in Financial Forensics, and is a Certified Fraud Examiner.

## PRESENTATIONS & SPEAKER ENGAGEMENTS

"Overview of Expert Reports, Deposition & Trial," Co-Presenter, American Institute of Certified Public Accountants, *October 2024, October 2023 and October 2022*

"Building and Maintaining an FLS Practice," Co-Presenter, American Institute of Certified Public Accountants, *October 2024*

"Productivity Loss: Helpful Tips For Proving Cause & Effect," Co-Presenter, Allegheny County Bar Association, *August 2024*

"Reasonable Certainty Update," Co-Presenter, Texas Society of Certified Public Accountants, *August 2024*

"Lost Profits," Presenter, Pennsylvania Institute of Certified Public Accountants, Advisory Services Conference, *October 2023*



"NFT Valuation: Pictures Worth Ten Thousand Dollars…Or Not," Co-Presenter, Business Valuation Resources, *January 2023*

"Lost Profits for New Businesses," Co-Presenter, Kentucky Society of Certified Public Accountants, *August 2022*

"Lost Profits for New Businesses," Co-Presenter, Valuation Products & Services StraightTalk Webinar, *August 2022*

"Construction Claims – Damages Calculations and Analysis," Co-Presenter, 2021 Maryland Society of CPAs Forensic Valuation Conference, *May 2022*

"Costs Matter," Co-Presenter, 2021 AICPA Forensic & Valuation Services Conference, *November 2021*

"Construction Claims – Damages Calculations and Analysis," Co-Presenter, 2021 AICPA Forensic & Valuation Services Conference, *November 2021*

"Quantifying Construction Damages," Co-presenter, Kentucky Society of Certified Public Accountants, *August 2021*

"Virtual Testimony," Panelist, Kentucky Society of Certified Public Accountants, *August 2020*

"Economic Damages – The Building Blocks," Co-presenter, 2019 AICPA Forensic & Valuation Services Conference, *November 2019*

"What's New for You?" Presenter and Panelist, 2019 AICPA Forensic & Valuation Services Conference, *November 2019*

"Statement on Standards for Forensic Services," Pittsburgh Chapter of the Association of Certified Fraud Examiners, *October 2019*

"AICPA Practice Aid Updates," Kentucky Society of Certified Public Accountants, *August 2019*

"Economic Damages Update – Practice Aid Overview," Co-presenter, AICPA Webcast, *May 2019*

"Lighting Round – Ask the Experts," Presenter and Panelist, 2018 AICPA Forensic & Valuation Services Conference, *November 2018*

"Assessing Data Reliability Issues in Quantifying Damages – A Case Law Review," Presenter, 2018 AICPA Forensic & Valuation Services Conference, *November 2018*

"Post-Acquisition Disputes" Webinar, Co-Presenter, Baker Tilly, *October 2018*

"Valuing Lost Profits" Webinar, Presenter and Panelist, Financial Poise, *September 2018*

"Assumptions," Baker Tilly Video Series, *November 2017*

"Causation," Baker Tilly Video Series, *November 2017*

AICPA Certified in Financial Forensics Review Course, Co-Instructor, *November 2017*

"Best Practices in Project Accounting Controls," Baker Tilly Webinar Series, Co-presenter, *November 2015*

"The Role of the Accountant in Oil & Gas Matters," Presenter, Women's Bar Association of Western Pennsylvania, Oil & Gas Seminar, *September 2015*

"Using Models to Optimize Revenues & Contain Costs," Co-presenter, Association of Independent Colleges & Universities of Pennsylvania, *June 2014*

"Investigating & Preventing Fraud in Government" Presenter, Pennsylvania State Association of County Controllers, *April 2014*



## PUBLICATIONS & PAPERS

"Protecting Trade Secrets in a Remote Work Environment," Pennsylvania Institute of Certified Public Accountants CPA Journal, *Summer 2022*

Chapter 17 "Lost Profits For New Businesses," Co-author, Lost Profits Damages: Principles, Methods and Applications, Second Edition, *January 2022*

"The Building Wave of College Class Action Litigation," *May 2020*

"The Next Level of Trade Secrets Protection," *May 2020*

"Overview of the Statement on Standards for Forensic Services," *September 2019*

"How to Best Use Financial Experts in Construction Disputes," Co-author, Construction Accounting and Taxation, *November/December 2018*

"Attaining Reasonable Certainty in Economic Damages Calculations:  Revenues, Costs and Best Evidence," Co-author, AICPA, Forensic & Valuation Services Section, Practice Aid, *November 2018*

"Assumptions – Damage Period," *July 2018*

"Attaining Reasonable Certainty in Economic Damages Calculations," Co-author, AICPA, *August 2015*

## TESTIFYING EXPERIENCE (2020 – 2024)

**In the Circuit Court of Kanawha County, West Virginia, Deposition**

David Pulver Pray and Laura Jones Pray, et al. v. Anthony Rager, CPA, Brown, Edwards & Co., LLP, Gibbons & Kawash, A.C., Al Minor & Associates, Inc., Albert R. Minor and Michelle Scholes

**United States District Court District of Arizona, Trial and Deposition**

Paul Johnson Drywall, Inc. v. The Sterling Group, L.P.

**United States District Court for the Western District of Virginia, Abingdon Division, Trial and Deposition**

Jeffrey G. Neal, et al. v. Michael Neal, et al.

**Superior Court of California, County of Sacramento, Deposition**

RL Liquidators, LLC v. First Property Realty Corporation, 221 Richards Boulevard, LLC, 221 Richards Associates, Venture Advisors, LLC Michael Geller Revocable Trust, Joel Frank Trust, and Does 1-100; and Safelite Fulfillment, Inc. v. RL Liquidators, LLC.

**American Arbitration Association, Arbitration/Trial**

Sean Aronsen, Individually and Derivatively on Behalf of Glenco Contracting Group, Inc. v. David McGrath and Glenco Contracting Group, Inc., and ARO Construction, Inc.

**Superior Court of New Jersey Camden County – Chancery Division, General Equity, Trial**

James R. Happold, Jr. v. Jeffrey G. Frake, Masonry Preservation Group, Inc. and MC Enterprises Properties, LLC

**United States District Court District of Rhode Island (Providence), Trial**

Optical Works and Logistics, LLC v. Sentinel Insurance Company and The Hartford Insurance Group



**United States District Court For The Northern District of New York, Deposition**

Michele Baker; Charles Carr; Angela Corbett; Pamela Forrest; Michael Hickey, Individually and as Parent and Natural Guardian of O.H., Infant; Kathleen Mainlingener; Kristin Miller as Parent and Natural Guardian of K.M. Infant; Jennifer Plouffe; Silvia Potter, Individually and as Parent and Natural Guardian of C.P., Infant; and Daniel Schuttig, Individually and on Behalf of All Others Similarly Situated v. Saint-Gobain Performance Plastics Corp.; Honeywell International, Inc. f/k/a Allied-Signal, Inc. and/or AlliedSignal Laminate Systems, Inc.; E.I. DuPont De Nemours and Company; and 3M Co.

**United States District Court Eastern District of New York, Deposition**

Tony Caccavale, Anthony Mangelli, Douglas Sorbie and James Billups, Individually and On Behalf of Others Similarly Situated v. Hewlett-Packard Company a/k/a HP, Inc., Hewlett Packard Enterprise Company and Unisys Corporation

**In the Court of Common Pleas of Bucks County Pennsylvania, Contempt Hearing**

Amres Corporation and Stephen Mark Wilson v. Kirill Ayzenberg and Kirill Ayzenberg a/k/a Kirk Ayzenberg v. Stephen Mark Wilson a/k/a Mark Wilson and Amres Corporation a/k/a Amres

**Supreme Court of the State of New York County of New York, Deposition**

Joseph Rutigliano Individually and Derivatively as a Shareholder on Behalf of Absolute Electrical Contracting of NY Inc. for the Judicial Dissolution of Absolute Electrical Contracting of NY Inc. v. William Locantro, Robert Romanoff, EDM Electrical Contractors, Inc., Bravo Sales Group, Inc., EDM Electric, Inc. John Does 1 Through 10 and ABC Corporations 1 Through 10

**In the Court of Common Pleas of Washington County, Pennsylvania, Trial**

Meyers Water Transfer, LLC d/b/a Hydroedge Solutions v. LOLA Energy Petroco, LLC d/b/a LOLA Energy and Pocahontas Gas, LLC v. LOLA Energy Petroco, LLC d/b/a LOLA Energy and Meyers Water Transfer, LLC d/b/a Hydroedge Solutions

**United States District Court For the Middle District of Georgia, Columbus Division, Trial and Deposition**

American Southern Homes Holdings, LLC, et al. v. David B. Erickson, et al.

**American Arbitration Association, Arbitration/Trial**

TMS International, LLC v. Outokumpu Stainless USA, LLC

**American Arbitration Association International Center for Dispute Resolution, Arbitration/Trial**

Zen-Noh Grain Corporation v. Golden Oil for Extracting, Refining and Bottling Vegetarian Oils and Almagd for Extracting and Refining of Vegetarian Oils

**American Arbitration Association, Arbitration/Trial**

Credibility Capital, Inc. v. Nu Direction Lending, LLC and Member Business Financial Services, LLC

**United States District Court Middle District of Tennessee, Nashville Division, Deposition**

Meghan Bright as Curator of the Estate of Leonard Foote, et al. v. Brookdale Senior Living Inc.

**State of Michigan in the Circuit Court for the County of Oakland, Deposition**

eMatrix Energy Systems, Inc. v. Lightning EMotors, Inc. v. eMatrix Energy Systems, Inc. and Linamar Corp.

**United States District Court District of Minnesota, Trial and Deposition**

United States of America, ex rel. Kipp Fesenmaier v. The Cameron-Ehlen Group, Inc. dba Precision Lens and Paul Ehlen.

**United States District Court For the Western District of Pennsylvania, Deposition**

Bunting Graphics, Inc., Bunting, Inc., Bunting 5720, Inc. and 712 Gum Street, LLC v. The Phoenix Insurance Company.



**United States District Court For the Southern District of Florida, Miami Division, Trial and Deposition**

Jonathan Lord, M.D. v. University of Miami

**Financial Industry Regulatory Authority, Arbitration/Trial**

GMS Mine Repair and Maintenance, Inc. v. Next Financial Group, Inc.

**In the Court of Common Pleas Washington County, Ohio, Deposition**

State of Ohio *ex. rel.* Dave Yost Attorney General of Ohio v. E.I. DuPont de Nemours and Co., The Chemours Company, Corteva, Inc. and DuPont de Nemours, Inc.

**Supreme Court of the State of New York County of New York, Deposition**

BHSC Global, LLC, BHSC Global Holdings, LLC, Royal SEM, LLC, Richard Thurman and Daniel Horwits v. Aprio, LLP f/k/a Habif, Arogeti & Wynne, LLP

**Supreme Court of the State of New York County of New York, Deposition**

Brevet Direct Lending – Short Duration Fund, L.P. v. Aprio, LLP f/k/a Habif, Arogeti & Wynne, LLP

**In Arbitration Before The Financial Industry Regulatory Authority, Arbitration/Trial**

Anna Maria Creagh, Individually and as Trustee of the Anna Maria Creagh Revocable Living Trust, Jon E. Tegethoff, Mary Anne Tegethoff, Richard W. Neuhengen and Karen M. Neuhengen v. Genevieve G. Mar and Berthel, Fisher & Company Financial Services, Inc.

**In the Court of Common Pleas of Lancaster County, Pennsylvania, Trial**

Charter Homes at Florin Hill, Inc. v. The Florin Hill Partnership v. Florin Hills, L.P.

**United States District Court Eastern District of Pennsylvania, Deposition**

Special Risk Insurance Services, Inc. v. GlaxoSmithKline, LLC T/A GlaxoSmithKline

**In the Circuit Court of the Fifteenth Judicial Circuit, In and For Palm Beach County, Florida, Deposition**

88-HC Acquisition Holding LP v. Bartholomew Delsing, John F. Maloney II, A/K/A Jack Maloney and FirstLantic Healthcare, Inc.

**American Arbitration Association, Arbitration/Trial and Deposition**

Align Technology, Inc. v. SDC Financial, LLC, SmileDirectClub, LLC, David Katzman, David Katzman Revocable Trust and David Katzman 2009 Family Trust.

**In the Court of Common Pleas of Centre County, Pennsylvania, Trial**

Upsilon Chapter, Inc. v. Greek Housing Services, Inc. and Mark Maloney.

**State of North Carolina Mecklenburg County in the Court of General Justice Superior Court Division, Trial**

Granite Contracting, LLC v. Carlton Group, Inc. d/b/a Carlton Scale.



# Attachment 3A

Mainsail Parent, LLC d/b/a Aspirion, et al. v. David Jewell, et al.
Lost Revenue Analysis



Source
ASPIRION_00005500-ASPIRION_00005502
ASPIRION_00005512

Attachment 3B

**Attachment 3B**

**Mainsail Parent, LLC d/b/a Aspirion, et al. v. David Jewell, et al.**
**Trailing Twelve Month Revenue Analysis**

**Attachment 3B**



| Month-Year | Accounts | List Balance | Collections | Collections % | Fees | Fee % |
|---|---|---|---|---|---|---|
| Nov-23 | - | - | - | | - | |
| Dec-23 | - | - | - | | - | |
| Jan-24 | - | - | - | | - | |
| Feb-24 | - | - | - | | - | |
| Mar-24 | - | - | - | | - | |
| Apr-24 | - | - | - | | - | |
| May-24 | - | - | - | | - | |
| Jun-24 | - | - | - | | - | |
| Jul-24 | - | - | - | | - | |
| Aug-24 | - | - | - | | - | |
| Sep-24 | - | - | - | | - | |
| Oct-24 | - | - | - | | - | |

Attachment 3B





| Christus Health | | | | | | |
|---|---|---|---|---|---|---|
| Month-Year | Accounts | List Balance | Collections | Collections % | Fees | Fee % |
| Jun-23 | - | - | - | - | - | - |
| Jul-23 | - | - | - | - | - | - |
| Aug-23 | - | - | - | - | - | - |
| Sep-23 | - | - | - | - | - | - |
| Oct-23 | - | - | - | - | - | - |



| Parkview Health | | | | | | |
|---|---|---|---|---|---|---|
| Month-Year | Accounts | List Balance | Collections | Collections % | Fees | Fee % |
| Jun-23 | - | - | - | - | - | - |
| Jul-23 | - | - | - | - | - | - |
| Aug-23 | - | - | - | - | - | - |
| Sep-23 | - | - | - | - | - | - |
| Oct-23 | - | - | - | - | - | - |



(1) HKA did not receive any collection data for Christus Health and Parkview Health

**Sources**
ASPIRION_00005512
ASPIRION_00005504
ASPIRION_00005512

# Attachment 4

Mainsail Parent, LLC d/b/a Aspirion, et al. v. David Jewell, et al.
**Lost Profits Analysis**

| Description | 2024 | 2025 | 2026 | 2027 | 2028 | Total |
|---|---|---|---|---|---|---|
| Discounted Lost Profits | 2,761,745 | 2,802,467 | 2,396,105 | 2,062,380 | 1,763,332 | 11,786,029 |
| Cumulative Discounted Lost Profits | $ 2,761,745 | $ 5,564,212 | $ 7,960,318 | $ 10,022,697 | $ 11,786,029 | |

**Attachment 5**

**Mainsail Parent, LLC d/b/a Aspirion, et al. v. David Jewell, et al.**
**Aspirion 2023 Income Statement**



<u>Source</u>
ASPIRION_00005512

CONFIDENTIAL

# Attachment 6

**Mainsail Parent, LLC d/b/a Aspirion, et al. v. David Jewell, et al.**
**Compensation Analysis**



(1) HKA pro-rated the 2022 compensation for August 1, 2022 through December 31, 2022.

**Sources**
ASPIRION_00005512
ASPIRION_00004458
ASPIRION_00004487
ASPIRION_00004462
ASPIRION_00004428
ASPIRION_00004397-ASPIRION_00004398
ASPIRION_00004365
ASPIRION_00004516
ASPIRION_00005098
ASPIRION_00004543
ASPIRION_00004569
ASPIRION_00004623
ASPIRION_00004598
2024.07.29 ECF 1 Complaint.pdf

# Attachment 7

**Mainsail Parent, LLC d/b/a Aspirion, et al. v. David Jewell, et al.**
**Ternium 2024-2025 Projections**

| | Projected 2024 | % | Projected 2025 | % |
|---|---:|---:|---:|---:|
| **Income** | | | | |
| Revenue | $ 2,961,877 | 100.0% | $ 5,482,731 | 100.0% |
| | | | | |
| **Expenses** | | | | |
| Employee benefits: | | | | |
| Employee retirement plans | 100,340 | 3.4% | 205,602 | 3.7% |
| Group term life insurance | 784 | 0.0% | 2,528 | 0.0% |
| Health insurance & accident plans | 122,797 | 4.1% | 260,957 | 4.8% |
| **Total Employee benefits** | **223,921** | 7.6% | **469,087** | 8.6% |
| | | | | |
| Commissions and Fees | 17,890 | 0.6% | 13,290 | 0.2% |
| Contract labor | 8,850 | 0.3% | | 0.0% |
| Entertainment | | | | |
| General business expenses | 35,464 | 1.2% | 56,261 | 1.0% |
| Business insurance | 20,277 | 0.7% | 22,075 | 0.4% |
| Legal & Professional Fees | 341,088 | 11.5% | 360,000 | 6.6% |
| Meals with clients/Travel meals | 6,047 | 0.2% | 9,255 | 0.2% |
| Office Expenses | 21,239 | 0.7% | 32,505 | 0.6% |
| Shipping & postage | 17,088 | 0.6% | 26,152 | 0.5% |
| Small tools & equipment | 97,463 | 3.3% | 84,350 | 1.5% |
| Software & apps | 29,397 | 1.0% | 44,991 | 0.8% |
| Office/General Adm. Expenses | 3,558 | 0.1% | 5,445 | 0.1% |
| Salaries & wages | 752,878 | 25.4% | 1,713,353 | 31.2% |
| Rent | 33,341 | 1.1% | 35,750 | 0.7% |
| Supplies & materials | 18,006 | 0.6% | 27,558 | 0.5% |
| Payroll taxes | 17,101 | 0.6% | 26,173 | 0.5% |
| Travel | 21,172 | 0.7% | 32,403 | 0.6% |
| Heating & cooling | 2,895 | 0.1% | 5,763 | 0.1% |
| Total SG&A | 1,443,754 | 48.7% | 2,495,324 | 45.5% |
| Total Expenses | 1,667,675 | 56.3% | 2,964,411 | 54.1% |
| **Net Operating Income** | **$ 1,294,202** | 43.7% | **$ 2,518,320** | 45.9% |

(1) 2024 Net Operating Income figure is erroneous in that it does not include Commission expense.

**Sources:**
2024.11.14 Def. Ternium Amended ROs to Aspiron 1st ROGS.pdf