UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MAINSAIL PARENT, LLC
d/b/a ASPIRION, et al.,                                          CASE No. 1:24-cv-22875-CMA

        *Plaintiffs*,

v.

DAVID JEWELL, et al.,

        *Defendants*.
_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1,2]

Defendants move for summary judgment as follows:

### I.     BACKGROUND

Defendants filed a Statement of Material Facts detailing the relevant portions of the record for this motion. *See* D.E. 125.

### II.    MEMORANDUM OF LAW

This case involves the highly competitive and free flowing revenue cycle management ("RCM") denials market. When health insurance companies deny claims for services provided by health-care providers, these healthcare providers sometimes outsource attempts to collect those denied claims to companies like Aspirion, Ternium, and a multitude of others.

Many of the arguments below were previously briefed in some capacity by Defendants. The difference is that Plaintiffs have failed to and are unable to provide record evidence sufficient to create genuine disputes of material facts that support their positions. Fundamentally, Plaintiffs' problems arise from the fact that they have been unable to show actual damages *as a result of* Defendants' conduct. This is unsurprising given the highly competitive nature of the RCM-denials

---

[1] Plaintiffs Specialized Healthcare Partners, LLC and Mainsail Parent, LLC d/b/a Aspirion are "**Plaintiffs**" or "Aspirion." Defendants David Jewell ("**Jewell**"), Michael Cameron ("**Cameron**"), Alisha May ("**Mays**"), Megan Kelly ("**Kelly**"), Devannie Abell (collectively "**Individual Defendants**") and Ternium, LLC ("**Ternium**"), are "Defendants."

[2] This unredacted motion is being filed in accordance with the Court's Order (D.E. 119).

1

business, in which the number of claims (and in turn revenue) received by market actors varies wildly from month to month and year over year.

### A. Standard

Summary judgment may be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. *Floral Logistics of Miami, Inc. v. New York Garden Flower Wholesale, Inc.*, 2023 WL 9032547, at *2 (S.D. Fla. Nov. 6, 2023) (citation omitted).

Where the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim, and (2) showing the Court that there is not sufficient evidence to support the non-moving party's case. *Fla. Beauty Flora Inc. v. Pro Intermodal L.L.C.*, 2021 WL 1945821, at *4 (S.D. Fla. May 14, 2021) (citations omitted).

### B. Counts I & II: Plaintiffs lack a legitimate business interests in relationships, goodwill, or training that justify enforcement of Jewell and Cameron's restrictive covenants.

The touchstone of an enforceable restrictive covenant the nature of the at-issue market. Not a defendant's misconduct. To demonstrate the enforceability of Jewell and Cameron's restrictive covenants, Plaintiffs are required to: (1) "plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant," and (2) prove that the contractually specified restraint is reasonably necessary to protect the established interests of the employer. Fla. Stat. § 542.335; *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009); *Passalacqua v. Naviant, Inc.*, 844 So. 2d 792, 795 (Fla. 4th DCA 2003).

#### 1. *Plaintiffs' lack protectable customer relationships under the weight of Florida law.*

Florida Statutes, §542.335 required Plaintiffs to put specific customers at issue. Fla. Stat. § 542.335(1)(b)(3); *see, e.g., Litig. Sols., L.L.C. v. McGonigal*, 2010 WL 111822, at *3 (S.D. Fla. Jan. 11, 2010) (denying non-compete injunction and holding that Florida non-compete law "does not state that customer relationships generally qualify as legitimate business interests" but instead "requires a showing of substantial relationships with specific customers."). To determine protectability, the Court looks to the "substantiality" of particular relationships with the Plaintiffs. *Vital Pharm., Inc. v. Alfieri*, 23 F.4th 1282, 1291 (11th Cir. 2022) (citing *Evans v. Generic Sol. Eng'g, LLC*, 178 So. 3d 114, 117–18 (Fla. 5th DCA 2015) (holding that no substantial relationship existed where plaintiff did not have an exclusive contract with the customer or a reasonable

expectation that it would continue to provide services to the customer after its contract expired) and *Passalacqua.*, 844 So. 2d at 796). These cases represent binding intermediate Florida appellate precedent and binding Eleventh Circuit precedent on establishing a specific protectable customer relationship.

Plaintiffs placed a number of clients at issue. *See generally*, Plaintiffs' Amended Interrogatory Responses to Jewell. But Plaintiffs have failed to specifically articulate *why* these clients are protectable. Generic allegations regarding the existence of undefined or broad categories of relationships do not satisfy 542.335's burden. *Evans*, 178 So. 3d at 117. *Evans* is instructive. There, plaintiff put two customers at issue: RRI and eData. *Id*. at 17. The court evaluated the nature of the plaintiff's relationship with RRI and concluded that the relationship did not rise to the level of being substantial and protectable. *Id*. at 117-18. But more pertinent: The court held that plaintiff's failure to put forward any facts about the relationship with eData was dispositive as to that relationship. *Id*. The Fifth DCA made clear: A plaintiff cannot establish a legitimate business interest in substantial relationships without providing sufficient facts about those relationships to allow for a meaningful analysis. *Id*. It logically follows that there can be no finding of substantial protectable customer relationships unless (a) specific customers are identified and (b) *sufficient factual background is provided regarding the nature of the relationships with those customers*. *Id*. Plaintiffs have failed to provide sufficient detail regarding the nature of their alleged protectable relationships. Their claims regarding protectable customer relationships fail at the summary judgment stage.

Setting aside Plaintiffs' failure to adequately articulate its basis for claiming customers are protectable we turn to Florida law to see when a substantial relationship is likely to exist. "Florida case law reveals that a substantial relationship is more likely to exist where there is active, on-going business being conducted; exclusivity; a customer who cannot be easily identified by other competitors in the industry; and an expectation of continued business." *IDMWORKS, LLC v. Pophaly*, 192 F.Supp.3d 1335, 1340-1341 (S.D. Fla. 2016); *see also Evans*, 178 So. 3d at 117 (holding no substantial customer relationship where plaintiff lacked an exclusive contract with customer at issue). *Pophaly's* guideposts provide the most cogent explanation of where a court is likely to encounter a substantial relationship. They are broadly drawn because their presence or absence sheds more light than most other inquiries as substantiality analysis equates to a market analysis. *See, e.g., White v. Mederi Caretenders Visiting Servs. of Se. Florida, LLC*, 226 So. 3d

774, 785 (Fla. 2017) (to demonstrate enforceability of restriction, "there must be special facts present over and above ordinary competition" such that, absent a non-competition agreement, "the employee would gain an unfair advantage in future competition with the employer.") (citations and quotations omitted).

An objectively reasonable belief in continued business is more likely to exist in tandem with long-standing, exclusive business. That is not present here. What an employer thinks of the protectability of its relationships is of minimal relevance. It is the equivalent of accepting an employer's position that information is 'confidential' without conducting the inquiry necessary to determine if such information is actually confidential.

Here, it is undisputed that the RCM-denials industry lacks exclusive contracts, that market actors are readily identifiable, that clients often work with multiple RCM vendors at the same time, and that placements[3] from customers to RCM-denials entities are discretionary. It is undisputed that healthcare systems themselves are some of the biggest competitors of Aspirion and Ternium alike, as they can and do take business in-house at their discretion. For example, is undisputed that Evangelical (one of the customers placed at issue) has cancelled all contracts with RCM-denials entities (including Ternium and Aspirion) following its acquisition. It is also undisputed that Aspirion has turned down work for multiple entities put at issue, including work that was ultimately given to Ternium.

It is also undisputed that work is frequently awarded through competitive bids. To the extent that work is awarded through a bid-process, that relationship is categorically not a protectable relationship, rendering summary judgment in Jewell and Cameron's favor appropriate with respect to all such relationships. *Shields v. Paving Stone Co., Inc.,* 796 So. 2d 1267, 1269 (Fla. 4th DCA 2001) ("In enjoining Shields from soliciting those customers listed on Paving Stone's customer list, the order must clearly direct that such prohibition does not include customers obtained through the open bidding process.").

In light of this, we turn to a further examination of the objective reasonableness of Plaintiffs' expectation of continued business in the RCM-denial market. The following is a table generated by Plaintiff's proffered damages expert, David Duffus, that shows monthly placements for 8 customers that Plaintiffs have placed at issue, ranging from November 2023 to October 2024.

---

[3] "Placements" is industry nomenclature for denied claims to be serviced.

*See* Duffus Report, D.E. 114-1 at 15, Table 3.[4] This table demonstrates a dramatic monthly variance from customers. For example:

(a) <u>Banner</u> – $19m (Dec. '23), $11m (Jan. '24) → $2.6m (Feb. '24) (nearly $8.5m drop). This drop occurred immediately after it was impacted by the largest health care data breach of 2024, which has gone on to impact over 100m Americans. *See* https://www.hhs.gov/hipaa/for-professionals/special-topics/change-healthcare-cybersecurity-incident-frequently-asked-questions/index.html. Banner has subsequently handled a substantial portion of its denials claims in-house.

(b) <u>CHOC</u> – generated $13m (Jan. '24), 232k (May '24) and $5.8m (Jul. '24).

(c) <u>Advent</u>- fluctuated from 1.9m (Jun. '24) followed immediately by $420k (Jul. '24). Ternium has not received any placements from Advent.

(d) <u>Oschner</u> – business fluctuates from as little as $1.12m (Feb. '24) to $10.69m (Oct. '24).

(e) <u>Legacy</u> –its lowest month in almost a year (Aug. '24, $924k) was followed immediately by $19.458m. Ternium was in the market at this time.

(f) <u>Christus</u> – placements range from $6-12m, then July 2024 is under $2m for 4 months in a row. Ternium does not have contracts with Christus.

(g) <u>Parkview</u> – generated $2.1m (Mar. '24), then $10.2m (Sept. '24), followed immediately by $5.8m (Oct. '24).

The above demonstrates the fluidity of the market. There is no discernible rhyme or reason to placements. In this industry, placements (the equivalent of inventory, and in turn revenue) can fluctuate by millions—and sometimes tens of millions—of dollars from month to month at the discretion of customers who work freely with multiple other RCM-vendors, it cannot be said that there is a reasonable expectation of continuing business in any meaningful way. Given the nature of the industry and Aspirion's own historical performance, summary judgment in favor of Jewell and Cameron is appropriate regarding Plaintiffs' claims that they possess protectable customer relationships.

Plaintiffs have also failed to demonstrate that they have protectable relationships with either employees or vendors. There is no evidence that any vendor utilized by Defendants had an exclusive or otherwise protectable relationship with Plaintiffs.

Similarly, employee non-solicitation clauses must be carefully scrutinized. There must be some

---

[4] For D.E. 114-1, the page numbers cited herein correspond to the ECF stamped page number.

underlying legitimate, protectable interest preventing the employee from being solicited. Here, Plaintiffs have not put forward any allegedly solicited former Aspirion employees who were under restrictive covenants or provided any other reason why Plaintiffs' relationships with employees is protectable to a degree that warrants enforcing Jewell and Cameron's restrictive covenants

2. ***Plaintiffs lack a legitimate business interest in goodwill.***

There is no presumption of goodwill. Goodwill is analytically distinct from protectable customer relationships, as it listed separately by Florida's noncompete statute as a potential legitimate business interest. Fla. Stat. § 542.335(1)(b)(3)-(4). This is why the term 'goodwill' does not equate to 'goodwill' in other, non-noncompete contexts, which look, essentially, to expectation of future business. *See, e.g., Held v. Held*, 912 So. 2d 637, 639 (Fla. 4th DCA 2005). Protectable goodwill in this space typically takes the form of a brand or name associated with a business in a particular area that could be improperly utilized by the former employee. Fla. Stat. § 542.335(1)(b)(4). Here, geography is irrelevant, and customers do business with multiple RCM-denials vendors simultaneously.

The amorphous nature of goodwill necessitates a clear and concise articulation that is nowhere to be found in in the record. Plaintiffs have simply asked the Court to accept that they possess goodwill, and that Jewell and Cameron have (or could) interfere with it. *See, e.g., Thyssenkrupp Elevator Corp. v. Hubbard*, 2013 WL 5929132, at *4 (M.D. Fla. Nov. 4, 2013) (no legitimate interest in client goodwill where plaintiff failed to identify any facts or evidence in support of its assertion; *see also Lucky Cousins Trucking, Inc. v. QC Energy Res. Texas, LLC*, 223 F. Supp. 3d 1221, 1226 (M.D. Fla. 2016) ("Generic allegations do not establish a legitimate business interest" under Fla. Stat. § 542.335).

Nor is there any evidence that Jewell and Cameron have ever traded on Plaintiffs name or marks to obtain business for themselves. To the contrary, much of Plaintiffs' grievances come from the fact that Cameron and Jewell let entities know that they were leaving Aspirion and, when asked, told such customers that they intended to stay in the business with Ternium. There is no evidence that any clients were tricked, misled, or deceived by Jewell and Cameron's competition through Ternium, nor is there any indication that the as-yet-undefined goodwill constitutes a legitimate business interest that warrants enforcement of a restraint of trade.

To the extent that the Court determines a material fact precludes summary judgment outright on the existence of goodwill, it remains appropriate to limit such goodwill to the entities

attributed as having "goodwill" with Jewell and Cameron. Plaintiffs' Amended Interrogatory Responses at No. 2.  Of those entities, Cameron is alleged to have interfered with the 'goodwill' of 22, and Jewell only 7.  Notably missing from this list is any allegations that Jewell or Cameron interfered with 'goodwill' with Banner Health, allegedly one of the largest customers at issue. *Id*.

### 3. *Plaintiffs lack a legitimate business interest in specialized or extraordinary training.*

Plaintiffs have failed to demonstrate that extraordinary or specialized training supports enforcement of the at-issue restrictions. First, both Jewell and Cameron have been in the RCM denials space for decades and worked with other market actors prior to joining Plaintiffs. Florida courts recognize that prior industry experience weighs against a finding of specialized or extraordinary training. *Austin v. Mid State Fire Equip. of Cent. Florida, Inc.*, 727 So. 2d 1097, 1098 (Fla. 5th DCA 1999). Second, the analysis of whether training is specialized or extraordinary is necessarily comparative. *See S. Wine & Spirits of Am., Inc. v. Simpkins*, 2011 WL 124631, at *4 (S.D. Fla. Jan. 14, 2011) ("A demonstration that an employee's training was extraordinary necessarily requires a discussion of how different from the norm the training actually was."). Here, Plaintiffs lack any actual comparators for the Court to weigh the uniqueness of their training, relying on best Ms. Cheri Kane's anecdotes about training.  That is simply not enough, and summary judgment is warranted as to the lack of any specialized or extraordinary training sufficient to enforce the at-issue restrictions.

### C. The Independent Tort Doctrine Bars Plaintiffs' Claims for Breach of Duty of Loyalty (Count V) and Tortious Interference (Count VI) as to Jewell and Cameron

A claim for breach of duty of loyalty can certainly exist in the absence of a contract. But here, Jewell and Cameron were parties to restrictive covenants and other contractual obligations that applied during their employment as well as afterwards that mirror duty of loyalty obligations. *See* Employment Agreements of Jewell (D.E. 31-1) and Cameron (D.E. 31-2) at ¶¶ 8 (confidentiality), 9 (company property), 10 (non-solicitation of business and Plaintiffs' employees), 14 (no amendments or modifications unless in writing), 18 (entire agreement), and 26 (corporate opportunity clause).

To bring a valid tort claim where a party is in contractual privity with another, the claimant must establish that the tort is independent of any breach of contact. *Yuken Corp. v. Gedcore LLC*, 2022 WL 3701233, at *3 (S.D. Fla. June 21, 2022) (citation omitted); *see also Cabana on Collins, LLC v. Regions Bank*, 2012 WL 718806, at *10 (S.D. Fla. Mar. 5, 2012) (applying independent

tort doctrine where "the facts surrounding a breach of contract action are indistinguishable from an alleged tort, and where the alleged tort does not cause harm distinct from that caused by the breach of contract[.]") (citation omitted). In other words, the rule "restrains '[a] party to a contract' from seeking to obtain a better bargain than originally made,' by circumventing the legal rights and obligations provided for in a contract by bringing a tort claim." *Int'l Sch. Services, Inc. v. AAUG Ins. Co., Ltd.*, 2012 WL 5192265, at *7 (S.D. Fla. July 25, 2012) (citing *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.,* 891 So.2d 532, 536–37 (Fla.2004)). And that is precisely what we have here. Plaintiffs' allegations regarding Cameron and Jewell's alleged breaches of duties of loyalty and allegations of tortious interference with customers and employees is entirely accounted for within their respective contracts. To the degree Plaintiffs have claims against Jewell and Cameron regarding these allegations, Plaintiffs' relief is in contract, not tort. Summary judgment is proper with respect to Jewell and Cameron on these claims.

  D. **Plaintiffs Failed to Create a Genuine Dispute that Defendants Tortiously Interfered with any of Plaintiffs' Relationships.**

  1. *Plaintiffs' claim for tortious interference with customers must necessarily be limited to the customers that it placed at issue.*

To prove its claim for tortious interference, Plaintiffs are required to demonstrate damages resulting from interference with a specific relationship. *Duty Free Am., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1280 (11th Cir. 2015). As described in discussion of Plaintiffs' relationships and damages (*see supra* at § II(B)(1); *infra* at II(E)), Plaintiffs failed to demonstrate genuine disputes that they suffered damages from the breach of any specific relationships. This dooms Plaintiffs' claim with respect to tortious interference with customers, vendors, or Aspirion employees.

  2. *Plaintiffs failed to demonstrate a genuine dispute that Defendants solicitation of business was purely malicious.*

"Florida courts have explained that, even if the plaintiff has an existing, terminable-at-will contract, the defendant's interference to protect its economic interests is privileged *unless the plaintiff alleges a purely malicious motive divorced from any 'legitimate competitive economic interest.*" *de Cortes v. Brickell Inv. Realty, LLC*, 546 F. Supp. 3d 1332, 1345 (S.D. Fla. 2021) (citations and quotations omitted). Here, there is no genuine dispute that Defendants simply

8

advanced their own competitive interests in the market. That is, there is no evidence any Defendants were motivated purely by malice.

### E. Plaintiffs Failed to Create Genuine Disputes that They Suffered Legally Cognizable Damages

To date, Plaintiffs have not demonstrated that they lost a single dollar of business due to Defendants' competition. They have not demonstrated that a single entity stopped doing business with them or diverted business from them due to Defendants' competition. Plaintiffs have come to this Court seeking to cut Defendants from the market and the payment of millions of dollars. This case is slated for trial in May. It is time to move from speculation to evidence.

Explanations of Plaintiffs supposed damages are confined to a limited universe: (a) wherefore clauses of the Complaint, (b) the Duffus Report (D.E. 114-1), (c) Plaintiffs' August 29, 2024 Initial Disclosures seeking "$4 million" for "lost client revenue and compensation wrongfully paid to Defendants",[5] and (d) Plaintiffs' Amended Interrogatory Response to Jewell, No. 6, 11/13/24 (describing lost client revenue and compensation paid to Defendants as well as unexplained "reputational harm").

The Duffus Report contains an accounting of Plaintiffs' alleged damages. D.E. 114-1[6] It contains (a) lost profits analysis, and (b) "unjust enrichment" damages, which refer to disgorgement of Defendants' profits and revenue resulting from their competition and compensation paid by Aspirion to the Individual Defendants while they were employed by Aspirion.[7]

### 1. *Plaintiffs are not entitled to damages for at-issue clients that it has not provided damages for.*

Plaintiffs' interrogatories identified approximately 179 existing and approximately 80

---

[5] These have not been amended.
[6] *See also,* Plaintiffs' objections to Defendants' 30(b)(6) topics at No. 16 (limiting subject of damages testimony to factual predicated contained in the Duffus report notice of taking 30(b)(6) (Topic 16: "All damages and harm for which You are seeking relief in this case, including the facts that support each aspect of such alleged damages and harm and the specific amounts sought against each specific Defendant in this case." Plaintiffs' responded that their corporate representative will "testify as to nonprivileged information concerning the factual matters specific to Plaintiffs' contained in David Duffus's expert report in response to this Subject.")
[7] The Duffus Report also states that Plaintiffs "may be entitled to assert other measures of damages including disgorgement of the avoided costs and a reasonable royalty[]" D.E. 114-1, p. 23, ¶ 58. There are no calculations, analyses, or conclusions regarding these alleged buckets of damages.

9

prospective clients. They placed 28 clients at issue. *See generally*, Plaintiffs' Amended Interrogatory Responses to Jewell. Of those clients, the Duffus Report contains damage calculations for eight customers, with an additional, separate calculation for one "new client." *See, e.g.*, D.E. 114-1 at p.47.  Only the 8 clients for which there is some form of explanation of damages remain at issue. There is simply no basis for Plaintiffs to receive damages supposedly resulting from Defendants' competition for business with entities, whether prospective or actual customers of Aspirion, for whom Plaintiffs have not provided damages calculations.  That is because alleged damages arising from Defendants' competition with these other entities amounts to nothing more than speculation and constitutes an improper bucket of lost profits damages. *Resolution Trust v. Stroock*, 853 F.Supp. 1422, 1427 (S.D. Fla. 1994) (granting summary judgment where plaintiff's evidence of damages was insufficient and speculative); *see also Mee Indus. v. Dow Chem.*, 608 F.3d 1202, 1222 (11th Cir. 2010) (noting that certain complex calculations of financial damages are of a nature that requires expert testimony).

2. **Plaintiffs failed to create a genuine dispute that they suffered lost profits as a result of Defendants' competition.**

The "general rule is that anticipated profits of a commercial business are too speculative and dependent upon changing circumstances to warrant a judgment for their loss." *Levitt-ANSCA Towne Park P'hip v. Smith & Co., Inc.*, 873 So. 2d 392, 396 (Fla. 4th DCA 2004). Plaintiffs can only obtain this "generally disfavored form of relief by presenting sufficient evidence to determine damages for lost profits with a reasonable degree of certainty, rather than by means of speculation and conjecture." *Big Cat Rescue Corp. v. Big Cat Rescue Entm't Grp., Inc.*, 2013 WL 12149263, at *4 (M.D. Fla. Feb. 8, 2013) (citing *Cibran Enter. Inc. v. BP Prods. N. Am., Inc.*, 365 F.Supp.2d 1241, 1254, n.2 (S.D. Fla. 2005); *HGI Assocs. Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 879 (11th Cir. 2005); *Sostchin v. Doll Enters., Inc.*, 847 So. 2d 1123, 1128 (Fla. 3d DCA 2003)). Plaintiffs have failed to do so. Summary judgment is appropriate as to lost profits. *See, e.g. Border Collie Rescue, Inc. v. Ryan*, 418 F.Supp.2d 1330, 1344 (M.D. Fla. 2006) (stating "conjectural assertions are insufficient to create an issue of material fact").

The following table was generated from information provided by Aspirion to its damages expert. See D.E. 114-1 at 15, Table 2. This table reflects market fluctuations in placements to Aspirion from 2021 – 2024.  Specifically, it shows that (a) Aspirion lost almost $16m in placements with Parkview in 2024.Ternium has not done business with it; (b) Aspirion's business

10

with Evangelical went form $3.1 m in 2022 to only $339k in 2023, although Ternium did not begin providing services to Evangelical until November 2023; (c) Banner's placements in 2023 was a statistical anomaly; and (d) Oschner's placements in 2024 were up $22m even though Ternium began receiving placements in May 2024.

This says nothing of the Duffus Report's failures to account for actual revenue earned by Aspirion through the first 10 months of 2024 when making its calculations, ignoring reality and falsely claiming that Aspirion was to lose millions of dollars in revenue when the actual numbers showed nothing of the sort. See, D.E. 114 at 2-5; *see also* D.E. 114-2. These inconsistencies are repeated throughout the Duffus Report. Relatedly, Plaintiffs have failed to attempt to show how Defendants could have caused Plaintiffs lost profits by soliciting vendors or Aspirion employees (let alone how much damages it has resulted).

As it stands, there is too much uncertainty to allow Plaintiffs to establish a causal link between lost profits (to the extent they exist) and Defendants' conduct since Ternium's inception, let alone to project such losses for 4-5 years in the future. *Proudfoot*, 576 F.3d at 1243 (reversing a damages award where it was not found that absent the breach of the non-compete, the plaintiff would have obtained the project); *see also Sun Ins. Marketing Network, Inc. v. AIG Life Ins. Co.*, 254 F.Supp.2d 1239, 1247–48 (M.D. Fla. 2003) (denying recovery of lost profits where "Plaintiff's projection of lost profits is based on several assumptions which are not grounded on known facts, but speculation and conjecture on what might have happened after [a given date].").

The Court should strike Duffus' deeply flawed report and grant summary judgment for Defendants on all of Plaintiffs' requests for lost profits. *See Martinez v. Rabbit Tanaka Corp. Ltd.*, 2006 WL 5100536 (S.D. Fla. 2006) (striking damages expert and granting summary judgment as to damages where plaintiff had presented no other calculation of its claimed lost profits).

### 3. *Plaintiffs failed to create a genuine dispute that they are entitled to disgorgement.*

Disgorgement is "an equitable remedy that is intended to prevent unjust enrichment." *S.E.C. v. Onterosso*, 756 F. 3d 1326, 1337 (11th Cir. 2014). The concept underlying disgorgement is that another received monies that should have been paid to Plaintiffs. *Baugh v. Austal USA, LLC*, 2023 WL 2873381, at *25 (S.D. Ala. Apr. 10, 2023). Plaintiffs are not entitled to disgorge revenue and/or profits for much of the same reason that they are not entitled to lost profits they have allegedly suffered.

Plaintiffs have failed to show that they would have received business received by Ternium,

but for Ternium's competition. There is nothing reasonably convincing in the record that suggests that to be the case. There is merely Plaintiffs' "belief."  At this stage, that is not enough. It is not disputed that Ternium has received revenue from business that Aspirion itself turned down. More broadly, because customers all work with multiple RCM-denials vendors, there is no reasonable basis to believe that the revenue generated by Ternium was money that Plaintiffs would have made but-for Ternium's competition. It was not Defendants' duty to disprove this, as Plaintiffs have never proffered evidence that it occurred.

> 4. *Plaintiffs have not demonstrated that they are entitled to recoup monies paid to the Individual Defendants during their tenure at Aspirion.*

Plaintiffs also seek to recover monies paid to the Individual Defendants during their Aspirion tenure. D.E 114-1 at 21-22. Plaintiffs have not placed all clients that Ternium does business with at issue, as Plaintiffs do not provide services to them. Disgorgement is not punitive. Thus, a causal connection must exist between the breach and the benefit sought to be disgorged. *S.E.C. v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978) ("[d]isgorgement is remedial and not punitive. The court's power to order disgorgement extends only to the amount [ ] by which the defendant profited from his wrongdoing [ ]"). Here, there is no evidence that Defendants failed to carry out their duties while employed by Plaintiffs—the fact that they were good at their jobs is a fundamental premise of this lawsuit. Plaintiffs have not pointed to a single instance in which the Individual Defendants performance measurably slipped, through the last day of their employment. The Individual Defendants cannot be required to return the compensation they received for those services provided, particularly where Aspirion received the benefit of those services.

### F. Plaintiffs Have Failed to Demonstrate Genuine Disputes as to the Existence of Irreparable Harm.

Plaintiffs seek injunctive relief on all their claims. Plaintiffs' have failed to demonstrate the existence of irreparable harm in the months since the entry of the injunction order (D.E. 60). As described above, Plaintiffs have failed to create a genuine dispute that they were actually damaged by Defendants' competition. But that does not mean that Plaintiffs are entitled to injunctive relief. *VAS Aero Servs., LLC v. Arroyo*, 860 F. Supp. 2d 1349, 1362 (S.D. Fla. 2012) ("In order for an injury to be irreparable, it cannot be undone through monetary remedies."). Had Plaintiffs been harmed, the damages at issue could have been remedied through monetary damages.

Plaintiffs' witnesses repeatedly testified at the injunction hearing that money could make Plaintiffs whole. Ms. Amick was clear that Plaintiffs' harm could be quantified. Mr. Shorten agreed. Both changed their story later during a series of rapid-fire leading questions by Plaintiffs' counsel about generic categories of so-called harm. That is not enough. Nor is Duffus's pure speculation that a relationship may have been harmed by Defendant's placing a phone call to a client or because a client learned of this litigation and wants nothing to do with Aspirion as a result. *See, e.g.*, 114-3 at 33:24-34:14. All harm alleged is based on Defendants' fair competition or allegations surrounding the early days of Ternium. But competition alone—even if it is ultimately deemed to be unfair or actionable—is not evidence of irreparable harm.

### *1. Plaintiffs are not entitled to a presumption of irreparable harm as to Jewell and Cameron; any presumption has been rebutted.*

As at the preliminary injunction stage, Defendants maintain and preserve that Judge Pryor's concurrence in the *Vital Pharmaceuticals* case, while not binding, accurately recognized the incompatible nature of Rule 65 and 542.335's presumption of irreparable harm. *Vital Pharms., Inc*, 23 F.4th at 1299 (11th Cir. 2022) (Pryor, C.J., concurring); *see also Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991) (holding that federal law, rather than state law, governs standard for preliminary injunctions). This Circuit and others have rejected presumptions of irreparable harm in a variety of contexts. *See, e.g., Commodores Entertainment Corp. v. McClary*, 648 F. App'x 771, 777 (11th Cir. 2016) ("In light of the Supreme Court's holding in eBay, a presumption of irreparable harm cannot survive" in Lanham Act cases). As a result, even if the Court ultimately determines that Jewell and Cameron's restrictive covenants are enforceable in some capacity, the restrictions do not carry a presumption of irreparable harm. As described above, any presumption has been rebutted by the facts of the last approximately 12 months that Defendants have competed with Plaintiffs. Plaintiffs have failed to create a genuine dispute that they have or could face irreparable harm flowing from any of the claims at issue. Summary judgment is warranted as to Plaintiffs' requests for injunctive relief.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request the Court grant summary judgment by entering an Order stating as follows:

A. Plaintiffs have failed to demonstrate a legitimate business interest in protectable relationships with respect to Jewell and Cameron's restrictive covenants;

B. Plaintiffs have failed to demonstrate a legitimate business interest in goodwill with respect to Jewell and Cameron's restrictive covenants;

C. Plaintiffs have failed to demonstrate a legitimate business interest in specialized or extraordinary training with respect to Jewell and Cameron's restrictive covenants;

D. The independent tort doctrine bars Counts V and VI as to Jewell and Cameron;

E. Plaintiffs have failed to demonstrate that Defendants acted solely with malice with respect to Plaintiffs' tortious interference claims.

F. Plaintiffs' damages are limited to the eight customers for which a damages analysis was provided or, in the alternative: Plaintiffs have failed to adequately articulate damages in the form of lost profits and Plaintiffs have failed to adequately articulate a basis for disgorgement with respect to funds made and distributed by Ternium to Individual Defendants;

G. Plaintiffs have failed to adequately articulate a basis for disgorgement with respect to funds paid by Aspirion to the Individual Defendants during their Ternium employment; and

H. Plaintiffs have failed to demonstrate irreparable harm and are therefore not entitled to injunctive relief.

Dated: January 24, 2025

Respectfully submitted,

By: */s/ Christopher S. Prater*
Christopher S. Prater
Florida Bar No.: 105488
cprater@pollardllc.com

Jonathan E. Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com

Michael A. Boehringer
Florida Bar No.:1018486
mboehringer@pollardllc.com

**Pollard PLLC**
401 E. Las Olas Blvd., Ste. 1400
Fort Lauderdale, FL 33301
Telephone: 954-332-2380
Facsimile: 954-727-3507
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 24, 2025, the forgoing document was electronically served via email to all counsel of record.

By: */s/ Christopher S. Prater*
Christopher S. Prater